# ATTACHMENT

# A

*Redacted Docket Materials*

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia ▾

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 22-2379
)
INFORMATION ASSOCIATED WITH SEVEN TARGET )
ACCOUNTS THAT ARE STORED AT PREMISES )
CONTROLLED BY THREE PROVIDERS )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1, A-2, and A-3, hereby incorporated by reference

located in the ___Jurisdiction of the___ District of ___Columbia___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B-1, B-2, and B-3, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. sec. 1343 | Wire Fraud |
| 18 U.S.C. sec. 1030 | Unauthorized Computer Access |
| 18 U.S.C. sec. 1956 | Money Laundering |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent John Gardner
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ *(specify reliable electronic means)*.

Date: ___09/13/2022___

_____
*Judge's signature*

City and state: ___Washginton, D.C.___            Magistrate Judge Harvey
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the

District of Columbia ▼

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 22-2379
INFORMATION ASSOCIATED WITH SEVEN )
TARGET ACCOUNTS THAT ARE STORED AT )
PREMISES CONTROLLED BY THREE PROVIDERS )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Jurisdiction of the_____ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1, A-2, and A-3, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachments B-1, B-2, and B-3, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 28, 2022_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Magistrate Judge Harvey_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____9/13/2022_____         _____
                                                                                    *Judge's signature*

City and state: _____Washington, D.C._____         _____Magistrate Judge Harvey_____
                                                                                    *Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>22-2379 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
SEVEN TARGET ACCOUNTS THAT ARE
STORED AT PREMISES CONTROLLED
BY THREE PROVIDERS PURSUANT TO
18 U.S.C. § 2703

SC No. **22-2379**

**FILED UNDER SEAL**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A WARRANT TO SEARCH AND SEIZE

I, John Gardner, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under 18
U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require:

      a.      Microsoft Corporation ("Microsoft") to disclose to the government records
and other information, including the contents of communications, associated with the accounts

(the "**Target Microsoft Accounts**") that are stored at premises owned, maintained, controlled, or
operated by Microsoft Corporation, a company headquartered at 1 Microsoft Way, Redmond,
Washington 98052;

      b.      Apple Inc. ("Apple") to disclose to the government records and other
information, including the contents of communications, associated with the Apple IDs

(the "**Target Apple Accounts**") that are stored at premises owned, maintained, controlled, or
operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA 95014; and

c.      Google LLC ("Google") to disclose to the government records and other information, including the contents of communications, associated with the Google account [                    ] (the "Target Google Account") that are stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

2.      The information to be disclosed by Microsoft and searched by the government is described in the following paragraphs and in Attachments A-1 and B-1.

3.      The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A-2 and B-2.

4.      The information to be disclosed by Google and searched by the government is described in the following paragraphs and in Attachments A-3 and B-3.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

7.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire

2

Fraud), 18 U.S.C. § 1030 (Unauthorized Computer Access), and 18 U.S.C. § 1956 (Money Laundering) have been committed by unidentified subjects. There also is probable cause to believe that the information and records described in Attachments A-1, A-2, and A-3 contain evidence, instrumentalities, contraband or fruits of these crimes, as further described in Attachments B-1, B-2, and B-3.

## JURISDICTION

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See also* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." *See* 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, the Court has jurisdiction over this matter because: (1) the criminal offenses under investigation began or were committed elsewhere out of the jurisdiction of any particular State or district, and no offender is known to have, or have had, residence within any United States district, *see* 18 U.S.C. § 3238; and (2) jurisdiction over foreign persons committing money laundering violations of 18 U.S.C. § 1956, rests with the district court. *See* 18 U.S.C. § 1956 (b)(2). Finally, the offenses under investigation are the subject of a grand jury inquiry in the District of Columbia.

## PROBABLE CAUSE

**I.**    **Background**

3

II.    **The Scheme**

**BACKGROUND CONCERNING MICROSOFT'S ACCOUNTS**

27.     Microsoft provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online.  Microsoft accounts are typically identified by a single username,

which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Microsoft services, such as instant messages and remote photo or file storage.

28.     Based on my training and experience, I know that Microsoft allows subscribers to obtain accounts by registering on Microsoft's website. During the registration process, Microsoft asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment. Microsoft typically does not verify subscriber names. However, Microsoft does verify the e-mail address or phone number provided.

29.     Once a subscriber has registered an account, Microsoft provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. Microsoft subscribers can also use that same username or account in connection with other services provided by Microsoft, such as electronic communication services such as Skype (voice and video calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network).

30.     In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a Microsoft account can be permanently stored in connection with that account, unless the subscriber deletes the material. For example, if the subscriber does not delete an e-mail, the e-mail can remain on Microsoft's servers indefinitely. Even if the subscriber deletes

the e-mail, it may continue to exist on Microsoft's servers for a certain period of time.

31.     Thus, a subscriber's Microsoft account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing, voice calls, video chats, SMS text messaging, and social networking. Depending on user settings, user-generated content derived from many of these services is normally stored on Microsoft's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on Microsoft's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Microsoft's servers for a certain period of time. Furthermore, a Microsoft subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Microsoft's servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created a Microsoft account may be found within such computer files and other information created or stored by the Microsoft subscriber. Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

32.     Based on my training and experience, I know that providers such as Microsoft also collect and maintain information about their subscribers, including information about their use of Microsoft services. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as Microsoft also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses

associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Microsoft typically collect and maintain location data related to subscriber's use of Microsoft services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

33. Based on my training and experience, I know that providers such as Microsoft also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Microsoft in order to track what devices are using Microsoft's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Microsoft accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Microsoft account.

34. Microsoft also allows its subscribers to access its various services through an application that can be installed on and accessed via cellular telephones and other mobile devices.

This application is associated with the subscriber's Microsoft account. In my training and experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the Microsoft associated with the application (such as Microsoft) to locate the device on which the application is installed. After the applicable push notification service (e.g., Apple Push Notifications (APN) or Google Cloud Messaging) sends a Push Token to the device, the Token is then sent to the application, which in turn sends the Push Token to the application's server/provider. Thereafter, whenever the Microsoft needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (i.e., the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s). Accordingly, the computers of Microsoft are likely to contain useful information that may help to identify the specific device(s) used by a particular subscriber to access the subscriber's Microsoft account via the mobile application.

35. Based on my training and experience, I know that providers such as Microsoft use cookies and similar technologies to track users visiting Microsoft's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Microsoft. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as Microsoft may constitute evidence of the criminal activity under investigation.

By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Microsoft account and determine the scope of criminal activity.

36.　　Based on my training and experience, I know that Microsoft maintains records that can link different Microsoft accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Microsoft accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Microsoft account. Social media and email accounts are typically personal in nature, therefore, would have conversations with personal contacts (relative or friend), upload personal information including photos, and comment about specific events in time and places such as traveling which could reveal the identity of the user.

37.　　Based on my training and experience, I know that cybercrimes typically involve the use of "burner" social media accounts, email accounts, and phone numbers. The purpose of these burner accounts is to conceal the identity of the person perpetrating the cybercrime. However, in my training and experience, these burner accounts often have overlapping relationships. These relationships often involve background accounts which do not directly interact with victim computers, but are instead used to create or control burner accounts.

38.　　For example, cybercrime perpetrators may create a social media or email account but he may register that account using a password recovery e-mail account or subscriber telephone number. Based on my training and experience, I know that such telephone numbers and password recovery accounts can be used to access the primary e-mail account – because they can be used to

13

reset account passwords, to regain account access after forgetting a password, or for two-factor authentication access to an account. For that reason, email accounts with overlapping password recovery accounts and telephone numbers are typically controlled by the same subject(s). Thus, the identity of the user of the background account may identify the user of the burner account.

39.     Based on my training and experience, I know that subscribers can communicate directly with Microsoft about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Microsoft typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

40.     In summary, based on my training and experience in this context, I believe that the computers of Microsoft are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Microsoft subscribers), as well as Microsoft -generated information about its subscribers and their use of Microsoft services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Microsoft with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

41.     As explained above, information stored in connection with a Microsoft account including the **Target Microsoft Accounts** may provide crucial evidence of the "who, what, why,

when, where, and how" of the criminal conduct under investigation, thus enabling the United

States to establish and prove each element of the offense, or, alternatively, to exclude the innocent

from further suspicion. From my training and experience, I know that the information stored in

connection with a Microsoft account can indicate who has used or controlled the account. This

"user attribution" evidence is analogous to the search for "indicia of occupancy" while executing

a search warrant at a residence. For example, e-mail communications, contacts lists, and images

sent (and the data associated with the foregoing, such as date and time) may indicate who used or

controlled the account at a relevant time. Further, information maintained by Microsoft can show

how and when the account was accessed or used. For example, providers such as Microsoft

typically log the IP addresses from which users access the account along with the time and date.

By determining the physical location associated with the logged IP addresses, investigators can

understand the chronological and geographic context of the Microsoft account access and use

relating to the criminal activity under investigation. This geographic and timeline information

may tend to either inculpate or exculpate the person who controlled, used, and/or created the

account. Additionally, information stored at the user's account may further indicate the geographic

location of the account user at a particular time (e.g., location information integrated into an image

or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the

user's state of mind as it relates to the offense under investigation. For example, information in

the Microsoft account may indicate its user's motive and intent to commit a crime (e.g.,

communications relating to the crime), or consciousness of guilt (e.g., deleting communications in

an effort to conceal them from law enforcement).

      42.     Based on my training and experience, I know that evidence of who controlled, used,

and/or created a Microsoft account may be found within the user-generated content created or

stored by the Microsoft subscriber. This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group. In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close in time to the offenses under investigation. This is true for at least two reasons. First, people that commit crimes involving electronic accounts (e.g., e-mail accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime. Second, earlier-generated content may be quite valuable, because criminals typically improve their tradecraft over time. That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced. Finally, because e-mail accounts and similar Microsoft accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

### INFOMRATION REGARDING APPLE ID AND iCLOUD[1]

43.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch,

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

44.    Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.    Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.    iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

c.    iCloud is a file hosting, storage, and sharing service provided by Apple.  iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

d.    iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iWork Apps, a suite of productivity apps (Pages, Numbers,

17

Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

     e.   Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

     f.   Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

     g.   Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

     h.   App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

45.   Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

46.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

47.     Apple captures information associated with the creation and use of an Apple ID.  During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

48.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs"

for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

49. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

50. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS")

messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

52. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.

Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

53.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

54.     Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the facts developed in this investigation also indicate that the fraud against Lawyer Victim was carried out using at least two different bank accounts in Mexico that received the wire transfers from Lawyer Victim.  The identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

### BACKGROUND CONCERNING GOOGLE'S ACCOUNTS

55.     Google provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online.  Google accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Google services, such as instant messages and remote photo or file storage.

56. Based on my training and experience, I know that Google allows subscribers to obtain accounts by registering on Google's website. During the registration process, Google asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment. Google typically does not verify subscriber names. However, Google does verify the e-mail address or phone number provided.

57. Once a subscriber has registered an account, Google provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. Google subscribers can also use that same username or account in connection with other services provided by Google such as electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google+ (social networking), Google Groups (group discussions), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Keep (storing text), Google Drive (cloud storage), Google Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

58.     In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a Google account can be permanently stored in connection with that account, unless the subscriber deletes the material.  For example, if the subscriber does not delete an e-mail, the e-mail can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to exist on Google's servers for a certain period of time.

59.     Thus, a subscriber's Google account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing, voice calls, video chats, SMS text messaging, and social networking.  Depending on user settings, user-generated content derived from many of these services is normally stored on Google's servers until deleted by the subscriber.  Similar to e-mails, such user-generated content can remain on Google's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Google's servers for a certain period of time.  Furthermore, a Google subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Google's servers.  Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

60.     Based on my training and experience, I know that evidence of who controlled, used, and/or created a Google account may be found within the user-generated content created or stored by the Google subscriber.  This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group.

61.     In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close

in time to the offenses under investigation. This is true for two reasons. First, people that commit crimes involving electronic accounts (*e.g.*, e-mail accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime. Second, earlier-generated content is often quite valuable, because criminals typically improve their tradecraft over time. That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced. Finally, because e-mail accounts and similar Google accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

62.    Based on my training and experience, I know that providers such as Google also collect and maintain information about their subscribers, including information about their use of Google services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as Google also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Google typically collect and maintain location data related to subscriber's use of Google services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

63.     Based on my training and experience, I know that providers such as Google also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers.  Such devices can be identified in various ways.  For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Google in order to track what devices are using Google's accounts and services.  Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI").  Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Google accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Google account.

64.     Based on my training and experience, I know that providers such as Google use cookies and similar technologies to track users visiting Google's webpages and using its products and services.  Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer.  When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before.  This sort of technology can be used to track users across multiple websites and online services belonging to Google.  More sophisticated cookie technology can be used to identify users across devices and

web browsers. From training and experience, I know that cookies and similar technology used by providers such as Google may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Google account and determine the scope of criminal activity.

65. Based on my training and experience, I know that Google maintains records that can link different Google accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Google accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Google account.

66. Based on my training and experience, I know that subscribers can communicate directly with Google about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Google typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

67. In summary, based on my training and experience in this context, I believe that the computers of Google are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers), as well as

Google -generated information about its subscribers and their use of Google services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Google with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

68.     As explained above, information stored in connection with a Google account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Google account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by Google can show how and when the account was accessed or used. For example, providers such as Google typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the Google account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location

28

information integrated into an image or video sent via e-mail).  Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information in the Google account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

69.　　I anticipate executing this warrant under the Electronic Communications Privacy Act ("ECPA"), in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Microsoft to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Microsoft Accounts** particularly described in Sections I and II of Attachment B-1.  Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-1.

70.　　I also anticipate executing this warrant under the same provisions of ECPA by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Apple Accounts** particularly described in Sections I and II of Attachment B-2.  Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-2.

71.　　I also anticipate executing this warrant under the same provisions of ECPA by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Google**

**Account** particularly described in Sections I and II of Attachment B-3. Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-3.

72. The warrant seeks authorization to search records from the inception of the account to the present. Based on my training and experience in searching accounts like the target accounts, relevant user attribution evidence can be generated at any time during the life of the account.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

73. I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Assistant United States Attorney John W. Borchert is capable of identifying my voice and telephone number for the Court.

## REQUEST FOR SEALING

74. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

75.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on the three service providers (Microsoft, Apple and Google) who will then compile the requested records at a time convenient for them, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim.
P. 4.1 and 41(d)(3) on this 13th day of September
2022.

_____
HONORABLE <u>MAGISTRATE JUDGE HARVEY</u>
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

### *Property to Be Searched*

This warrant applies to information which is associated with the following Microsoft accounts ("**Target Microsoft Accounts**"), which are stored at premises owned, maintained, controlled, or operated by Microsoft Corporation a company headquartered at 1 Microsoft Way, Redmond, WA 98052:

## ATTACHMENT A-2

### *Property to Be Searched*

This warrant applies to information which is associated with the following Apple accounts ("**Target Apple Accounts**"), which are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Provider"), a company headquartered at 1 Infinite Loop, Cupertino, California 95014:

## ATTACHMENT A-3

### *Property to Be Searched*

This warrant applies to information which is associated with the following Google account ("**Target Google Account**"), which are stored at premises owned, maintained, controlled, or operated by Google LLC ("Provider"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043:

**ATTACHMENT B-1**

**Particular Things to be Seized**

I.    **Applicable Time Period**

Please provide the information set forth below from the inception of the account(s) to the present.

II.    **Information to be disclosed by Microsoft Corporation ("Provider")**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each **Target Microsoft Account** or identifier listed in Attachment A-1:

a.    The contents of all communications and related transactional records for all Provier services used by an Account subscriber/user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services e.g., One Drive), including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies); calendar, file storage, and photo sharing services electronic communication services such as Skype (voice and video

calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network).

     b.     The contents of all other data and related transactional records for all Provider services used by an Account user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, calendar, file storage, and photo sharing services electronic communication services such as Skype (voice and video calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network), including any information generated, modified, or stored by user(s) or Provider in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

     c.     All Provider records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

     d.     All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user,

including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.      All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.      All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account,;

g.      Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types

3

of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any Provider account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.      All information held by Provider related to the location and location history of the user(s) of the Account, including geographic locations associated with the Account (including those collected for non-Provider based applications), IP addresses, Global Positioning System ("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell towers;

i.      All records of communications between Provider and any person regarding the Account, including contacts with support services and records of actions taken;

j.      Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel);

k.      Accounts linked by **cookies**, **devices**, **advertiser ID**, **phone number**, or **recovery email**.

Microsoft is hereby ordered to disclose the above information to the government within 10 days of service of this warrant.

III.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, U.S. Code §§ 1343, 1030, and 1956, those violations involving an unknown person(s) using each **Target Microsoft Account** identified on Attachment A-1, information pertaining to the following matters:

(a) Computer intrusion, money laundering, and/or access device fraud;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B-2

## Particular Things to be Seized

### I.      Applicable Time Period

Please provide the information set forth below from the inception of the account(s) to the present.

### II.      Information to be disclosed by Apple Inc. ("Provider")

To the extent that the information described in Attachment A-2 is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each **Target Apple Account** or identifier listed in Attachment A-2:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers

("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.      The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork

(including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.     All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.     All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.     All records pertaining to the types of service used;

i.     All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.     All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

k.     **Linked Target Accounts**:  For any account linked to the **Target Apple Accounts**, including by forwarding or fetching email address, cookie overlap, telephone number,

creating email address, recovery email address, advertising IDs, or creation IP address

(collectively the "Linked Target Accounts"):

    a. For each Linked Target Account:

        i. The name of the **Target Apple Account** it was linked to; and

        ii. The information that linked the Linked Target Account to the **Target Apple Account** (forwarding or fetching account, cookie overlap, phone number, recovery email address, or creation IP address).

    b. The following information about the customers or subscribers of the Linked Target Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses and port numbers) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses);

        vii. Other subscriber numbers or identities (including the registration IP address); and

        viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

Apple is hereby ordered to disclose the above information to the government within 10 days of service of this warrant.

### III.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, U.S. Code §§ 1343, 1030, and 1956, those violations involving an unknown person(s) using each account identified on Attachment A-2, information pertaining to the following matters:

(a) Computer intrusion, money laundering, and/or access device fraud;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their

support staff for their independent review.

**ATTACHMENT B-3**

**Particular Things to be Seized**

I. **Applicable Time Period**

Please provide the information set forth below from the inception of the account(s) to the present.

II. **Information to be disclosed by Google LLC ("Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Provider, including any records that have been deleted but are still available to Provider. Provider is required to disclose the following information to the government corresponding to each account or identifier ("Target Google Account") listed in Attachment A-3:

a. The contents of all communications and related transactional records for all Google Services ever used by the Target Google Account (such as Gmail, Google Hangouts) including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, posts, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating Internet Protocol (IP) addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);

b. All records regarding identification of the Target Google Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of

session times and durations (including IP addresses, cookies, device information, and other

identifiers linked to those sessions), records of account registration (including the IP address,

cookies, device information, and other identifiers linked to account registration), length of

service and types of services utilized, account status, methods of connecting, and server log files;

      c.   The types of service utilized, account records and records and other information,

including content, relating to those services;

      d.   All records or other information stored by an individual using the account,

including address books, contact and buddy lists, calendar data, pictures, and files;

      e.   All records of online search and browsing history associated with the account or

its users (such as through Google Search, Web & App Activity, Google Chrome, and Google

Analytics, including information collected through tracking cookies), including application

usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated

searches, including associated notifications and creation dates; all text typed into the Google

Chrome address bar or Google search bar, including URLs and IP addresses; all URLs or IP

addresses clicked on; user settings; and all associated logs and change history;

      f.   The contents and related transactional information of all records associated with

the account in Google Drive (including Docs, Sheets, Forms, and Slides), including: files,

folders, media, notes, lists, applications and other data uploaded, created, stored, or shared with

the account including drafts and deleted records; third-party application data and backups; SMS

data and backups; the creation and change history of each record; accounts with access to or

which previously accessed each record; any location, device, other Google service, or third-party

application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

      g.   All records and other information associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; third-party data; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs, including access logs and IP addresses, of each record;

      h.   All records and other information concerning any document, website, or other computer file created, stored, revised, or accessed by the account or by an account user (such as using Google Docs, Google Drive, and Google Sites), including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

      i.   All records relating to means of communication linked to the account, including Google Hangouts, to include content, log-in IP addresses associated with session times and dates, account status, methods of connecting, and log files for chat conversations, video calls, Wi-Fi and/or date calls, and text messages;

      j.   The contents of all chats associated with the account, including Google Hangouts in any format (text, audio, or video) including, but not limited to: stored, deleted, and draft chat communications, including attachments and links; the source and destination addresses

associated with each communication, including IP addresses; the size and length of each communication; user settings; and all associated logs, including access logs and change history;

    k.  The contents and related transactional information of all other records associated with the account on Google Cloud storage;

    l.  The contents of all media associated with the account on YouTube, whether active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved to, shared by or shared with the account; edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; playlists; connected applications; associated URLs for each record; creation and change history; privacy settings for each record; and all associated logs, including IP addresses, locations, timestamps, and device identifiers;

    m.  A record of the account's watch history, including: accessed URLs and their associated duration, privacy settings, upload timestamps, tags, IP addresses, change history, location information, and uploading account or identifier; the logs for each access by the account, including IP address, location, timestamp, and device identifier; and change history;

    n.  All business and subscriber records associated with the account on YouTube, including birthday; name; username and other identifiers; linked accounts; alternate or recovery emails; telephone numbers, including SMS recovery numbers; physical addresses; account status; account creation date; account registration IP address; length of service; means and source of payment (including any credit or bank account number); associated devices; associated Android IDs; and associated logs and change history;

o. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

p. All maps data associated with the account, including Google My Maps, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; information associated with locations and other data associated with My Maps and Location Sharing; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

q. All activity relating to Google Play or Google Play Music, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, games, and other files; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

r. All records and transactional information pertaining to other Google services associated with the account, including Google Chrome Sync, Android, Is In Family and Device Centric Auth.

s. All device or user identifiers which have ever been linked to the account, including but not limited to all cookies and similar technologies, Android Device IDs, Advertising ID, unique application number, hardware model, operating system version, device serial number, Global Unique Identifier ("GUID"), mobile network information, telephone

5

number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"), operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account such as Google Cloud Messaging ("GCM");

t. All records of communications between Google and any person regarding the account, including contacts with support services and records of actions taken; and

u. Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel).

2. **Linked Target Accounts**. For any account linked to the **Target Google Account**, including by forwarding or fetching email address, cookie overlap, telephone number, creating email address, recovery email address, advertising IDs, or creation IP address (collectively the "Linked Target Accounts"):

a. For each Linked Target Account:

    i. The name of the **Target Google Account** it was linked to; and

    ii. The information that linked the Linked Target Account to the **Target Google Account** (forwarding or fetching account, cookie overlap, phone number, recovery email address, or creation IP address).

b. The following information about the customers or subscribers of the Linked Target Account:

    i.     Names (including subscriber names, user names, and screen names);

    ii.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.     Local and long distance telephone connection records;

    iv.     Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses and port numbers) associated with those sessions;

    v.     Length of service (including start date) and types of service utilized;

    vi.     Telephone or instrument numbers (including MAC addresses);

    vii.     Other subscriber numbers or identities (including the registration IP address); and

    viii.     Means and source of payment for such service (including any credit card or bank account number) and billing records.

3.  All records pertaining to communications between Google and any person regarding the user or the user's account, including contacts with support services and records of actions taken.

    Google is hereby ordered to disclose the above information to the government within 10 days of service of this warrant.

## III.     Information to be seized by the government

    All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1030 (Unauthorized Computer Access), and 18 U.S.C. § 1956 (Money Laundering) (collectively, "the

Specified Federal Offenses"), those violations involving an unknown person, since account inception to the present, including for each user ID identified on Attachment A, information pertaining to the following matters:

      a.     Any records indicating how and when each Google account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the Specified Federal Offenses and to the Google account owner;

      b.     Any records indicating the Google account owner's state of mind as it relates to the Specified Federal Offenses, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation

      c.     The identity of the person(s) who created, used, or controlled the Google account, including records that help reveal the whereabouts of such person(s);

      d.     Any records relating to the identity of the person(s) using and/or controlling the Target Accounts;

      e.     Any records pertaining to the means and source of payment for services;

      f.     Information and records that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly), or aided and abetted the commission of the Specified Federal Offenses, or (ii) communicated with the Account about matters relating to the criminal activity under investigation (such as customers of the user(s) of the account), including records that help identify any of the foregoing persons or reveal their location and whereabouts; and

      g.     Information and records concerning the sale or purchase of login credentials for online accounts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC**

**RECORDS PURSUANT TO FEDERAL RULES OF
EVIDENCE 902(11) AND 902(13)**

> a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

> b.    such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

>> 1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

>> 2.    the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

> I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

___09/13/2022_____
 Date

10

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
SEVEN TARGET ACCOUNTS THAT ARE
STORED AT PREMISES CONTROLLED BY
THREE PROVIDERS PURSUANT TO 18
U.S.C. § 2703

SC No. 22-2379

FILED UNDER SEAL

## ORDER SEALING WARRANT AND RELATED DOCUMENTS AND
## REQUIRING NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

This matter having come before the Court pursuant to the motion of the United States to seal the above-captioned warrant and related documents, including the application and affidavit in support thereof and all attachments thereto and other related materials (collectively the "Warrant"), and to require **Google LLC**, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043 ("PROVIDER") not to disclose the existence or contents of the Warrant pursuant to 18 U.S.C. § 2705(b), the Court finds reasonable grounds to believe that such disclosure will result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation.

The Court further finds that, because of such reasonable grounds to believe the disclosure will so impact the investigation, the United States has established that a compelling governmental interest exists to justify the requested sealing.

1.     IT IS THEREFORE ORDERED that, pursuant to 18 U.S.C. § 2705(b), PROVIDER and their employees shall not disclose the existence or content of the Warrant to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year   (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

2.     IT IS FURTHER ORDERED that the motion is hereby GRANTED, and that the

warrant, the application and affidavit in support thereof, all attachments thereto and other related materials, the instant motion to seal, and this Order are sealed until otherwise ordered by the Court. Notwithstanding the sealing, the government may disclose the search warrant materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

Date:    September 13, 2022

_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **INFORMATION ASSOCIATED WITH SEVEN TARGET ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY THREE PROVIDERS PURSUANT TO 18 U.S.C. § 2703** | SC No. 22-2379<br><br>FILED UNDER SEAL |

## APPLICATION TO SEAL WARRANT AND RELATED DOCUMENTS AND TO REQUIRE NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

The United States of America, moving by and through its undersigned counsel, respectfully moves the Court for an Order placing the above-captioned search warrant and the application and affidavit in support thereof, and all attachments thereto and other related materials (collectively, the "Warrant") under seal, and precluding the provider from notifying any person of the Warrant pursuant to 18 U.S.C. § 2705(b). In regard to the non-disclosure, the proposed Order would direct Google, Inc. ("PROVIDER"), not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or content of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. The PROVIDER is an electronic communication service provider and/or a remote computing service provider located in the United States.

## JURISDICTION

1. This Court has jurisdiction to issue the requested order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

**FACTUAL BACKGROUND SUPPORTING SEALING AND NON-DISCLOSURE**

<div style="border:1px solid;height:120px;"></div>

## LEGAL BACKGROUND FOR NON-DISCLOSURE

5.     PROVIDER provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or a "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, governs how PROVIDER may be compelled to supply communications and other records related to that service using a subpoena, court order, or search warrant.   Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic "subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a), (b)(1)(A), and (c) allows the Government to obtain contents of communications, as well as non-content information and records or other information about a subscriber or customer of such service, by means of a properly-issued search warrant.  *See* 18 U.S.C. § 2703(a)-(c).

6.     The government is not required to notify the customer or subscriber of the Warrant or information obtained pursuant to the Warrant.  18 U.S.C. § 2703(a), (b)(1), (c)(3).[1]

7.     The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703.  However, many have voluntarily adopted policies of notifying subscribers about such legal requests.  Accordingly, when necessary,

---

[1] 18 U.S.C. § 2703(b)(1)(A) provides that a "governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication . . . (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction."

Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such notification.  In relevant part, Section 2705(b) provides as follows:

> (b) **Preclusion of notice to subject of governmental access**. — A governmental entity acting under section 2703 . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order.  The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
>> (1) endangering the life or physical safety of an individual;
>> (2) flight from prosecution;
>> (3) destruction of or tampering with evidence;
>> (4) intimidation of potential witnesses; or
>> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b).  The United States District Court for the District of Columbia has made clear that a nondisclosure order under Section 2705(b) must be issued once the Government makes the requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there is reason to believe that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the court must enter an order commanding a service provider to delay notice to a customer for a period of time that the court determines is appropriate. Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

8.     Accordingly, this application sets forth facts showing reasonable grounds to command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year

4

(commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

## LEGAL BACKGROUND FOR SEALING

9.  In this matter, the Government also requests that the Warrant, this motion, and the Order all be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the Warrant. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Warrant and related filings to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

## REQUEST FOR SEALING AND NON-DISCLOSURE

10.  In this matter, the government requests that the Warrant be sealed until further order of the Court and that PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

11.  Such an order is appropriate because the Warrant relates to an ongoing criminal investigation. The full scope of the investigation is not known to other individuals under investigation, including the users of the PROVIDER's accounts the government seeks to search in conjunction with this Warrant application. Accordingly, disclosure may reveal the existence, scope, and direction of the Government's ongoing investigation. Once alerted to this investigation, potential subject(s) could be immediately prompted to flee from prosecution, destroy or conceal

incriminating evidence, alter their operational tactics to avoid future detection, attempt to influence or intimidate potential witnesses, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential subject(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

12. Given the complex nature of the criminal activity under investigation and involvement of foreign-based subjects and evidence, the Government anticipates that this investigation could continue for one year or longer.

13. Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Warrant would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5). Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the government will make best efforts to notify the Court promptly and seek appropriate relief.

14. Based on prior dealings with PROVIDER, the United States is aware that, absent a court order under section 2705(b) commanding PROVIDER to delay notice to their subscriber(s) or customer(s), it is PROVIDER's policy and practice, upon receipt of a warrant seeking the contents of electronically stored wire or electronic communications for a certain account, to notify the subscriber or customer of the existence of the warrant prior to producing the material sought.

15.     For the reasons stated above, because of such potential jeopardy to the investigation, there also exists a compelling governmental interest in confidentiality to justify sealing the Warrant, this motion, and this Order.  *See Robinson*, 935 F.2d at 287-89.

16.     Notwithstanding the request to seal the search warrant materials, the Government also requests that it be permitted to disclose the materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

ACCORDINGLY, it is respectfully requested that the above-captioned warrant, the application and affidavit in support thereof, and all attachments thereto and other related materials be placed under seal, and further that the Court grant the attached order directing that PROVIDER shall not notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or contents of the Warrant for one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:     _/s/ John W. Borchert_____
        JOHN W. BORCHERT
        Assistant United States Attorney
        D.C Bar Number 472824
        United States Attorney's Office
        555 Fourth Street, N.W.
        Washington, D.C.  20530
        Telephone: 202-252-7679
        Email:  john.borchert@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SEVEN TARGET ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY THREE PROVIDERS PURSUANT TO 18 U.S.C. § 2703**

SC No. 22-2379

FILED UNDER SEAL

## ORDER SEALING WARRANT AND RELATED DOCUMENTS AND REQUIRING NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

This matter having come before the Court pursuant to the motion of the United States to seal the above-captioned warrant and related documents, including the application and affidavit in support thereof and all attachments thereto and other related materials (collectively the "Warrant"), and to require **Apple, Inc.**, a company headquartered at 1 Infinite Loop, Cupertino, CA 95014 ("PROVIDER") not to disclose the existence or contents of the Warrant pursuant to 18 U.S.C. § 2705(b), the Court finds reasonable grounds to believe that such disclosure will result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation.

The Court further finds that, because of such reasonable grounds to believe the disclosure will so impact the investigation, the United States has established that a compelling governmental interest exists to justify the requested sealing.

1.     IT IS THEREFORE ORDERED that, pursuant to 18 U.S.C. § 2705(b), PROVIDER and their employees shall not disclose the existence or content of the Warrant to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year   (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

2.     IT IS FURTHER ORDERED that the motion is hereby GRANTED, and that the

warrant, the application and affidavit in support thereof, all attachments thereto and other related materials, the instant motion to seal, and this Order are sealed until otherwise ordered by the Court. Notwithstanding the sealing, the government may disclose the search warrant materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

Date:    September 13, 2022

_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SEVEN TARGET ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY THREE PROVIDERS PURSUANT TO 18 U.S.C. § 2703**

**SC No. 22-2379**

**FILED UNDER SEAL**

## APPLICATION TO SEAL WARRANT AND RELATED DOCUMENTS AND TO REQUIRE NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

The United States of America, moving by and through its undersigned counsel, respectfully moves the Court for an Order placing the above-captioned search warrant and the application and affidavit in support thereof, and all attachments thereto and other related materials (collectively, the "Warrant") under seal, and precluding the provider from notifying any person of the Warrant pursuant to 18 U.S.C. § 2705(b). In regard to the non-disclosure, the proposed Order would direct Apple, Inc. ("PROVIDER"), not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or content of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. The PROVIDER is an electronic communication service provider and/or a remote computing service provider located in the United States.

## JURISDICTION

1. This Court has jurisdiction to issue the requested order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

**FACTUAL BACKGROUND SUPPORTING SEALING AND NON-DISCLOSURE**

**LEGAL BACKGROUND FOR NON-DISCLOSURE**

5.     PROVIDER provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or a "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, governs how PROVIDER may be compelled to supply communications and other records related to that service using a subpoena, court order, or search warrant.  Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic "subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a), (b)(1)(A), and (c) allows the Government to obtain contents of communications, as well as non-content information and records or other information about a subscriber or customer of such service, by means of a properly-issued search warrant.  *See* 18 U.S.C. § 2703(a)-(c).

6.     The government is not required to notify the customer or subscriber of the Warrant or information obtained pursuant to the Warrant.  18 U.S.C. § 2703(a), (b)(1), (c)(3).[1]

7.     The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703.  However, many have voluntarily adopted policies of notifying subscribers about such legal requests.  Accordingly, when necessary,

---

[1] 18 U.S.C. § 2703(b)(1)(A) provides that a "governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication . . . (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction."

Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such notification.  In relevant part, Section 2705(b) provides as follows:

> (b) **Preclusion of notice to subject of governmental access**. — A governmental entity acting under section 2703 . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order.  The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
>> (1) endangering the life or physical safety of an individual;
>> (2) flight from prosecution;
>> (3) destruction of or tampering with evidence;
>> (4) intimidation of potential witnesses; or
>> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b).  The United States District Court for the District of Columbia has made clear that a nondisclosure order under Section 2705(b) must be issued once the Government makes the requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there is reason to believe that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the court must enter an order commanding a service provider to delay notice to a customer for a period of time that the court determines is appropriate. Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

8.     Accordingly, this application sets forth facts showing reasonable grounds to command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year

(commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

## LEGAL BACKGROUND FOR SEALING

9.      In this matter, the Government also requests that the Warrant, this motion, and the Order all be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the Warrant.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Warrant and related filings to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant.  *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

## REQUEST FOR SEALING AND NON-DISCLOSURE

10.      In this matter, the government requests that the Warrant be sealed until further order of the Court and that PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

11.      Such an order is appropriate because the Warrant relates to an ongoing criminal investigation. The full scope of the investigation is not known to other individuals under investigation, including the users of the PROVIDER's accounts the government seeks to search in conjunction with this Warrant application.  Accordingly, disclosure may reveal the existence, scope, and direction of the Government's ongoing investigation. Once alerted to this investigation, potential subject(s) could be immediately prompted to flee from prosecution, destroy or conceal

incriminating evidence, alter their operational tactics to avoid future detection, attempt to influence or intimidate potential witnesses, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential subject(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

12. Given the complex nature of the criminal activity under investigation and involvement of foreign-based subjects and evidence, the Government anticipates that this investigation could continue for one year or longer.

13. Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Warrant would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5). Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the government will make best efforts to notify the Court promptly and seek appropriate relief.

14. Based on prior dealings with PROVIDER, the United States is aware that, absent a court order under section 2705(b) commanding PROVIDER to delay notice to their subscriber(s) or customer(s), it is PROVIDER's policy and practice, upon receipt of a warrant seeking the contents of electronically stored wire or electronic communications for a certain account, to notify the subscriber or customer of the existence of the warrant prior to producing the material sought.

15. For the reasons stated above, because of such potential jeopardy to the investigation, there also exists a compelling governmental interest in confidentiality to justify sealing the Warrant, this motion, and this Order. *See Robinson*, 935 F.2d at 287-89.

16. Notwithstanding the request to seal the search warrant materials, the Government also requests that it be permitted to disclose the materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

ACCORDINGLY, it is respectfully requested that the above-captioned warrant, the application and affidavit in support thereof, and all attachments thereto and other related materials be placed under seal, and further that the Court grant the attached order directing that PROVIDER shall not notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or contents of the Warrant for one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:    */s/ John W. Borchert*
    JOHN W. BORCHERT
    Assistant United States Attorney
    D.C Bar Number 472824
    United States Attorney's Office
    555 Fourth Street, N.W.
    Washington, D.C. 20530
    Telephone: 202-252-7679
    Email: john.borchert@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SEVEN TARGET ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY THREE PROVIDERS PURSUANT TO 18 U.S.C. § 2703**

**SC No. 22-2379**

**FILED UNDER SEAL**

## ORDER SEALING WARRANT AND RELATED DOCUMENTS AND REQUIRING NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

This matter having come before the Court pursuant to the motion of the United States to seal the above-captioned warrant and related documents, including the application and affidavit in support thereof and all attachments thereto and other related materials (collectively the "Warrant"), and to require **Microsoft Corporation**, a company headquartered at 1 Microsoft Way, Redmond, Washington 98052 ("PROVIDER") not to disclose the existence or contents of the Warrant pursuant to 18 U.S.C. § 2705(b), the Court finds reasonable grounds to believe that such disclosure will result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation.

The Court further finds that, because of such reasonable grounds to believe the disclosure will so impact the investigation, the United States has established that a compelling governmental interest exists to justify the requested sealing.

1.     IT IS THEREFORE ORDERED that, pursuant to 18 U.S.C. § 2705(b), PROVIDER and their employees shall not disclose the existence or content of the Warrant to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year   (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

2.     IT IS FURTHER ORDERED that the motion is hereby GRANTED, and that the

warrant, the application and affidavit in support thereof, all attachments thereto and other related materials, the instant motion to seal, and this Order are sealed until otherwise ordered by the Court. Notwithstanding the sealing, the government may disclose the search warrant materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

Date:     September 13, 2022

_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SEVEN TARGET ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY THREE PROVIDERS PURSUANT TO 18 U.S.C. § 2703 | SC No. 22-2379 FILED UNDER SEAL |

## APPLICATION TO SEAL WARRANT AND RELATED DOCUMENTS AND TO REQUIRE NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

The United States of America, moving by and through its undersigned counsel, respectfully moves the Court for an Order placing the above-captioned search warrant and the application and affidavit in support thereof, and all attachments thereto and other related materials (collectively, the "Warrant") under seal, and precluding the provider from notifying any person of the Warrant pursuant to 18 U.S.C. § 2705(b). In regard to the non-disclosure, the proposed Order would direct Microsoft Corporation ("PROVIDER"), not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or content of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. The PROVIDER is an electronic communication service provider and/or a remote computing service provider located in the United States.

## JURISDICTION

1. This Court has jurisdiction to issue the requested order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

**FACTUAL BACKGROUND SUPPORTING SEALING AND NON-DISCLOSURE**

**LEGAL BACKGROUND FOR NON-DISCLOSURE**

5.     PROVIDER provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or a "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, governs how PROVIDER may be compelled to supply communications and other records related to that service using a subpoena, court order, or search warrant.   Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic "subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a), (b)(1)(A), and (c) allows the Government to obtain contents of communications, as well as non-content information and records or other information about a subscriber or customer of such service, by means of a properly-issued search warrant.  *See* 18 U.S.C. § 2703(a)-(c).

6.     The government is not required to notify the customer or subscriber of the Warrant or information obtained pursuant to the Warrant.  18 U.S.C. § 2703(a), (b)(1), (c)(3).[1]

7.     The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703.  However, many have voluntarily adopted policies of notifying subscribers about such legal requests.  Accordingly, when necessary,

---

[1] 18 U.S.C. § 2703(b)(1)(A) provides that a "governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication . . . (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction."

Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such notification. In relevant part, Section 2705(b) provides as follows:

> (b) **Preclusion of notice to subject of governmental access**. — A governmental entity acting under section 2703 . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
>> (1) endangering the life or physical safety of an individual;
>> (2) flight from prosecution;
>> (3) destruction of or tampering with evidence;
>> (4) intimidation of potential witnesses; or
>> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b). The United States District Court for the District of Columbia has made clear that a nondisclosure order under Section 2705(b) must be issued once the Government makes the requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there is reason to believe that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the court must enter an order commanding a service provider to delay notice to a customer for a period of time that the court determines is appropriate. Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

8. Accordingly, this application sets forth facts showing reasonable grounds to command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year

4

(commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

## LEGAL BACKGROUND FOR SEALING

9. In this matter, the Government also requests that the Warrant, this motion, and the Order all be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the Warrant. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Warrant and related filings to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

## REQUEST FOR SEALING AND NON-DISCLOSURE

10. In this matter, the government requests that the Warrant be sealed until further order of the Court and that PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

11. Such an order is appropriate because the Warrant relates to an ongoing criminal investigation. The full scope of the investigation is not known to other individuals under investigation, including the users of the PROVIDER's accounts the government seeks to search in conjunction with this Warrant application. Accordingly, disclosure may reveal the existence, scope, and direction of the Government's ongoing investigation. Once alerted to this investigation, potential subject(s) could be immediately prompted to flee from prosecution, destroy or conceal

incriminating evidence, alter their operational tactics to avoid future detection, attempt to influence or intimidate potential witnesses, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential subject(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

12. Given the complex nature of the criminal activity under investigation and involvement of foreign-based subjects and evidence, the Government anticipates that this investigation could continue for one year or longer.

13. Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Warrant would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5). Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the government will make best efforts to notify the Court promptly and seek appropriate relief.

14. Based on prior dealings with PROVIDER, the United States is aware that, absent a court order under section 2705(b) commanding PROVIDER to delay notice to their subscriber(s) or customer(s), it is PROVIDER's policy and practice, upon receipt of a warrant seeking the contents of electronically stored wire or electronic communications for a certain account, to notify the subscriber or customer of the existence of the warrant prior to producing the material sought.

15.    For the reasons stated above, because of such potential jeopardy to the investigation, there also exists a compelling governmental interest in confidentiality to justify sealing the Warrant, this motion, and this Order.  *See Robinson*, 935 F.2d at 287-89.

16.    Notwithstanding the request to seal the search warrant materials, the Government also requests that it be permitted to disclose the materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

ACCORDINGLY, it is respectfully requested that the above-captioned warrant, the application and affidavit in support thereof, and all attachments thereto and other related materials be placed under seal, and further that the Court grant the attached order directing that PROVIDER shall not notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or contents of the Warrant for one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:    */s/ John W. Borchert*
       JOHN W. BORCHERT
       Assistant United States Attorney
       D.C Bar Number 472824
       United States Attorney's Office
       555 Fourth Street, N.W.
       Washington, D.C.  20530
       Telephone: 202-252-7679
       Email:  john.borchert@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SEVEN TARGET ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY THREE PROVIDERS PURSUANT TO 18 U.S.C. § 2703** | **SC No. 22-2379** |
| | **FILED UNDER SEAL** |

## APPLICATION TO SEAL WARRANT AND RELATED DOCUMENTS AND TO REQUIRE NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

The United States of America, moving by and through its undersigned counsel, respectfully moves the Court for an Order placing the above-captioned search warrant and the application and affidavit in support thereof, and all attachments thereto and other related materials (collectively, the "Warrant") under seal, and precluding the provider from notifying any person of the Warrant pursuant to 18 U.S.C. § 2705(b). In regard to the non-disclosure, the proposed Order would direct Apple, Inc. ("PROVIDER"), not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or content of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. The PROVIDER is an electronic communication service provider and/or a remote computing service provider located in the United States.

## JURISDICTION

1. This Court has jurisdiction to issue the requested order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

**FACTUAL BACKGROUND SUPPORTING SEALING AND NON-DISCLOSURE**

## LEGAL BACKGROUND FOR NON-DISCLOSURE

5.     PROVIDER provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or a "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, governs how PROVIDER may be compelled to supply communications and other records related to that service using a subpoena, court order, or search warrant.   Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic "subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a), (b)(1)(A), and (c) allows the Government to obtain contents of communications, as well as non-content information and records or other information about a subscriber or customer of such service, by means of a properly-issued search warrant.  *See* 18 U.S.C. § 2703(a)-(c).

6.     The government is not required to notify the customer or subscriber of the Warrant or information obtained pursuant to the Warrant.  18 U.S.C. § 2703(a), (b)(1), (c)(3).[1]

7.     The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703.  However, many have voluntarily adopted policies of notifying subscribers about such legal requests.  Accordingly, when necessary,

---

[1] 18 U.S.C. § 2703(b)(1)(A) provides that a "governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication . . . (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction."

Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such notification. In relevant part, Section 2705(b) provides as follows:

> (b) **Preclusion of notice to subject of governmental access**. — A governmental entity acting under section 2703 . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
> > (1) endangering the life or physical safety of an individual;
> > (2) flight from prosecution;
> > (3) destruction of or tampering with evidence;
> > (4) intimidation of potential witnesses; or
> > (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b). The United States District Court for the District of Columbia has made clear that a nondisclosure order under Section 2705(b) must be issued once the Government makes the requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there is reason to believe that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the court must enter an order commanding a service provider to delay notice to a customer for a period of time that the court determines is appropriate. Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

8. Accordingly, this application sets forth facts showing reasonable grounds to command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year

(commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

## LEGAL BACKGROUND FOR SEALING

9. In this matter, the Government also requests that the Warrant, this motion, and the Order all be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the Warrant. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Warrant and related filings to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

## REQUEST FOR SEALING AND NON-DISCLOSURE

10. In this matter, the government requests that the Warrant be sealed until further order of the Court and that PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

11. Such an order is appropriate because the Warrant relates to an ongoing criminal investigation. The full scope of the investigation is not known to other individuals under investigation, including the users of the PROVIDER's accounts the government seeks to search in conjunction with this Warrant application. Accordingly, disclosure may reveal the existence, scope, and direction of the Government's ongoing investigation. Once alerted to this investigation, potential subject(s) could be immediately prompted to flee from prosecution, destroy or conceal

incriminating evidence, alter their operational tactics to avoid future detection, attempt to influence or intimidate potential witnesses, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential subject(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

12. Given the complex nature of the criminal activity under investigation and involvement of foreign-based subjects and evidence, the Government anticipates that this investigation could continue for one year or longer.

13. Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Warrant would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5). Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the government will make best efforts to notify the Court promptly and seek appropriate relief.

14. Based on prior dealings with PROVIDER, the United States is aware that, absent a court order under section 2705(b) commanding PROVIDER to delay notice to their subscriber(s) or customer(s), it is PROVIDER's policy and practice, upon receipt of a warrant seeking the contents of electronically stored wire or electronic communications for a certain account, to notify the subscriber or customer of the existence of the warrant prior to producing the material sought.

15.     For the reasons stated above, because of such potential jeopardy to the investigation, there also exists a compelling governmental interest in confidentiality to justify sealing the Warrant, this motion, and this Order.  *See Robinson*, 935 F.2d at 287-89.

16.     Notwithstanding the request to seal the search warrant materials, the Government also requests that it be permitted to disclose the materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

ACCORDINGLY, it is respectfully requested that the above-captioned warrant, the application and affidavit in support thereof, and all attachments thereto and other related materials be placed under seal, and further that the Court grant the attached order directing that PROVIDER shall not notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or contents of the Warrant for one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:     _/s/ John W. Borchert_____
        JOHN W. BORCHERT
        Assistant United States Attorney
        D.C Bar Number 472824
        United States Attorney's Office
        555 Fourth Street, N.W.
        Washington, D.C.  20530
        Telephone: 202-252-7679
        Email:  john.borchert@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
**INFORMATION ASSOCIATED WITH SEVEN**
**TARGET ACCOUNTS THAT ARE STORED**      SC No. 22-2379
**AT PREMISES CONTROLLED BY THREE**
**PROVIDERS PURSUANT TO 18 U.S.C. § 2703**      **FILED UNDER SEAL**

## APPLICATION TO SEAL WARRANT AND RELATED DOCUMENTS AND TO REQUIRE NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

The United States of America, moving by and through its undersigned counsel, respectfully moves the Court for an Order placing the above-captioned search warrant and the application and affidavit in support thereof, and all attachments thereto and other related materials (collectively, the "Warrant") under seal, and precluding the provider from notifying any person of the Warrant pursuant to 18 U.S.C. § 2705(b). In regard to the non-disclosure, the proposed Order would direct Google, Inc. ("PROVIDER"), not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or content of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. The PROVIDER is an electronic communication service provider and/or a remote computing service provider located in the United States.

## JURISDICTION

1. This Court has jurisdiction to issue the requested order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

**FACTUAL BACKGROUND SUPPORTING SEALING AND NON-DISCLOSURE**

## LEGAL BACKGROUND FOR NON-DISCLOSURE

5.       PROVIDER provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or a "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, governs how PROVIDER may be compelled to supply communications and other records related to that service using a subpoena, court order, or search warrant.   Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic "subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a), (b)(1)(A), and (c) allows the Government to obtain contents of communications, as well as non-content information and records or other information about a subscriber or customer of such service, by means of a properly-issued search warrant.  *See* 18 U.S.C. § 2703(a)-(c).

6.       The government is not required to notify the customer or subscriber of the Warrant or information obtained pursuant to the Warrant.  18 U.S.C. § 2703(a), (b)(1), (c)(3).[1]

7.       The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703.  However, many have voluntarily adopted policies of notifying subscribers about such legal requests.  Accordingly, when necessary,

---

[1] 18 U.S.C. § 2703(b)(1)(A) provides that a "governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication . . . (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction."

Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such

notification.  In relevant part, Section 2705(b) provides as follows:

> (b) **Preclusion of notice to subject of governmental access**. — A governmental
> entity acting under section 2703 . . . may apply to a court for an order commanding
> a provider of electronic communications service or remote computing service to
> whom a warrant, subpoena, or court order is directed, for such period as the court
> deems appropriate, not to notify any other person of the existence of the warrant,
> subpoena, or court order.  The court shall enter such an order if it determines that
> there is reason to believe that notification of the existence of the warrant, subpoena,
> or court order will result in—
>> (1) endangering the life or physical safety of an individual;
>> (2) flight from prosecution;
>> (3) destruction of or tampering with evidence;
>> (4) intimidation of potential witnesses; or
>> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b).  The United States District Court for the District of Columbia has made clear

that a nondisclosure order under Section 2705(b) must be issued once the Government makes the

requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there
> is reason to believe that notifying the customer or subscriber of the court order or
> subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the
> court must enter an order commanding a service provider to delay notice to a
> customer for a period of time that the court determines is appropriate. Once the
> government makes the required showing under § 2705(b), the court is required to
> issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury*

*Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

8.      Accordingly, this application sets forth facts showing reasonable grounds to

command PROVIDER not to notify any other person (except attorneys for PROVIDER for the

purpose of receiving legal advice) of the existence of the Warrant for a period of one year

(commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

## LEGAL BACKGROUND FOR SEALING

9.     In this matter, the Government also requests that the Warrant, this motion, and the Order all be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the Warrant. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Warrant and related filings to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

## REQUEST FOR SEALING AND NON-DISCLOSURE

10.     In this matter, the government requests that the Warrant be sealed until further order of the Court and that PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

11.     Such an order is appropriate because the Warrant relates to an ongoing criminal investigation. The full scope of the investigation is not known to other individuals under investigation, including the users of the PROVIDER's accounts the government seeks to search in conjunction with this Warrant application. Accordingly, disclosure may reveal the existence, scope, and direction of the Government's ongoing investigation. Once alerted to this investigation, potential subject(s) could be immediately prompted to flee from prosecution, destroy or conceal

incriminating evidence, alter their operational tactics to avoid future detection, attempt to influence or intimidate potential witnesses, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential subject(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

12. Given the complex nature of the criminal activity under investigation and involvement of foreign-based subjects and evidence, the Government anticipates that this investigation could continue for one year or longer.

13. Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Warrant would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5). Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the government will make best efforts to notify the Court promptly and seek appropriate relief.

14. Based on prior dealings with PROVIDER, the United States is aware that, absent a court order under section 2705(b) commanding PROVIDER to delay notice to their subscriber(s) or customer(s), it is PROVIDER's policy and practice, upon receipt of a warrant seeking the contents of electronically stored wire or electronic communications for a certain account, to notify the subscriber or customer of the existence of the warrant prior to producing the material sought.

15.     For the reasons stated above, because of such potential jeopardy to the investigation, there also exists a compelling governmental interest in confidentiality to justify sealing the Warrant, this motion, and this Order. *See Robinson*, 935 F.2d at 287-89.

16.     Notwithstanding the request to seal the search warrant materials, the Government also requests that it be permitted to disclose the materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

ACCORDINGLY, it is respectfully requested that the above-captioned warrant, the application and affidavit in support thereof, and all attachments thereto and other related materials be placed under seal, and further that the Court grant the attached order directing that PROVIDER shall not notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or contents of the Warrant for one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:     /s/ John W. Borchert
          JOHN W. BORCHERT
          Assistant United States Attorney
          D.C Bar Number 472824
          United States Attorney's Office
          555 Fourth Street, N.W.
          Washington, D.C.  20530
          Telephone: 202-252-7679
          Email:  john.borchert@usdoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH SEVEN
TARGET ACCOUNTS THAT ARE STORED          SC No. 22-2379
AT PREMISES CONTROLLED BY THREE
PROVIDERS PURSUANT TO 18 U.S.C. § 2703   FILED UNDER SEAL

## APPLICATION TO SEAL WARRANT AND RELATED DOCUMENTS AND
## TO REQUIRE NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

The United States of America, moving by and through its undersigned counsel, respectfully

moves the Court for an Order placing the above-captioned search warrant and the application and

affidavit in support thereof, and all attachments thereto and other related materials (collectively,

the "Warrant") under seal, and precluding the provider from notifying any person of the Warrant

pursuant to 18 U.S.C. § 2705(b). In regard to the non-disclosure, the proposed Order would direct

Microsoft Corporation ("PROVIDER"), not to notify any other person (except attorneys for

PROVIDER for the purpose of receiving legal advice) of the existence or content of the Warrant

for a period of one year (commencing on the date of the proposed Order), unless the period of

nondisclosure is later modified by the Court. The PROVIDER is an electronic communication

service provider and/or a remote computing service provider located in the United States.

## JURISDICTION

1.      This Court has jurisdiction to issue the requested order because it is a "court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a "district court

of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. §

2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses

under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

**FACTUAL BACKGROUND SUPPORTING SEALING AND NON-DISCLOSURE**

**LEGAL BACKGROUND FOR NON-DISCLOSURE**

5.      PROVIDER provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or a "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, governs how PROVIDER may be compelled to supply communications and other records related to that service using a subpoena, court order, or search warrant.  Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic "subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a), (b)(1)(A), and (c) allows the Government to obtain contents of communications, as well as non-content information and records or other information about a subscriber or customer of such service, by means of a properly-issued search warrant.  *See* 18 U.S.C. § 2703(a)-(c).

6.      The government is not required to notify the customer or subscriber of the Warrant or information obtained pursuant to the Warrant.  18 U.S.C. § 2703(a), (b)(1), (c)(3).[1]

7.      The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703.  However, many have voluntarily adopted policies of notifying subscribers about such legal requests.  Accordingly, when necessary,

---

[1] 18 U.S.C. § 2703(b)(1)(A) provides that a "governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication . . . (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction."

Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such notification. In relevant part, Section 2705(b) provides as follows:

> (b) **Preclusion of notice to subject of governmental access**. — A governmental entity acting under section 2703 . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
>> (1) endangering the life or physical safety of an individual;
>> (2) flight from prosecution;
>> (3) destruction of or tampering with evidence;
>> (4) intimidation of potential witnesses; or
>> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b). The United States District Court for the District of Columbia has made clear that a nondisclosure order under Section 2705(b) must be issued once the Government makes the requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there is reason to believe that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the court must enter an order commanding a service provider to delay notice to a customer for a period of time that the court determines is appropriate. Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

8.      Accordingly, this application sets forth facts showing reasonable grounds to command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year

(commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

## LEGAL BACKGROUND FOR SEALING

9.      In this matter, the Government also requests that the Warrant, this motion, and the Order all be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the Warrant.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Warrant and related filings to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant.  *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

## REQUEST FOR SEALING AND NON-DISCLOSURE

10.      In this matter, the government requests that the Warrant be sealed until further order of the Court and that PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

11.      Such an order is appropriate because the Warrant relates to an ongoing criminal investigation. The full scope of the investigation is not known to other individuals under investigation, including the users of the PROVIDER's accounts the government seeks to search in conjunction with this Warrant application.  Accordingly, disclosure may reveal the existence, scope, and direction of the Government's ongoing investigation. Once alerted to this investigation, potential subject(s) could be immediately prompted to flee from prosecution, destroy or conceal

incriminating evidence, alter their operational tactics to avoid future detection, attempt to influence or intimidate potential witnesses, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential subject(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

12. Given the complex nature of the criminal activity under investigation and involvement of foreign-based subjects and evidence, the Government anticipates that this investigation could continue for one year or longer.

13. Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Warrant would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5). Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the government will make best efforts to notify the Court promptly and seek appropriate relief.

14. Based on prior dealings with PROVIDER, the United States is aware that, absent a court order under section 2705(b) commanding PROVIDER to delay notice to their subscriber(s) or customer(s), it is PROVIDER's policy and practice, upon receipt of a warrant seeking the contents of electronically stored wire or electronic communications for a certain account, to notify the subscriber or customer of the existence of the warrant prior to producing the material sought.

15.     For the reasons stated above, because of such potential jeopardy to the investigation, there also exists a compelling governmental interest in confidentiality to justify sealing the Warrant, this motion, and this Order.  *See Robinson*, 935 F.2d at 287-89.

16.     Notwithstanding the request to seal the search warrant materials, the Government also requests that it be permitted to disclose the materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

ACCORDINGLY, it is respectfully requested that the above-captioned warrant, the application and affidavit in support thereof, and all attachments thereto and other related materials be placed under seal, and further that the Court grant the attached order directing that PROVIDER shall not notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or contents of the Warrant for one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:     _/s/ John W. Borchert_____
        JOHN W. BORCHERT
        Assistant United States Attorney
        D.C Bar Number 472824
        United States Attorney's Office
        555 Fourth Street, N.W.
        Washington, D.C.  20530
        Telephone: 202-252-7679
        Email:  john.borchert@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SEVEN TARGET ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY THREE PROVIDERS PURSUANT TO 18 U.S.C. § 2703** | **SC No. 22-2379** <br><br> **FILED UNDER SEAL** |

## APPLICATION TO SEAL WARRANT AND RELATED DOCUMENTS AND TO REQUIRE NON-DISCLOSURE UNDER 18 U.S.C. § 2705(b)

The United States of America, moving by and through its undersigned counsel, respectfully moves the Court for an Order placing the above-captioned search warrant and the application and affidavit in support thereof, and all attachments thereto and other related materials (collectively, the "Warrant") under seal, and precluding the provider from notifying any person of the Warrant pursuant to 18 U.S.C. § 2705(b). In regard to the non-disclosure, the proposed Order would direct Microsoft Corporation ("PROVIDER"), not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or content of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. The PROVIDER is an electronic communication service provider and/or a remote computing service provider located in the United States.

## JURISDICTION

1.      This Court has jurisdiction to issue the requested order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

**FACTUAL BACKGROUND SUPPORTING SEALING AND NON-DISCLOSURE**

## LEGAL BACKGROUND FOR NON-DISCLOSURE

5.      PROVIDER provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or a "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, governs how PROVIDER may be compelled to supply communications and other records related to that service using a subpoena, court order, or search warrant.  Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic "subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a), (b)(1)(A), and (c) allows the Government to obtain contents of communications, as well as non-content information and records or other information about a subscriber or customer of such service, by means of a properly-issued search warrant.  *See* 18 U.S.C. § 2703(a)-(c).

6.      The government is not required to notify the customer or subscriber of the Warrant or information obtained pursuant to the Warrant.  18 U.S.C. § 2703(a), (b)(1), (c)(3).[1]

7.      The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703.  However, many have voluntarily adopted policies of notifying subscribers about such legal requests.  Accordingly, when necessary,

---

[1] 18 U.S.C. § 2703(b)(1)(A) provides that a "governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication . . . (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction."

Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such

notification.  In relevant part, Section 2705(b) provides as follows:

> (b) **Preclusion of notice to subject of governmental access**. — A governmental
> entity acting under section 2703 . . . may apply to a court for an order commanding
> a provider of electronic communications service or remote computing service to
> whom a warrant, subpoena, or court order is directed, for such period as the court
> deems appropriate, not to notify any other person of the existence of the warrant,
> subpoena, or court order.  The court shall enter such an order if it determines that
> there is reason to believe that notification of the existence of the warrant, subpoena,
> or court order will result in—
>> (1) endangering the life or physical safety of an individual;
>> (2) flight from prosecution;
>> (3) destruction of or tampering with evidence;
>> (4) intimidation of potential witnesses; or
>> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b).  The United States District Court for the District of Columbia has made clear

that a nondisclosure order under Section 2705(b) must be issued once the Government makes the

requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there
> is reason to believe that notifying the customer or subscriber of the court order or
> subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the
> court must enter an order commanding a service provider to delay notice to a
> customer for a period of time that the court determines is appropriate. Once the
> government makes the required showing under § 2705(b), the court is required to
> issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury*

*Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

8.      Accordingly, this application sets forth facts showing reasonable grounds to

command PROVIDER not to notify any other person (except attorneys for PROVIDER for the

purpose of receiving legal advice) of the existence of the Warrant for a period of one year

(commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

## LEGAL BACKGROUND FOR SEALING

9.      In this matter, the Government also requests that the Warrant, this motion, and the Order all be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the Warrant.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Warrant and related filings to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant.  *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

## REQUEST FOR SEALING AND NON-DISCLOSURE

10.      In this matter, the government requests that the Warrant be sealed until further order of the Court and that PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

11.      Such an order is appropriate because the Warrant relates to an ongoing criminal investigation. The full scope of the investigation is not known to other individuals under investigation, including the users of the PROVIDER's accounts the government seeks to search in conjunction with this Warrant application.  Accordingly, disclosure may reveal the existence, scope, and direction of the Government's ongoing investigation. Once alerted to this investigation, potential subject(s) could be immediately prompted to flee from prosecution, destroy or conceal

incriminating evidence, alter their operational tactics to avoid future detection, attempt to influence or intimidate potential witnesses, and otherwise take steps to undermine the investigation and avoid future prosecution.  In particular, given that they are known to use electronic communication and remote computing services, the potential subject(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

12.     Given the complex nature of the criminal activity under investigation and involvement of foreign-based subjects and evidence, the Government anticipates that this investigation could continue for one year or longer.

13.     Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Warrant would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation.  *See* 18 U.S.C. § 2705(b)(2)-(5).  Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.  Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the government will make best efforts to notify the Court promptly and seek appropriate relief.

14.     Based on prior dealings with PROVIDER, the United States is aware that, absent a court order under section 2705(b) commanding PROVIDER to delay notice to their subscriber(s) or customer(s), it is PROVIDER's policy and practice, upon receipt of a warrant seeking the contents of electronically stored wire or electronic communications for a certain account, to notify the subscriber or customer of the existence of the warrant prior to producing the material sought.

15.     For the reasons stated above, because of such potential jeopardy to the investigation, there also exists a compelling governmental interest in confidentiality to justify sealing the Warrant, this motion, and this Order.  *See Robinson*, 935 F.2d at 287-89.

16.     Notwithstanding the request to seal the search warrant materials, the Government also requests that it be permitted to disclose the materials in furtherance of its law enforcement and prosecution needs and discovery obligations.

ACCORDINGLY, it is respectfully requested that the above-captioned warrant, the application and affidavit in support thereof, and all attachments thereto and other related materials be placed under seal, and further that the Court grant the attached order directing that PROVIDER shall not notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or contents of the Warrant for one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:     _/s/ John W. Borchert_____
          JOHN W. BORCHERT
          Assistant United States Attorney
          D.C Bar Number 472824
          United States Attorney's Office
          555 Fourth Street, N.W.
          Washington, D.C.  20530
          Telephone: 202-252-7679
          Email:  john.borchert@usdoj.gov

Case 1:23-cv-02899-MN *SEALED* Document 109-1 Filed 08/28/23 Page 116 of 233
Case 1:22-sc-02379 *SEALED* Document 1 Filed 09/20/22 Page 1 of 59
AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia ▼

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

INFORMATION ASSOCIATED WITH SEVEN TARGET
ACCOUNTS THAT ARE STORED AT PREMISES
CONTROLLED BY THREE PROVIDERS

)
)
)
)
)
)

Case No. 22-2379

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1, A-2, and A-3, hereby incorporated by reference

located in the ___Jurisdiction of the___ District of _____Columbia_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B-1, B-2, and B-3, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. sec. 1343 | Wire Fraud |
| 18 U.S.C. sec. 1030 | Unauthorized Computer Access |
| 18 U.S.C. sec. 1956 | Money Laundering |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ *(specify reliable electronic means).*

Date: ___09/14/2022___

_____
*Judge's signature*

City and state: ___Washington, D.C.___

Magistrate Judge Harvey
_____
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
District of Columbia ☐

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 22-2379 |
| INFORMATION ASSOCIATED WITH SEVEN | ) |
| TARGET ACCOUNTS THAT ARE STORED AT | ) |
| PREMISES CONTROLLED BY THREE PROVIDERS | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Jurisdiction of the_____ District of _____Columbia_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1, A-2, and A-3, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachments B-1, B-2, and B-3, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 28, 2022_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Magistrate Judge Harvey_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____09/14/2022_____ _____
*Judge's signature*

City and state: Washington, D.C. _____Magistrate Judge Harvey_____
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.:<br>22-2379 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
SEVEN TARGET ACCOUNTS THAT ARE
STORED AT PREMISES CONTROLLED
BY THREE PROVIDERS PURSUANT TO
18 U.S.C. § 2703

SC No. __22-2379__

FILED UNDER SEAL

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A WARRANT TO SEARCH AND SEIZE

I, John Gardner, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require:

a.      Microsoft Corporation ("Microsoft") to disclose to the government records

and other information, including the contents of communications, associated with the accounts

(the "**Target Microsoft Accounts**") that are stored at premises owned, maintained, controlled, or

operated by Microsoft Corporation, a company headquartered at 1 Microsoft Way, Redmond,

Washington 98052;

b.      Apple Inc. ("Apple") to disclose to the government records and other

information, including the contents of communications, associated with the Apple IDs

(the "**Target Apple Accounts**") that are stored at premises owned, maintained, controlled, or

operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA 95014; and

c.  Google LLC ("Google") to disclose to the government records and other information, including the contents of communications, associated with the Google account _____ (the "Target Google Account") that are stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

2.  The information to be disclosed by Microsoft and searched by the government is described in the following paragraphs and in Attachments A-1 and B-1.

3.  The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A-2 and B-2.

4.  The information to be disclosed by Google and searched by the government is described in the following paragraphs and in Attachments A-3 and B-3.

5.  I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for more than thirteen years.  I am currently assigned to the FBI's Washington Field Office, Northern Virginia Resident Agency and to a cyber squad which has investigative responsibility for computer intrusion crimes.  I have participated in numerous criminal investigations to include violations related to computer intrusion, corporate fraud, securities fraud, mail fraud, wire fraud, money laundering, and obstruction of justice.

6.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

7.  Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire

Fraud), 18 U.S.C. § 1030 (Unauthorized Computer Access), and 18 U.S.C. § 1956 (Money Laundering) have been committed by unidentified subjects.  There also is probable cause to believe that the information and records described in Attachments A-1, A-2, and A-3 contain evidence, instrumentalities, contraband or fruits of these crimes, as further described in Attachments B-1, B-2, and B-3.

## JURISDICTION

8.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See also* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." *See* 18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, the Court has jurisdiction over this matter because: (1) the criminal offenses under investigation began or were committed elsewhere out of the jurisdiction of any particular State or district, and no offender is known to have, or have had, residence within any United States district, *see* 18 U.S.C. § 3238; and (2) jurisdiction over foreign persons committing money laundering violations of 18 U.S.C. § 1956, rests with the district court.  *See* 18 U.S.C. § 1956 (b)(2).  Finally, the offenses under investigation are the subject of a grand jury inquiry in the District of Columbia.

## PROBABLE CAUSE

### I.  <u>Background</u>

3

II.    <u>**The Scheme**</u>

**BACKGROUND CONCERNING MICROSOFT'S ACCOUNTS**

27.     Microsoft provides its subscribers internet-based accounts that allow them to send,

receive, and store e-mails online.  Microsoft accounts are typically identified by a single username,

which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Microsoft services, such as instant messages and remote photo or file storage.

28.     Based on my training and experience, I know that Microsoft allows subscribers to obtain accounts by registering on Microsoft's website.  During the registration process, Microsoft asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment.  Microsoft typically does not verify subscriber names.  However, Microsoft does verify the e-mail address or phone number provided.

29.     Once a subscriber has registered an account, Microsoft provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. Microsoft subscribers can also use that same username or account in connection with other services provided by Microsoft, such as electronic communication services such as Skype (voice and video calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network).

30.     In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a Microsoft account can be permanently stored in connection with that account, unless the subscriber deletes the material.  For example, if the subscriber does not delete an e-mail, the e-mail can remain on Microsoft's servers indefinitely. Even if the subscriber deletes

the e-mail, it may continue to exist on Microsoft's servers for a certain period of time.

31.     Thus, a subscriber's Microsoft account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing, voice calls, video chats, SMS text messaging, and social networking.  Depending on user settings, user-generated content derived from many of these services is normally stored on Microsoft's servers until deleted by the subscriber.  Similar to e-mails, such user-generated content can remain on Microsoft's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Microsoft's servers for a certain period of time.  Furthermore, a Microsoft subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Microsoft's servers.  Based on my training and experience, I know that evidence of who controlled, used, and/or created a Microsoft account may be found within such computer files and other information created or stored by the Microsoft subscriber. Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

32.     Based on my training and experience, I know that providers such as Microsoft also collect and maintain information about their subscribers, including information about their use of Microsoft services.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  Providers such as Microsoft also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses

10

associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Microsoft typically collect and maintain location data related to subscriber's use of Microsoft services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

33. Based on my training and experience, I know that providers such as Microsoft also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Microsoft in order to track what devices are using Microsoft's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Microsoft accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Microsoft account.

34. Microsoft also allows its subscribers to access its various services through an application that can be installed on and accessed via cellular telephones and other mobile devices.

11

This application is associated with the subscriber's Microsoft account. In my training and experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the Microsoft associated with the application (such as Microsoft) to locate the device on which the application is installed. After the applicable push notification service (e.g., Apple Push Notifications (APN) or Google Cloud Messaging) sends a Push Token to the device, the Token is then sent to the application, which in turn sends the Push Token to the application's server/provider. Thereafter, whenever the Microsoft needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (i.e., the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s). Accordingly, the computers of Microsoft are likely to contain useful information that may help to identify the specific device(s) used by a particular subscriber to access the subscriber's Microsoft account via the mobile application.

35. Based on my training and experience, I know that providers such as Microsoft use cookies and similar technologies to track users visiting Microsoft's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Microsoft. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as Microsoft may constitute evidence of the criminal activity under investigation.

12

By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Microsoft account and determine the scope of criminal activity.

36.     Based on my training and experience, I know that Microsoft maintains records that can link different Microsoft accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Microsoft accounts.  Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Microsoft account.  Social media and email accounts are typically personal in nature, therefore, would have conversations with personal contacts (relative or friend), upload personal information including photos, and comment about specific events in time and places such as traveling which could reveal the identity of the user.

37.     Based on my training and experience, I know that cybercrimes typically involve the use of "burner" social media accounts, email accounts, and phone numbers.  The purpose of these burner accounts is to conceal the identity of the person perpetrating the cybercrime.  However, in my training and experience, these burner accounts often have overlapping relationships.  These relationships often involve background accounts which do not directly interact with victim computers, but are instead used to create or control burner accounts.

38.     For example, cybercrime perpetrators may create a social media or email account but he may register that account using a password recovery e-mail account or subscriber telephone number.  Based on my training and experience, I know that such telephone numbers and password recovery accounts can be used to access the primary e-mail account – because they can be used to

reset account passwords, to regain account access after forgetting a password, or for two-factor authentication access to an account. For that reason, email accounts with overlapping password recovery accounts and telephone numbers are typically controlled by the same subject(s). Thus, the identity of the user of the background account may identify the user of the burner account.

39. Based on my training and experience, I know that subscribers can communicate directly with Microsoft about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Microsoft typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

40. In summary, based on my training and experience in this context, I believe that the computers of Microsoft are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Microsoft subscribers), as well as Microsoft -generated information about its subscribers and their use of Microsoft services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Microsoft with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

41. As explained above, information stored in connection with a Microsoft account including the **Target Microsoft Accounts** may provide crucial evidence of the "who, what, why,

14

when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion.  From my training and experience, I know that the information stored in connection with a Microsoft account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by Microsoft can show how and when the account was accessed or used.  For example, providers such as Microsoft typically log the IP addresses from which users access the account along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the Microsoft account access and use relating to the criminal activity under investigation.  This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via e-mail).  Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information in the Microsoft account may indicate its user's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

42.  Based on my training and experience, I know that evidence of who controlled, used, and/or created a Microsoft account may be found within the user-generated content created or

stored by the Microsoft subscriber. This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group. In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close in time to the offenses under investigation. This is true for at least two reasons. First, people that commit crimes involving electronic accounts (e.g., e-mail accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime. Second, earlier-generated content may be quite valuable, because criminals typically improve their tradecraft over time. That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced. Finally, because e-mail accounts and similar Microsoft accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

### INFOMRATION REGARDING APPLE ID AND iCLOUD[1]

43.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch,

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

44.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.   Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.   iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

c.   iCloud is a file hosting, storage, and sharing service provided by Apple.  iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

d.   iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iWork Apps, a suite of productivity apps (Pages, Numbers,

17

Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

        e.   Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

        f.   Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

        g.   Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

        h.   App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

      45.   Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

46.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

47.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

48.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs"

for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

49. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

50. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS")

messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

52.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.

Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

53.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

54.     Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the facts developed in this investigation also indicate that the fraud against Lawyer Victim was carried out using at least two different bank accounts in Mexico that received the wire transfers from Lawyer Victim.  The identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

## BACKGROUND CONCERNING GOOGLE'S ACCOUNTS

55.     Google provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online.  Google accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Google services, such as instant messages and remote photo or file storage.

22

56.     Based on my training and experience, I know that Google allows subscribers to obtain accounts by registering on Google's website. During the registration process, Google asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment.  Google typically does not verify subscriber names.  However, Google does verify the e-mail address or phone number provided.

57.     Once a subscriber has registered an account, Google provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username.  Google subscribers can also use that same username or account in connection with other services provided by Google such as electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google+ (social networking), Google Groups (group discussions), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Keep (storing text), Google Drive (cloud storage), Google Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

23

58.     In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a Google account can be permanently stored in connection with that account, unless the subscriber deletes the material.  For example, if the subscriber does not delete an e-mail, the e-mail can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to exist on Google's servers for a certain period of time.

59.     Thus, a subscriber's Google account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing, voice calls, video chats, SMS text messaging, and social networking.  Depending on user settings, user-generated content derived from many of these services is normally stored on Google's servers until deleted by the subscriber.  Similar to e-mails, such user-generated content can remain on Google's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Google's servers for a certain period of time.  Furthermore, a Google subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Google's servers.  Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

60.     Based on my training and experience, I know that evidence of who controlled, used, and/or created a Google account may be found within the user-generated content created or stored by the Google subscriber.  This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group.

61.     In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close

24

in time to the offenses under investigation. This is true for two reasons. First, people that commit crimes involving electronic accounts (*e.g.*, e-mail accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime. Second, earlier-generated content is often quite valuable, because criminals typically improve their tradecraft over time. That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced. Finally, because e-mail accounts and similar Google accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

62.    Based on my training and experience, I know that providers such as Google also collect and maintain information about their subscribers, including information about their use of Google services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as Google also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Google typically collect and maintain location data related to subscriber's use of Google services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

63. Based on my training and experience, I know that providers such as Google also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Google in order to track what devices are using Google's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Google accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Google account.

64. Based on my training and experience, I know that providers such as Google use cookies and similar technologies to track users visiting Google's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Google. More sophisticated cookie technology can be used to identify users across devices and

26

web browsers. From training and experience, I know that cookies and similar technology used by providers such as Google may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Google account and determine the scope of criminal activity.

65.     Based on my training and experience, I know that Google maintains records that can link different Google accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Google accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Google account.

66.     Based on my training and experience, I know that subscribers can communicate directly with Google about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Google typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

67.     In summary, based on my training and experience in this context, I believe that the computers of Google are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers), as well as

Google -generated information about its subscribers and their use of Google services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Google with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

68. As explained above, information stored in connection with a Google account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Google account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by Google can show how and when the account was accessed or used. For example, providers such as Google typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the Google account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location

28

information integrated into an image or video sent via e-mail).  Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation.  For example, information in the Google account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

69.     I anticipate executing this warrant under the Electronic Communications Privacy Act ("ECPA"), in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Microsoft to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Microsoft Accounts** particularly described in Sections I and II of Attachment B-1.  Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-1.

70.     I also anticipate executing this warrant under the same provisions of ECPA by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Apple Accounts** particularly described in Sections I and II of Attachment B-2.  Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-2.

71.     I also anticipate executing this warrant under the same provisions of ECPA by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Google**

**Account** particularly described in Sections I and II of Attachment B-3. Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-3.

72.     The warrant seeks authorization to search records from the inception of the account to the present. Based on my training and experience in searching accounts like the target accounts, relevant user attribution evidence can be generated at any time during the life of the account.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

73.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Assistant United States Attorney John W. Borchert is capable of identifying my voice and telephone number for the Court.

## REQUEST FOR SEALING

74.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

75.    Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on the three service providers (Microsoft, Apple and Google) who will then compile the requested records at a time convenient for them, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Subscribed and sworn pursuant to Fed. R. Crim.
P. 4.1 and 41(d)(3) on this 13th day of September
2022.


_____
HONORABLE MAGISTRATE JUDGE HARVEY
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A-1**

*Property to Be Searched*

This warrant applies to information which is associated with the following Microsoft accounts ("**Target Microsoft Accounts**"), which are stored at premises owned, maintained, controlled, or operated by Microsoft Corporation a company headquartered at 1 Microsoft Way, Redmond, WA 98052:

**ATTACHMENT A-2**

***Property to Be Searched***

This warrant applies to information which is associated with the following Apple accounts ("**Target Apple Accounts**"), which are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Provider"), a company headquartered at 1 Infinite Loop, Cupertino, California 95014:

1

## ATTACHMENT A-3

### *Property to Be Searched*

This warrant applies to information which is associated with the following Google account ("**Target Google Account**"), which are stored at premises owned, maintained, controlled, or operated by Google LLC ("Provider"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043:

# ATTACHMENT B-1

## Particular Things to be Seized

### I.    Applicable Time Period

Please provide the information set forth below from the inception of the account(s) to the present.

### II.    Information to be disclosed by Microsoft Corporation ("Provider")

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each **Target Microsoft Account** or identifier listed in Attachment A-1:

a.    The contents of all communications and related transactional records for all Provier services used by an Account subscriber/user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services e.g., One Drive), including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies); calendar, file storage, and photo sharing services electronic communication services such as Skype (voice and video

calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network).

      b.    The contents of all other data and related transactional records for all Provider services used by an Account user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, calendar, file storage, and photo sharing services electronic communication services such as Skype (voice and video calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network), including any information generated, modified, or stored by user(s) or Provider in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

      c.    All Provider records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

      d.    All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user,

including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

       e.      All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

       f.      All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account,;

       g.     Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types

3

of service utilized, instrument numbers or other subscriber numbers or identities, and payment

information) concerning any Provider account (including both current and historical accounts) ever

linked to the Account by a common e-mail address (such as a common recovery e-mail address),

or a common telephone number, means of payment (*e.g.*, credit card number), registration or login

IP addresses (during one-week period), registration or login cookies or similar technologies, or

any other unique device or user identifier;

      h.     All information held by Provider related to the location and location history of the

user(s) of the Account, including geographic locations associated with the Account (including

those collected for non-Provider based applications), IP addresses, Global Positioning System

("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell

towers;

      i.     All records of communications between Provider and any person regarding the

Account, including contacts with support services and records of actions taken;

      j.     Information about any complaint, alert, or other indication of malware, fraud, or

terms of service violation related to the Account or associated user(s), including any memoranda,

correspondence, investigation files, or records of meetings or discussions about the Account or

associated user(s) (but not including confidential communications with legal counsel);

      k.     Accounts linked by **cookies**, **devices**, **advertiser ID**, **phone number**, or **recovery email**.

Microsoft is hereby ordered to disclose the above information to the government within 10

days of service of this warrant.

4

### III. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, U.S. Code §§ 1343, 1030, and 1956, those violations involving an unknown person(s) using each **Target Microsoft Account** identified on Attachment A-1, information pertaining to the following matters:

(a) Computer intrusion, money laundering, and/or access device fraud;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their

support staff for their independent review.

## ATTACHMENT B-2

### Particular Things to be Seized

**I.  Applicable Time Period**

Please provide the information set forth below from the inception of the account(s) to the present.

**II.  Information to be disclosed by Apple Inc. ("Provider")**

To the extent that the information described in Attachment A-2 is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each **Target Apple Account** or identifier listed in Attachment A-2:

a.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.  All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers

("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

        c.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

        d.     The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

        e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork

(including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

      f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

      g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

      h.      All records pertaining to the types of service used;

      i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

      j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

      k.      **Linked Target Accounts**:  For any account linked to the **Target Apple Accounts**, including by forwarding or fetching email address, cookie overlap, telephone number,

creating email address, recovery email address, advertising IDs, or creation IP address
(collectively the "Linked Target Accounts"):

    a.  For each Linked Target Account:

        i.  The name of the **Target Apple Account** it was linked to; and

        ii.  The information that linked the Linked Target Account to the **Target Apple Account** (forwarding or fetching account, cookie overlap, phone number, recovery email address, or creation IP address).

    b.  The following information about the customers or subscribers of the Linked Target Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses and port numbers) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses);

        vii.  Other subscriber numbers or identities (including the registration IP address); and

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

Apple is hereby ordered to disclose the above information to the government within 10 days of service of this warrant.

### III. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, U.S. Code §§ 1343, 1030, and 1956, those violations involving an unknown person(s) using each account identified on Attachment A-2, information pertaining to the following matters:

    (a) Computer intrusion, money laundering, and/or access device fraud;

    (b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

    (c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

    (d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

    (e) The identity of the person(s) who communicated with the user ID including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their

support staff for their independent review.

**ATTACHMENT B-3**

**Particular Things to be Seized**

I.      **Applicable Time Period**

Please provide the information set forth below from the inception of the account(s) to the present.

II.     **Information to be disclosed by Google LLC ("Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Provider, including any records that have been deleted but are still available to Provider. Provider is required to disclose the following information to the government corresponding to each account or identifier ("Target Google Account") listed in Attachment A-3:

a.      The contents of all communications and related transactional records for all Google Services ever used by the Target Google Account (such as Gmail, Google Hangouts) including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, posts, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating Internet Protocol (IP) addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);

b.      All records regarding identification of the Target Google Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of

session times and durations (including IP addresses, cookies, device information, and other

identifiers linked to those sessions), records of account registration (including the IP address,

cookies, device information, and other identifiers linked to account registration), length of

service and types of services utilized, account status, methods of connecting, and server log files;

      c.   The types of service utilized, account records and records and other information,

including content, relating to those services;

      d.   All records or other information stored by an individual using the account,

including address books, contact and buddy lists, calendar data, pictures, and files;

      e.   All records of online search and browsing history associated with the account or

its users (such as through Google Search, Web & App Activity, Google Chrome, and Google

Analytics, including information collected through tracking cookies), including application

usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated

searches, including associated notifications and creation dates; all text typed into the Google

Chrome address bar or Google search bar, including URLs and IP addresses; all URLs or IP

addresses clicked on; user settings; and all associated logs and change history;

      f.   The contents and related transactional information of all records associated with

the account in Google Drive (including Docs, Sheets, Forms, and Slides), including: files,

folders, media, notes, lists, applications and other data uploaded, created, stored, or shared with

the account including drafts and deleted records; third-party application data and backups; SMS

data and backups; the creation and change history of each record; accounts with access to or

which previously accessed each record; any location, device, other Google service, or third-party

application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

g. All records and other information associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; third-party data; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs, including access logs and IP addresses, of each record;

h. All records and other information concerning any document, website, or other computer file created, stored, revised, or accessed by the account or by an account user (such as using Google Docs, Google Drive, and Google Sites), including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

i. All records relating to means of communication linked to the account, including Google Hangouts, to include content, log-in IP addresses associated with session times and dates, account status, methods of connecting, and log files for chat conversations, video calls, Wi-Fi and/or date calls, and text messages;

j. The contents of all chats associated with the account, including Google Hangouts in any format (text, audio, or video) including, but not limited to: stored, deleted, and draft chat communications, including attachments and links; the source and destination addresses

3

associated with each communication, including IP addresses; the size and length of each communication; user settings; and all associated logs, including access logs and change history;

k.   The contents and related transactional information of all other records associated with the account on Google Cloud storage;

l.   The contents of all media associated with the account on YouTube, whether active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved to, shared by or shared with the account; edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; playlists; connected applications; associated URLs for each record; creation and change history; privacy settings for each record; and all associated logs, including IP addresses, locations, timestamps, and device identifiers;

m.   A record of the account's watch history, including: accessed URLs and their associated duration, privacy settings, upload timestamps, tags, IP addresses, change history, location information, and uploading account or identifier; the logs for each access by the account, including IP address, location, timestamp, and device identifier; and change history;

n.   All business and subscriber records associated with the account on YouTube, including birthday; name; username and other identifiers; linked accounts; alternate or recovery emails; telephone numbers, including SMS recovery numbers; physical addresses; account status; account creation date; account registration IP address; length of service; means and source of payment (including any credit or bank account number); associated devices; associated Android IDs; and associated logs and change history;

o. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

p. All maps data associated with the account, including Google My Maps, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; information associated with locations and other data associated with My Maps and Location Sharing; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

q. All activity relating to Google Play or Google Play Music, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, games, and other files; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

r. All records and transactional information pertaining to other Google services associated with the account, including Google Chrome Sync, Android, Is In Family and Device Centric Auth.

s. All device or user identifiers which have ever been linked to the account, including but not limited to all cookies and similar technologies, Android Device IDs, Advertising ID, unique application number, hardware model, operating system version, device serial number, Global Unique Identifier ("GUID"), mobile network information, telephone

number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"), operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account such as Google Cloud Messaging ("GCM");

     t.   All records of communications between Google and any person regarding the account, including contacts with support services and records of actions taken; and

     u.   Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel).

     2.   **Linked Target Accounts**.  For any account linked to the **Target Google Account**, including by forwarding or fetching email address, cookie overlap, telephone number, creating email address, recovery email address, advertising IDs, or creation IP address (collectively the "Linked Target Accounts"):

     a.   For each Linked Target Account:

        i.   The name of the **Target Google Account** it was linked to; and

        ii.   The information that linked the Linked Target Account to the **Target Google Account** (forwarding or fetching account, cookie overlap, phone number, recovery email address, or creation IP address).

     b.   The following information about the customers or subscribers of the Linked Target Account:

        i.     Names (including subscriber names, user names, and screen names);

       ii.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii.    Local and long distance telephone connection records;

      iv.    Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses and port numbers) associated with those sessions;

       v.     Length of service (including start date) and types of service utilized;

      vi.    Telephone or instrument numbers (including MAC addresses);

     vii.    Other subscriber numbers or identities (including the registration IP address); and

    viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

3.  All records pertaining to communications between Google and any person regarding the user or the user's account, including contacts with support services and records of actions taken.

      Google is hereby ordered to disclose the above information to the government within 10 days of service of this warrant.

## III.     Information to be seized by the government

      All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1030 (Unauthorized Computer Access), and 18 U.S.C. § 1956 (Money Laundering) (collectively, "the

Specified Federal Offenses"), those violations involving an unknown person, since account inception to the present, including for each user ID identified on Attachment A, information pertaining to the following matters:

a.  Any records indicating how and when each Google account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the Specified Federal Offenses and to the Google account owner;

b.  Any records indicating the Google account owner's state of mind as it relates to the Specified Federal Offenses, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation

c.  The identity of the person(s) who created, used, or controlled the Google account, including records that help reveal the whereabouts of such person(s);

d.  Any records relating to the identity of the person(s) using and/or controlling the Target Accounts;

e.  Any records pertaining to the means and source of payment for services;

f.  Information and records that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly), or aided and abetted the commission of the Specified Federal Offenses, or (ii) communicated with the Account about matters relating to the criminal activity under investigation (such as customers of the user(s) of the account), including records that help identify any of the foregoing persons or reveal their location and whereabouts; and

g.  Information and records concerning the sale or purchase of login credentials for online accounts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC

## RECORDS PURSUANT TO FEDERAL RULES OF
EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                             Signature

10

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia ▾

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH SEVEN TARGET<br>ACCOUNTS THAT ARE STORED AT PREMISES<br>CONTROLLED BY THREE PROVIDERS | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 22-2379 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1, A-2, and A-3, hereby incorporated by reference

located in the ___Jurisdiction of the___ District of ___Columbia___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B-1, B-2, and B-3, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. sec. 1343 | Wire Fraud |
| 18 U.S.C. sec. 1030 | Unauthorized Computer Access |
| 18 U.S.C. sec. 1956 | Money Laundering |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ *(specify reliable electronic means)*.

Date: ___09/14/2022___

City and state: ___Washington, D.C.___

_____
*Judge's signature*

G. MICHAEL HARVEY, UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

Case 1:23-cr-00399-SMN-AS Document 109-1 Filed 08/30/23 Page 176 of 233

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia ☐

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  22-2379
INFORMATION ASSOCIATED WITH SEVEN )
TARGET ACCOUNTS THAT ARE STORED AT )
PREMISES CONTROLLED BY THREE PROVIDERS )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Jurisdiction of the_____ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location):*

See Attachments A-1, A-2, and A-3, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

See Attachments B-1, B-2, and B-3, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 28, 2022_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Magistrate Judge Harvey_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     _____09/14/2022_____          _____
                                                                                          *Judge's signature*

City and state:  Washington, D.C.          G. MICHAEL HARVEY, UNITED STATES MAGISTRATE JUDGE
                                                                                          *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>22-2379 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr>
<td>

**IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SEVEN TARGET ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY THREE PROVIDERS PURSUANT TO 18 U.S.C. § 2703**

</td>
<td>

**SC No. 22-2379**

**FILED UNDER SEAL**

</td>
</tr>
</table>

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A WARRANT TO SEARCH AND SEIZE

I, John Gardner, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require:

       a.       Microsoft Corporation ("Microsoft") to disclose to the government records and other information, including the contents of communications, associated with the accounts

(the "**Target Microsoft Accounts**") that are stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, a company headquartered at 1 Microsoft Way, Redmond, Washington 98052;

       b.       Apple Inc. ("Apple") to disclose to the government records and other information, including the contents of communications, associated with the Apple IDs

(the "**Target Apple Accounts**") that are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA 95014; and

c.      Google LLC ("Google") to disclose to the government records and other information, including the contents of communications, associated with the Google account

[                              ] (the "Target Google Account") that are stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

2.      The information to be disclosed by Microsoft and searched by the government is described in the following paragraphs and in Attachments A-1 and B-1.

3.      The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A-2 and B-2.

4.      The information to be disclosed by Google and searched by the government is described in the following paragraphs and in Attachments A-3 and B-3.

5.       I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for more than thirteen years.  I am currently assigned to the FBI's Washington Field Office, Northern Virginia Resident Agency and to a cyber squad which has investigative responsibility for computer intrusion crimes.  I have participated in numerous criminal investigations to include violations related to computer intrusion, corporate fraud, securities fraud, mail fraud, wire fraud, money laundering, and obstruction of justice.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

7.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire

2

Fraud), 18 U.S.C. § 1030 (Unauthorized Computer Access), and 18 U.S.C. § 1956 (Money Laundering) have been committed by unidentified subjects.  There also is probable cause to believe that the information and records described in Attachments A-1, A-2, and A-3 contain evidence, instrumentalities, contraband or fruits of these crimes, as further described in Attachments B-1, B-2, and B-3.

## JURISDICTION

8.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See also* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." *See* 18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, the Court has jurisdiction over this matter because: (1) the criminal offenses under investigation began or were committed elsewhere out of the jurisdiction of any particular State or district, and no offender is known to have, or have had, residence within any United States district, *see* 18 U.S.C. § 3238; and (2) jurisdiction over foreign persons committing money laundering violations of 18 U.S.C. § 1956, rests with the district court.  *See* 18 U.S.C. § 1956 (b)(2).  Finally, the offenses under investigation are the subject of a grand jury inquiry in the District of Columbia.

## PROBABLE CAUSE

### I.    <u>Background</u>

3

II.    **The Scheme**

**BACKGROUND CONCERNING MICROSOFT'S ACCOUNTS**

27.     Microsoft provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online.  Microsoft accounts are typically identified by a single username,

which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Microsoft services, such as instant messages and remote photo or file storage.

28.     Based on my training and experience, I know that Microsoft allows subscribers to obtain accounts by registering on Microsoft's website.  During the registration process, Microsoft asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment.  Microsoft typically does not verify subscriber names.  However, Microsoft does verify the e-mail address or phone number provided.

29.     Once a subscriber has registered an account, Microsoft provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. Microsoft subscribers can also use that same username or account in connection with other services provided by Microsoft, such as electronic communication services such as Skype (voice and video calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network).

30.     In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a Microsoft account can be permanently stored in connection with that account, unless the subscriber deletes the material.  For example, if the subscriber does not delete an e-mail, the e-mail can remain on Microsoft's servers indefinitely. Even if the subscriber deletes

the e-mail, it may continue to exist on Microsoft's servers for a certain period of time.

31.    Thus, a subscriber's Microsoft account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing, voice calls, video chats, SMS text messaging, and social networking.  Depending on user settings, user-generated content derived from many of these services is normally stored on Microsoft's servers until deleted by the subscriber.  Similar to e-mails, such user-generated content can remain on Microsoft's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Microsoft's servers for a certain period of time.  Furthermore, a Microsoft subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Microsoft's servers.  Based on my training and experience, I know that evidence of who controlled, used, and/or created a Microsoft account may be found within such computer files and other information created or stored by the Microsoft subscriber. Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

32.    Based on my training and experience, I know that providers such as Microsoft also collect and maintain information about their subscribers, including information about their use of Microsoft services.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  Providers such as Microsoft also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses

10

associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Microsoft typically collect and maintain location data related to subscriber's use of Microsoft services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

33.     Based on my training and experience, I know that providers such as Microsoft also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Microsoft in order to track what devices are using Microsoft's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Microsoft accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Microsoft account.

34.     Microsoft also allows its subscribers to access its various services through an application that can be installed on and accessed via cellular telephones and other mobile devices.

This application is associated with the subscriber's Microsoft account. In my training and experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the Microsoft associated with the application (such as Microsoft) to locate the device on which the application is installed. After the applicable push notification service (e.g., Apple Push Notifications (APN) or Google Cloud Messaging) sends a Push Token to the device, the Token is then sent to the application, which in turn sends the Push Token to the application's server/provider. Thereafter, whenever the Microsoft needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (i.e., the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s). Accordingly, the computers of Microsoft are likely to contain useful information that may help to identify the specific device(s) used by a particular subscriber to access the subscriber's Microsoft account via the mobile application.

35. Based on my training and experience, I know that providers such as Microsoft use cookies and similar technologies to track users visiting Microsoft's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Microsoft. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as Microsoft may constitute evidence of the criminal activity under investigation.

12

By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Microsoft account and determine the scope of criminal activity.

36.     Based on my training and experience, I know that Microsoft maintains records that can link different Microsoft accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Microsoft accounts.  Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Microsoft account.  Social media and email accounts are typically personal in nature, therefore, would have conversations with personal contacts (relative or friend), upload personal information including photos, and comment about specific events in time and places such as traveling which could reveal the identity of the user.

37.     Based on my training and experience, I know that cybercrimes typically involve the use of "burner" social media accounts, email accounts, and phone numbers.  The purpose of these burner accounts is to conceal the identity of the person perpetrating the cybercrime.  However, in my training and experience, these burner accounts often have overlapping relationships.  These relationships often involve background accounts which do not directly interact with victim computers, but are instead used to create or control burner accounts.

38.     For example, cybercrime perpetrators may create a social media or email account but he may register that account using a password recovery e-mail account or subscriber telephone number.  Based on my training and experience, I know that such telephone numbers and password recovery accounts can be used to access the primary e-mail account – because they can be used to

reset account passwords, to regain account access after forgetting a password, or for two-factor authentication access to an account. For that reason, email accounts with overlapping password recovery accounts and telephone numbers are typically controlled by the same subject(s). Thus, the identity of the user of the background account may identify the user of the burner account.

39.    Based on my training and experience, I know that subscribers can communicate directly with Microsoft about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Microsoft typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

40.    In summary, based on my training and experience in this context, I believe that the computers of Microsoft are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Microsoft subscribers), as well as Microsoft -generated information about its subscribers and their use of Microsoft services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Microsoft with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

41.    As explained above, information stored in connection with a Microsoft account including the **Target Microsoft Accounts** may provide crucial evidence of the "who, what, why,

14

when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Microsoft account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by Microsoft can show how and when the account was accessed or used. For example, providers such as Microsoft typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the Microsoft account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the Microsoft account may indicate its user's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

     42. Based on my training and experience, I know that evidence of who controlled, used, and/or created a Microsoft account may be found within the user-generated content created or

stored by the Microsoft subscriber. This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group. In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close in time to the offenses under investigation. This is true for at least two reasons. First, people that commit crimes involving electronic accounts (e.g., e-mail accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime. Second, earlier-generated content may be quite valuable, because criminals typically improve their tradecraft over time. That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced. Finally, because e-mail accounts and similar Microsoft accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

## INFOMRATION REGARDING APPLE ID AND iCLOUD[1]

43.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch,

---

[1]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

44.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.   Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.   iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

c.   iCloud is a file hosting, storage, and sharing service provided by Apple.  iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

d.   iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iWork Apps, a suite of productivity apps (Pages, Numbers,

17

Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

> e. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

> f. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

> g. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

> h. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

45. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

18

46.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

47.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

48.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs"

for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

49. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

50. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS")

20

messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

 

52.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.

Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

53.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

54.     Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the facts developed in this investigation also indicate that the fraud against Lawyer Victim was carried out using at least two different bank accounts in Mexico that received the wire transfers from Lawyer Victim.  The identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

## BACKGROUND CONCERNING GOOGLE'S ACCOUNTS

55.     Google provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online.  Google accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other Google services, such as instant messages and remote photo or file storage.

56.     Based on my training and experience, I know that Google allows subscribers to obtain accounts by registering on Google's website. During the registration process, Google asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment.  Google typically does not verify subscriber names.  However, Google does verify the e-mail address or phone number provided.

57.     Once a subscriber has registered an account, Google provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username.  Google subscribers can also use that same username or account in connection with other services provided by Google such as electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google+ (social networking), Google Groups (group discussions), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Keep (storing text), Google Drive (cloud storage), Google Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

58.     In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a Google account can be permanently stored in connection with that account, unless the subscriber deletes the material.  For example, if the subscriber does not delete an e-mail, the e-mail can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to exist on Google's servers for a certain period of time.

59.     Thus, a subscriber's Google account can be used not only for e-mail but also for other types of electronic communication, including instant messaging and photo and video sharing, voice calls, video chats, SMS text messaging, and social networking.  Depending on user settings, user-generated content derived from many of these services is normally stored on Google's servers until deleted by the subscriber.  Similar to e-mails, such user-generated content can remain on Google's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Google's servers for a certain period of time.  Furthermore, a Google subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Google's servers.  Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

60.     Based on my training and experience, I know that evidence of who controlled, used, and/or created a Google account may be found within the user-generated content created or stored by the Google subscriber.  This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group.

61.     In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close

24

in time to the offenses under investigation. This is true for two reasons. First, people that commit crimes involving electronic accounts (*e.g.*, e-mail accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime. Second, earlier-generated content is often quite valuable, because criminals typically improve their tradecraft over time. That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced. Finally, because e-mail accounts and similar Google accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

62. Based on my training and experience, I know that providers such as Google also collect and maintain information about their subscribers, including information about their use of Google services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as Google also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Google typically collect and maintain location data related to subscriber's use of Google services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

25

63. Based on my training and experience, I know that providers such as Google also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Google in order to track what devices are using Google's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Google accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Google account.

64. Based on my training and experience, I know that providers such as Google use cookies and similar technologies to track users visiting Google's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Google. More sophisticated cookie technology can be used to identify users across devices and

web browsers. From training and experience, I know that cookies and similar technology used by providers such as Google may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Google account and determine the scope of criminal activity.

65.     Based on my training and experience, I know that Google maintains records that can link different Google accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Google accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Google account.

66.     Based on my training and experience, I know that subscribers can communicate directly with Google about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Google typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

67.     In summary, based on my training and experience in this context, I believe that the computers of Google are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers), as well as

Google -generated information about its subscribers and their use of Google services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Google with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

68.     As explained above, information stored in connection with a Google account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Google account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by Google can show how and when the account was accessed or used. For example, providers such as Google typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the Google account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location

28

information integrated into an image or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the Google account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

69. I anticipate executing this warrant under the Electronic Communications Privacy Act ("ECPA"), in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Microsoft to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Microsoft Accounts** particularly described in Sections I and II of Attachment B-1. Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-1.

70. I also anticipate executing this warrant under the same provisions of ECPA by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Apple Accounts** particularly described in Sections I and II of Attachment B-2. Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-2.

71. I also anticipate executing this warrant under the same provisions of ECPA by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications and stored data) for the **Target Google**

29

**Account** particularly described in Sections I and II of Attachment B-3. Upon receipt of those records and information, government-authorized persons will review that information to locate the items described in Section III of Attachment B-3.

72.     The warrant seeks authorization to search records from the inception of the account to the present. Based on my training and experience in searching accounts like the target accounts, relevant user attribution evidence can be generated at any time during the life of the account.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

73.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Assistant United States Attorney John W. Borchert is capable of identifying my voice and telephone number for the Court.

## REQUEST FOR SEALING

74.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

75.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on the three service providers (Microsoft, Apple and Google) who will then compile the requested records at a time convenient for them, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Subscribed and sworn pursuant to Fed. R. Crim.
P. 4.1 and 41(d)(3) on this 13th day of September
2022.

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

### *Property to Be Searched*

This warrant applies to information which is associated with the following Microsoft accounts ("**Target Microsoft Accounts**"), which are stored at premises owned, maintained, controlled, or operated by Microsoft Corporation a company headquartered at 1 Microsoft Way, Redmond, WA 98052:

**ATTACHMENT A-2**

*Property to Be Searched*

This warrant applies to information which is associated with the following Apple accounts ("**Target Apple Accounts**"), which are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Provider"), a company headquartered at 1 Infinite Loop, Cupertino, California 95014:

## **ATTACHMENT A-3**

### *Property to Be Searched*

This warrant applies to information which is associated with the following Google account ("**Target Google Account**"), which are stored at premises owned, maintained, controlled, or operated by Google LLC ("Provider"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043:

## **ATTACHMENT B-1**

### **Particular Things to be Seized**

**I.      Applicable Time Period**

Please provide the information set forth below from the inception of the account(s) to the present.

**II.     Information to be disclosed by Microsoft Corporation ("Provider")**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each **Target Microsoft Account** or identifier listed in Attachment A-1:

a.      The contents of all communications and related transactional records for all Provier services used by an Account subscriber/user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services e.g., One Drive), including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies); calendar, file storage, and photo sharing services electronic communication services such as Skype (voice and video

calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network).

     b.    The contents of all other data and related transactional records for all Provider services used by an Account user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, calendar, file storage, and photo sharing services electronic communication services such as Skype (voice and video calls, voicemail, and SMS text messaging), One Drive (cloud storage), and XBox (video gaming); web browsing and search tools such as Bing Search (internet searches), Web History (bookmarks and recorded browsing history), and; online productivity tools such as Office 365, Bing Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); and LinkedIn (social media network), including any information generated, modified, or stored by user(s) or Provider in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

     c.    All Provider records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

     d.    All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user,

including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

     e.     All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

     f.     All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account,;

     g.     Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types

of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any Provider account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.     All information held by Provider related to the location and location history of the user(s) of the Account, including geographic locations associated with the Account (including those collected for non-Provider based applications), IP addresses, Global Positioning System ("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell towers;

i.     All records of communications between Provider and any person regarding the Account, including contacts with support services and records of actions taken;

j.     Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel);

k.     Accounts linked by **cookies**, **devices**, **advertiser ID**, **phone number**, or **recovery email**.

Microsoft is hereby ordered to disclose the above information to the government within 10 days of service of this warrant.

### III. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, U.S. Code §§ 1343, 1030, and 1956, those violations involving an unknown person(s) using each **Target Microsoft Account** identified on Attachment A-1, information pertaining to the following matters:

(a) Computer intrusion, money laundering, and/or access device fraud;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**ATTACHMENT B-2**

**Particular Things to be Seized**

I.     **Applicable Time Period**

Please provide the information set forth below from the inception of the account(s) to the present.

II.     **Information to be disclosed by Apple Inc. ("Provider")**

To the extent that the information described in Attachment A-2 is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each **Target Apple Account** or identifier listed in Attachment A-2:

a.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.     All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers

("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

      c.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

      d.     The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

      e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork

(including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud

Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries,

images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the account (with associated IP

addresses including source port numbers), including FaceTime call invitation logs, messaging

and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes

Store and App Store logs (including purchases, downloads, and updates of Apple and third-party

apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs,

Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple

services (including all associated identifiers), and logs associated with iOS device purchase,

activation, and upgrades;

g.      All records and information regarding locations where the account or devices

associated with the account were accessed, including all data stored in connection with Location

Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Apple and any person

regarding the account, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an

encrypted form, when available to Apple (including, but not limited to, the keybag.txt and

fileinfolist.txt files).

k.      **Linked Target Accounts**:  For any account linked to the **Target Apple**

**Accounts**, including by forwarding or fetching email address, cookie overlap, telephone number,

creating email address, recovery email address, advertising IDs, or creation IP address (collectively the "Linked Target Accounts"):

    a.   For each Linked Target Account:

        i.   The name of the **Target Apple Account** it was linked to; and

        ii.   The information that linked the Linked Target Account to the **Target Apple Account** (forwarding or fetching account, cookie overlap, phone number, recovery email address, or creation IP address).

    b.   The following information about the customers or subscribers of the Linked Target Account:

        i.   Names (including subscriber names, user names, and screen names);

        ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.   Local and long-distance telephone connection records;

        iv.   Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses and port numbers) associated with those sessions;

        v.   Length of service (including start date) and types of service utilized;

        vi.   Telephone or instrument numbers (including MAC addresses);

        vii.   Other subscriber numbers or identities (including the registration IP address); and

        viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

Apple is hereby ordered to disclose the above information to the government within 10 days of service of this warrant.

### III.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, U.S. Code §§ 1343, 1030, and 1956, those violations involving an unknown person(s) using each account identified on Attachment A-2, information pertaining to the following matters:

(a) Computer intrusion, money laundering, and/or access device fraud;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their

support staff for their independent review.

**ATTACHMENT B-3**

**Particular Things to be Seized**

I.     **Applicable Time Period**

Please provide the information set forth below from the inception of the account(s) to the present.

II.     **Information to be disclosed by Google LLC ("Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Provider, including any records that have been deleted but are still available to Provider.   Provider is required to disclose the following information to the government corresponding to each account or identifier ("Target Google Account") listed in Attachment A-3:

a.   The contents of all communications and related transactional records for all Google Services ever used by the Target Google Account (such as Gmail, Google Hangouts) including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, posts, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating Internet Protocol (IP) addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);

b.   All records regarding identification of the Target Google Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of

session times and durations (including IP addresses, cookies, device information, and other

identifiers linked to those sessions), records of account registration (including the IP address,

cookies, device information, and other identifiers linked to account registration), length of

service and types of services utilized, account status, methods of connecting, and server log files;

c.   The types of service utilized, account records and records and other information,

including content, relating to those services;

d.   All records or other information stored by an individual using the account,

including address books, contact and buddy lists, calendar data, pictures, and files;

e.   All records of online search and browsing history associated with the account or

its users (such as through Google Search, Web & App Activity, Google Chrome, and Google

Analytics, including information collected through tracking cookies), including application

usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated

searches, including associated notifications and creation dates; all text typed into the Google

Chrome address bar or Google search bar, including URLs and IP addresses; all URLs or IP

addresses clicked on; user settings; and all associated logs and change history;

f.   The contents and related transactional information of all records associated with

the account in Google Drive (including Docs, Sheets, Forms, and Slides), including: files,

folders, media, notes, lists, applications and other data uploaded, created, stored, or shared with

the account including drafts and deleted records; third-party application data and backups; SMS

data and backups; the creation and change history of each record; accounts with access to or

which previously accessed each record; any location, device, other Google service, or third-party

application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

g.   All records and other information associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; third-party data; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs, including access logs and IP addresses, of each record;

h.   All records and other information concerning any document, website, or other computer file created, stored, revised, or accessed by the account or by an account user (such as using Google Docs, Google Drive, and Google Sites), including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

i.   All records relating to means of communication linked to the account, including Google Hangouts, to include content, log-in IP addresses associated with session times and dates, account status, methods of connecting, and log files for chat conversations, video calls, Wi-Fi and/or date calls, and text messages;

j.   The contents of all chats associated with the account, including Google Hangouts in any format (text, audio, or video) including, but not limited to: stored, deleted, and draft chat communications, including attachments and links; the source and destination addresses

associated with each communication, including IP addresses; the size and length of each

communication; user settings; and all associated logs, including access logs and change history;

k. The contents and related transactional information of all other records associated

with the account on Google Cloud storage;

l. The contents of all media associated with the account on YouTube, whether

active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved

to, shared by or shared with the account; edits, comments, likes, chats, and other interactions,

including associated URLs; search history; channels; subscriptions; subscribers, friends, and

other contacts; playlists; connected applications; associated URLs for each record; creation and

change history; privacy settings for each record; and all associated logs, including IP addresses,

locations, timestamps, and device identifiers;

m. A record of the account's watch history, including: accessed URLs and their

associated duration, privacy settings, upload timestamps, tags, IP addresses, change history,

location information, and uploading account or identifier; the logs for each access by the

account, including IP address, location, timestamp, and device identifier; and change history;

n. All business and subscriber records associated with the account on YouTube,

including birthday; name; username and other identifiers; linked accounts; alternate or recovery

emails; telephone numbers, including SMS recovery numbers; physical addresses; account

status; account creation date; account registration IP address; length of service; means and source

of payment (including any credit or bank account number); associated devices; associated

Android IDs; and associated logs and change history;

o. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

p. All maps data associated with the account, including Google My Maps, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; information associated with locations and other data associated with My Maps and Location Sharing; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

q. All activity relating to Google Play or Google Play Music, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, games, and other files; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, location data, timestamps, and change history;

r. All records and transactional information pertaining to other Google services associated with the account, including Google Chrome Sync, Android, Is In Family and Device Centric Auth.

s. All device or user identifiers which have ever been linked to the account, including but not limited to all cookies and similar technologies, Android Device IDs, Advertising ID, unique application number, hardware model, operating system version, device serial number, Global Unique Identifier ("GUID"), mobile network information, telephone

number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"), operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account such as Google Cloud Messaging ("GCM");

      t.   All records of communications between Google and any person regarding the account, including contacts with support services and records of actions taken; and

      u.   Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel).

      2.   **Linked Target Accounts**.  For any account linked to the **Target Google Account**, including by forwarding or fetching email address, cookie overlap, telephone number, creating email address, recovery email address, advertising IDs, or creation IP address (collectively the "Linked Target Accounts"):

      a.   For each Linked Target Account:

         i.   The name of the **Target Google Account** it was linked to; and

         ii.   The information that linked the Linked Target Account to the **Target Google Account** (forwarding or fetching account, cookie overlap, phone number, recovery email address, or creation IP address).

      b.   The following information about the customers or subscribers of the Linked Target Account:

    i.     Names (including subscriber names, user names, and screen names);

    ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.   Local and long distance telephone connection records;

    iv.   Records of session times and durations, and the temporarily assigned network addresses (such as IP addresses and port numbers) associated with those sessions;

    v.    Length of service (including start date) and types of service utilized;

    vi.   Telephone or instrument numbers (including MAC addresses);

    vii.   Other subscriber numbers or identities (including the registration IP address); and

    viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

3. All records pertaining to communications between Google and any person regarding the user or the user's account, including contacts with support services and records of actions taken.

Google is hereby ordered to disclose the above information to the government within 10 days of service of this warrant.

## III.      Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1030 (Unauthorized Computer Access), and 18 U.S.C. § 1956 (Money Laundering) (collectively, "the

Specified Federal Offenses"), those violations involving an unknown person, since account inception to the present, including for each user ID identified on Attachment A, information pertaining to the following matters:

 a. Any records indicating how and when each Google account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the Specified Federal Offenses and to the Google account owner;

 b. Any records indicating the Google account owner's state of mind as it relates to the Specified Federal Offenses, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation

 c. The identity of the person(s) who created, used, or controlled the Google account, including records that help reveal the whereabouts of such person(s);

 d. Any records relating to the identity of the person(s) using and/or controlling the Target Accounts;

 e. Any records pertaining to the means and source of payment for services;

 f. Information and records that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly), or aided and abetted the commission of the Specified Federal Offenses, or (ii) communicated with the Account about matters relating to the criminal activity under investigation (such as customers of the user(s) of the account), including records that help identify any of the foregoing persons or reveal their location and whereabouts; and

 g. Information and records concerning the sale or purchase of login credentials for online accounts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC

## RECORDS PURSUANT TO FEDERAL RULES OF
### EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of:

_____
[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                          Signature

10