# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE EMAIL ACCOUNTS SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 50 U.S.C. 1701 | Misc. No. _____<br><br>**Filed Under Seal** |

*Reference:* ███████████          *Subject Account(s):* █████████
████████████

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Microsoft Corporation ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Redmond, Washington, to disclose certain records and other information pertaining to the PROVIDER account(s) associated with ████████████████████████████████████████ ████████████████ as set forth in Part I of Attachment A to the proposed Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND AND JURISDICTION

1.       PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under section 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.      This Court has jurisdiction to issue the requested Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.  Finally, the offenses under investigation are the subject of a grand jury investigation in the District of Columbia.

3.      A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

<u>THE RELEVANT FACTS</u>

4.      The United States is investigating a scheme to illicitly procure items with the purpose of evading U.S. sanctions against ███████████  More specifically, the United States is investigating certain individuals and their co-conspirators who employed sophisticated evasion techniques and front companies in dealing with the U.S. financial system to disguise the true nature of their illicit business dealings, as well as to protect and promote the on-going illicit procurement scheme.  Payments made in connection with these procurements were illegally sent in U.S. dollars on a number of occasions. The investigation concerns possible violations of, *inter alia*, the International Economic Emergency Powers Act (IEEPA), codified at 50 U.S.C. § 1701 et seq.;

Executive Order ("E.O.") ████████████████████████ and Prohibiting

Certain Transactions with ████████ and the money laundering statute, 18 U.S.C. § 1956.

**I.** ████████████████████████████████████

5. ████ has been designated a State Sponsor of Terrorism since ████████████

Additional sanctions were added in ████████████ Subsequent E.O.s have imposed

additional sanctions targeting, among others, ████████████████████████

2011, the U.S. Department of the Treasury, Office of Foreign Assets Control (collectively,

"OFAC"), which is located in Washington, D.C., designated ████████████████████

human rights abuses, including repression of ████████ as well as having benefitted from

rampant corruption.

6. The investigation has revealed, based on subpoena returns, a Treasury Department

designation (described further below) and open source records, that ████████████████

████████████ operated by ████████████, which is affiliated with ████████

████████████ in ████████████████████████████████

████████████ were designated by OFAC on ████████ for procuring items on behalf of the

████████████████████████ Law enforcement is aware that ████████ is a

████████████ which is believed to be responsible for research and development of

████████████████████ Specifically, the Treasury designation

stated:





7.      Law enforcement has uncovered a number of social media and email accounts used by ████████████████ Pursuant to grand jury subpoenas, which were accompanied with related nondisclosure orders, the government obtained subscriber information for a number of the accounts associated with ████████████████ as well as other individuals associated with the ████████████████████████████████████████████

8.      The subpoena returns revealed that Facebook ID: ████████ and ████████████████ are used by ████████████ Specifically, both accounts were registered to ████████ Additionally, both of these accounts listed the same ████████████████████ ████ on the contact information.

9.      Subpoena returns for ████████████████████ revealed that ████████████████ was listed as a secondary email address.  Subpoena returns for ████████████████ confirmed it was used by ████████████ who (as noted above) operates ████████████████████ This account was subscribed to ████████████████ ████████████

**II.      ████████████████ Has Sent Multiple Suspicious International Wire Transfers**

10.     The government issued grand jury subpoenas to multiple banks for international financial transactions conducted in U.S. dollars by ████████████████ These returns show that ████████████████████ has conducted more than ████████████████ internationally, beginning in ████ ████ These wires were primarily to technology companies in ████████████████ As noted

above, ████████ was designated for providing support, which may include procuring sensitive technologies, for ███████ These wires were conducted in violation of U.S. law, as the ████████ failed to obtain a license from OFAC prior to engaging in these U.S. dollar transactions.

11.     On a number of these transactions, ████████████████████ ████████ as its address, which matches the address listed on the Treasury designation. Upon review of ████████████ law enforcement learned that this address is used by at least ████████ One of the other companies using this ███████ has also been designated by OFAC.

12.     Based on the above information, law enforcement believes that ███████████ ██████ are jointly engaged in a business to procure sensitive items from ████████████ to their ultimate location in ████ which is subject to sanctions.

### Target Accounts

13.     ███████████████ (**"Target Account 1"**): Prior 2703(d) returns for ████████████████ revealed that Target Account 1 sent over ███████ to ████████████████ and received over ███████ from ████████████████ ██████ This level of contact far exceeded the number of contacts ████ had with almost any other user.  When law enforcement viewed ████████ public ██████ account a ███████ account named ██████ is displayed on the right hand tile of the screen as a related account under the ████████ feature box.  According to ████████████ ███████ feature is updated multiple times each month and reflects top ██████ profiles that viewers of the current profile (i.e ████████ have also viewed.  Under ████████████ box, ██████ account is second only to the ██████ profile of the



████████████████████████████████████████ Additionally, ███████ listed occupation on ████ translates to: ██████████████████████████████████ account identifies his occupation as ████████████ and also locates him in ██████████ Based on the high volume of contacts, the nexus between ██████████████████ for illicit transshipments, law enforcement has reason to believe that ███████ conducts business within ██████████████

14.     ██████████████ **("Target Account 2")**: Prior 2703(d) returns for ██████████████████ revealed that Target Account 2 sent over ██████████ to ██████████████████████ Based on the similarities of the name of Target Account 1 ██████████████████, law enforcement believes that Target Account 2 is also controlled by ████████ who (as noted above) is a known associate of ██████████████ with ██████████████████ Law enforcement is aware that an alternate account can be often used for password recovery and can be typically used by the same person as the primary account or by a trusted associate.

15.     ██████████████ **("Target Account 3")**: Prior 2703(d) returns for ██████████████████ revealed that Target Account 3 sent four emails to ██████████████ and received █ emails from ████████████████████████ ████████████ Based on the similarities of the name of Target Account 3 ████████████████████ to ██████████████ other identified email accounts, law enforcement believes that Target Account 3 is controlled by ██████████████

16.     Law enforcement is aware that criminal co-conspirators, money launderers, as well as businessmen, communicate frequently through electronic mediums about their legitimate businesses, illegitimate businesses, and the transfer/commingling of proceeds from such

businesses.  Private messages and email offer a uniquely valuable form for such communication, as they can be accessed from any location.  Many such persons believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

17.     Moreover, persons operating international money laundering operations typically have to communicate via email with persons funding their operations, due to the time differences. When transferring funds to co-conspirators, electronic communications normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received. I also know from prior investigations that subordinates in the management chain must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks.

18.     Because criminals who communicate in such a way fear detection and require multiple fake identities, they typically create numerous email accounts.  Part of managing this vast number of accounts often leads to the linking of accounts.  This allows a single user the ability to access as well as reset passwords for the multiple linked accounts.  Law enforcement is aware that the tracking and detection of linked accounts is one way by which a person and/or co-conspirators can be identified.  Moreover, the linking of an account can further demonstrate who has access and/or control of an account.

19.     Law enforcement is aware that a high volume of above contacts between emails accounts is typically indicative of a trusted status between the two parties, and often involves communications with a trusted co-conspirator.

20.     The header information of these communications can reveal the scope of the contacts between the money launders and can identify important co-conspirators.  The metadata associated with these accounts will assist law enforcement in uncovering the extent of this network,

as well as further identify the users of these accounts. This information is relevant to criminal proceedings and their associates.

## TECHNICAL BACKGROUND

21.     An email message has its own routing header, in addition to the source and destination information associated with all Internet data. The message header of an email contains the message's source and destination(s), expressed as email addresses in "From," "To," "CC" (carbon copy), or "BCC" (blind carbon copy) fields. Multiple destination addresses may be specified in the "To," "CC," and "BCC" fields. The email addresses in an email's message header are like the telephone numbers of both incoming and outgoing calls because they indicate both origin and destination(s).

## REQUEST FOR ORDER

22.     The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order.

23.     The United States further requests that the Order require PROVIDER not to notify any other person of the existence of the Order, including the subscriber or customer of each account identified in Attachment A. *See* 18 U.S.C. § 2705(b). Acting under 18 U.S.C. § 2703(c)(1)-(2), the Government "is not required to provide notice to a subscriber or customer" regarding the proposed Order. *See* 18 U.S.C. § 2703(c)(3). Furthermore, this Court has authority under 18

U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom . . . [the] court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of . . . [the] court order." *See* 18 U.S.C. § 2705(b). Such a "nondisclosure order" must be issued if this Court finds "reason to believe that notification . . . will result in—(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." *Id.*; *see In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014) ("Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.").

24. An order of nondisclosure is necessary because the proposed Order relates to an ongoing criminal investigation. Once notified, potential target(s) would be prompted to destroy or conceal incriminating evidence, change patterns of behavior to evade future detection, and otherwise attempt to undermine the investigation and avoid prosecution. Accordingly, there is reason to believe that notification of the existence of the proposed Order would seriously jeopardize the investigation, including by giving potential target(s) an opportunity to flee from prosecution or destroy and tamper with evidence. *See* 18 U.S.C. § 2705(b)(2)(3)(5).

25. Given the complex nature of the criminal activity under investigation, potential involvement of foreign-based perpetrators, and/or foreign-based evidence*,* the Government anticipates that this investigation will remain ongoing and confidential for the next one year or or longer. However, if circumstances were to change such that the requested order of nondisclosure becomes no longer necessary, the Government will notify the Court and seek appropriate relief.

26.     In this matter, the Government also requests that the instant Application and the Order be filed under seal.  The Court has the inherent power to seal court filings when appropriate, including the proposed Order.  *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality.  *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  For the reasons stated above, the Government has a compelling interest in confidentiality to justify sealing the Application and Order.  *See id.*

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney

_____/s/_____
Zia M. Faruqi, D.C. Bar No. 494990
Assistant United States Attorney
United States Attorney's Office
Asset Forfeiture and Money Laundering
555 4th Street, N.W., Room 4820
Washington, D.C.  20530
Office: (202) 252-7117; fax: (202) 514-8707
Zia.faruqi@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF USA FOR
2703(d) ORDER FOR THREE EMAIL
ACCOUNTS SERVICED BY
MICROSOFT CORPORATION FOR
INVESTIGATION OF VIOLATION OF
50 U.S.C. 1701

Misc. No. _____

**Filed Under Seal**

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporaiton ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee from prosecution and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2)(3)(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person for a period of one year from the date of this Order, unless the period of nondisclosure is later modified by the Court, except that

PROVIDER may disclose this Order to an attorney for PROVIDER for the purpose of receiving

legal advice.

      IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise

ordered by the Court.


_____                 _____

Date                                    HON. ROBIN M. MERIWEATHER
                                         UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### I. The Account(s)

The Order applies to certain records and other information for any Microsoft account(s) associated with the following identifier(s):



### II. Records and other information to be disclosed

Microsoft Corporation is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment ("Account"), and for any account linked to such account or identifier by alternate email address, telephone number, payment information, cookies, GUID, or registration IP address ("Linked Accounts"), for the time period from January 1, 2013 to the Present:

**A. Information about the customer or subscriber of the Account(s):**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4. Length of service (including start date) and types of service utilized;

5. Telephone or instrument number or other subscriber number or identity (including device identification and the Internet Protocol (IP) address associated with registration, and MAC addresses); and

6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to each Account(s) (except the contents of communications), including:**

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)</u>

I, _____, do hereby attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Microsoft Corporation ("Provider"), and my official title is _____. I am a custodian of records for Provider. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Provider, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      All records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      Such records were kept in the ordinary course of a regularly conducted business activity of Provider; and

c.      Such records were made by Provider as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____         _____
Date                                                          Signature

**FILED**

SEP 1 5 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE EMAIL ACCOUNTS SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 50 U.S.C. 1701 | Case: 1:17-mc-02279 Assigned To : Meriweather, Robin M. Assign. Date : 9/13/2017 Description: Misc. |

### ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporaiton ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee from prosecution and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2)(3)(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person for a period of one year from the date of this Order, unless the period of nondisclosure is later modified by the Court, except that

(N)

PROVIDER may disclose this Order to an attorney for PROVIDER for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court.

___9/14/17___
Date

_____
HON. ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## I.  The Account(s)

The Order applies to certain records and other information for any Microsoft account(s) associated with the following identifier(s):



## II.  Records and other information to be disclosed

Microsoft Corporation is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment ("Account"), and for any account linked to such account or identifier by alternate email address, telephone number, payment information, cookies, GUID, or registration IP address ("Linked Accounts"), for the time period from January 1, 2013 to the Present:

### A.  Information about the customer or subscriber of the Account(s):

1.  Names (including subscriber names, user names, and screen names);

2.  Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4.  Length of service (including start date) and types of service utilized;

5.  Telephone or instrument number or other subscriber number or identity (including device identification and the Internet Protocol (IP) address associated with registration, and MAC addresses); and

6.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

3

**B. All records and other information relating to each Account(s) (except the contents of communications), including:**

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, do hereby attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Microsoft Corporation ("Provider"), and my official title is _____. I am a custodian of records for Provider. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Provider, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.     All records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.     Such records were kept in the ordinary course of a regularly conducted business activity of Provider; and

c.     Such records were made by Provider as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____         _____
Date                            Signature

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE EMAIL ACCOUNTS SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 50 U.S.C. 1701 | Misc. No. 1:17-mc-02279 **Filed Under Seal** |

*Reference:* ███████████     *Subject Account(s):* ███████████
███████████████████████

**AMENDED APPLICATION OF THE UNITED STATES**
**FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Microsoft Corporation ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Redmond, Washington, to disclose certain records and other information pertaining to the PROVIDER account(s) associated with ████████████████████████████ ██████████████ as set forth in Part I of Attachment A to the proposed Order.[1] The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND AND JURISDICTION

1.      PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under section 2703(d) to require

---

[1]      On or about September 14, 2017, this Court approved an application for the target accounts. However, the PROVIDER did not receive the executed order, and has now requested an updated order. The instant application is identical in substance to the prior request.

PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.     This Court has jurisdiction to issue the requested Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.  Finally, the offenses under investigation are the subject of a grand jury investigation in the District of Columbia.

3.     A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

<u>THE RELEVANT FACTS</u>

4.     The United States is investigating a scheme to illicitly procure items with the purpose of evading U.S. sanctions against ██████████████  More specifically, the United States is investigating certain individuals and their co-conspirators who employed sophisticated evasion techniques and front companies in dealing with the U.S. financial system to disguise the true nature of their illicit business dealings, as well as to protect and promote the on-going illicit procurement scheme.  Payments made in connection with these procurements were illegally sent in U.S. dollars

on a number of occasions. The investigation concerns possible violations of, *inter alia*, the International Economic Emergency Powers Act (IEEPA), codified at 50 U.S.C. § 1701 et seq.; Executive Order ("E.O.") ██████████████████████████ and Prohibiting Certain Transactions with ███████ and the money laundering statute, 18 U.S.C. § 1956.

**I.** ████████████████████████████████

5. ████ has been designated a State Sponsor of Terrorism since ████████ Additional sanctions were added in ████████████ Subsequent E.O.s have imposed additional sanctions targeting, among others, ████████████████████████ 2011, the U.S. Department of the Treasury, Office of Foreign Assets Control (collectively, "OFAC"), which is located in Washington, D.C., designated ████████████████ human rights abuses, including repression of ████████ as well as having benefitted from rampant corruption.

6. The investigation has revealed, based on subpoena returns, a Treasury Department designation (described further below) and open source records, that ██████████████████ ████████ operated by ████████████, which is affiliated with ████████████ ████████████ in ██████████████████████████ ████████████ were designated by OFAC on ████████ for procuring items on behalf of the ██████████████████████████ Law enforcement is aware that ████████ is a ████████████████ which is believed to be responsible for research and development of ████████████████████████ Specifically, the Treasury designation stated:

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████



7.     Law enforcement has uncovered a number of social media and email accounts used by ███████████████ Pursuant to grand jury subpoenas, which were accompanied with related nondisclosure orders, the government obtained subscriber information for a number of the accounts associated with ███████████████ as well as other individuals associated with the ███████████████████████████████████████

8.     The subpoena returns revealed that Facebook ID: ███████ and ███████████████ are used by ███████. Specifically, both accounts were registered to ███████ Additionally, both of these accounts listed the same ███████████████ ███████ on the contact information.

9.     Subpoena returns for ███████████████ revealed that ███████████████ was listed as a secondary email address.  Subpoena returns for ███████████████ confirmed it was used by ███████ who (as noted above) operates ███████████████ This account was subscribed to ███████████████ ███████████

**II.     ███████████████ Has Sent Multiple Suspicious International Wire Transfers**

10.     The government issued grand jury subpoenas to multiple banks for international financial transactions conducted in U.S. dollars by ███████ These returns show that

4



██████████ has conducted more than ██████████ internationally, beginning in ██████

██████ These wires were primarily to technology companies in ██████████████ As noted

above, ██████████ was designated for providing support, which may include procuring

sensitive technologies, for ██████████ These wires were conducted in violation of U.S. law, as the

██████████ failed to obtain a license from OFAC prior to engaging in these U.S. dollar

transactions.

11.    On a number of these transactions, ████████████████████████████████

██████████ as its address, which matches the address listed on the Treasury designation. Upon

review of ██████████████ law enforcement learned that this address is used by at least

██████████ One of the other companies using this ██████ has also been designated by

OFAC.

12.    Based on the above information, law enforcement believes that ██████████████

████████are jointly engaged in a business to procure sensitive items from ██████████████

to their ultimate location in ██████ which is subject to sanctions.

**Target Accounts**

13.    ██████████████ **("Target Account 1")**: Prior 2703(d) returns for

██████████████████ revealed that Target Account 1 sent over ██████████ to

██████████████ and received over ██████ from ████████████████████

██████████ This level of contact far exceeded the number of contacts ██████ had with almost

any other user.  When law enforcement viewed ██████████ public ██████ account a

██████ account named ██████████ is displayed on the right hand tile of the screen as a related

account under the ██████████████ feature box.  According to ████████████████

██████ feature is updated multiple times each month and reflects top ██████ profiles that

viewers of the current profile (i.e., █████████ have also viewed. Under ████████

█████████████ box, ███████ account is second only to the ██████ profile of the

█████████████████████████████████ Additionally, ████████ listed

occupation on ██████ translates to: ████████████████████████████

██████████████████████████████ account identifies his occupation as

█████████████ and also locates him in ████████ Based on the high volume of contacts, the

nexus between ███████████████████ for illicit transshipments, law enforcement has

reason to believe that ██████████ conducts business within ███████████████

14. ████████████████ (**"Target Account 2"**): Prior 2703(d) returns for

██████████████████ revealed that Target Account 2 sent over ██████████ to

████████████████████████ Based on the similarities of the name of Target

Account 1 ████████████████████ law enforcement believes that Target Account 2 is also

controlled by ████████ who (as noted above) is a known associate of █████████████ with

█████████████████ Law enforcement is aware that an alternate account can be often used

for password recovery and can be typically used by the same person as the primary account or by

a trusted associate.

15. ████████████████████ (**"Target Account 3"**): Prior 2703(d) returns for

██████████████████ revealed that Target Account 3 sent four emails to

████████████████ and received ██ emails from ██████████████████████████

████████ Based on the similarities of the name of Target Account 3

█████████████████████ to ████████████ other identified email accounts, law

enforcement believes that Target Account 3 is controlled by ██████████████

16. Law enforcement is aware that criminal co-conspirators, money launderers, as well

as businessmen, communicate frequently through electronic mediums about their legitimate businesses, illegitimate businesses, and the transfer/commingling of proceeds from such businesses. Private messages and email offer a uniquely valuable form for such communication, as they can be accessed from any location. Many such persons believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

17.     Moreover, persons operating international money laundering operations typically have to communicate via email with persons funding their operations, due to the time differences. When transferring funds to co-conspirators, electronic communications normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received. I also know from prior investigations that subordinates in the management chain must communicate to their superiors the status of their illegal tasks as well as receive new illegal tasks.

18.     Because criminals who communicate in such a way fear detection and require multiple fake identities, they typically create numerous email accounts. Part of managing this vast number of accounts often leads to the linking of accounts. This allows a single user the ability to access as well as reset passwords for the multiple linked accounts. Law enforcement is aware that the tracking and detection of linked accounts is one way by which a person and/or co-conspirators can be identified. Moreover, the linking of an account can further demonstrate who has access and/or control of an account.

19.     Law enforcement is aware that a high volume of above contacts between emails accounts is typically indicative of a trusted status between the two parties, and often involves communications with a trusted co-conspirator.

20.     The header information of these communications can reveal the scope of the

contacts between the money launders and can identify important co-conspirators. The metadata associated with these accounts will assist law enforcement in uncovering the extent of this network, as well as further identify the users of these accounts. This information is relevant to criminal proceedings and their associates.

## TECHNICAL BACKGROUND

21.     An email message has its own routing header, in addition to the source and destination information associated with all Internet data. The message header of an email contains the message's source and destination(s), expressed as email addresses in "From," "To," "CC" (carbon copy), or "BCC" (blind carbon copy) fields. Multiple destination addresses may be specified in the "To," "CC," and "BCC" fields. The email addresses in an email's message header are like the telephone numbers of both incoming and outgoing calls because they indicate both origin and destination(s).

## REQUEST FOR ORDER

22.     The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order.

23.     The United States further requests that the Order require PROVIDER not to notify any other person of the existence of the Order, including the subscriber or customer of each account identified in Attachment A. *See* 18 U.S.C. § 2705(b). Acting under 18 U.S.C. § 2703(c)(1)-(2),

the Government "is not required to provide notice to a subscriber or customer" regarding the proposed Order.  *See* 18 U.S.C. § 2703(c)(3).  Furthermore, this Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom . . . [the] court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of . . . [the] court order."  *See* 18 U.S.C. § 2705(b).  Such a "nondisclosure order" must be issued if this Court finds "reason to believe that notification . . . will result in—(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial."  *Id.*; *see In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena* ██████████ 41 F. Supp. 3d 1, 5 (D.D.C. 2014) ("Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.").

24.     An order of nondisclosure is necessary because the proposed Order relates to an ongoing criminal investigation.  Once notified, potential target(s) would be prompted to destroy or conceal incriminating evidence, change patterns of behavior to evade future detection, and otherwise attempt to undermine the investigation and avoid prosecution.  Accordingly, there is reason to believe that notification of the existence of the proposed Order would seriously jeopardize the investigation, including by giving potential target(s) an opportunity to flee from prosecution or destroy and tamper with evidence. *See* 18 U.S.C. § 2705(b)(2)(3)(5).

25.     Given the complex nature of the criminal activity under investigation, potential involvement of foreign-based perpetrators, and/or foreign-based evidence, the Government anticipates that this investigation will remain ongoing and confidential for the next one year or

longer. However, if circumstances were to change such that the requested order of nondisclosure becomes no longer necessary, the Government will notify the Court and seek appropriate relief.

26. In this matter, the Government also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the Government has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

Respectfully submitted,

JESSIE K. LIU
United States Attorney

_____/s/_____
Zia M. Faruqui, D.C. Bar No. 494990
Assistant United States Attorney
United States Attorney's Office
Asset Forfeiture and Money Laundering
555 4th Street, N.W., Room 4820
Washington, D.C. 20530
Office: (202) 252-7117; fax: (202) 514-8707
Zia.faruqui@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE EMAIL ACCOUNTS SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 50 U.S.C. 1701 | Misc. No. _____<br><br>**Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporation ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee from prosecution and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2)(3)(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person for a period of one year from the date of this Order, unless the period of nondisclosure is later modified by the Court, except that

PROVIDER may disclose this Order to an attorney for PROVIDER for the purpose of receiving

legal advice.

      IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise

ordered by the Court.


                                _____

                                ROBIN M. MERIWEATHER

                                UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### I. The Account(s)

The Order applies to certain records and other information for any Microsoft account(s) associated with the following identifier(s):



### II. Records and other information to be disclosed

Microsoft Corporation is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment ("Account"), and for any account linked to such account or identifier by alternate email address, telephone number, payment information, cookies, GUID, or registration IP address ("Linked Accounts"), for the time period from January 1, 2013 to the Present:

    **A. Information about the customer or subscriber of the Account(s):**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4. Length of service (including start date) and types of service utilized;

5. Telephone or instrument number or other subscriber number or identity (including device identification and the Internet Protocol (IP) address associated with registration, and MAC addresses); and

6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to each Account(s) (except the contents of communications), including:**

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
## PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, do hereby attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by Microsoft Corporation ("Provider"), and my official title is _____.  I am a custodian of records for Provider.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Provider, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      All records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      Such records were kept in the ordinary course of a regularly conducted business activity of Provider; and

c.      Such records were made by Provider as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                                              Signature

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR THREE EMAIL ACCOUNTS SERVICED BY MICROSOFT CORPORATION FOR INVESTIGATION OF VIOLATION OF 50 U.S.C. 1701 | Misc. No. _____<br><br>**Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Microsoft Corporation ("PROVIDER"), an electronic communication and/or remote computing service provider located in Redmond, Washington, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee from prosecution and destroy or tamper with evidence. *See* 18 U.S.C. § 2705(b)(2)(3)(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person for a period of one year from the date of this Order, unless the period of nondisclosure is later modified by the Court, except that

PROVIDER may disclose this Order to an attorney for PROVIDER for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court.

Angela
D. Caesar

Digitally signed by Angela D. Caesar
DN: c=US, st=District of Columbia,
l=Washington, o=United States District
Court for the District of Columbia,
ou=Clerk of Court, cn=Angela D. Caesar,
email=CO_DoNotReply@dcd.uscourts.gov
Date: 2018.01.02 11:56:56 -05'00'

Digitally signed by Robin M.
Meriweather
Date: 2017.12.29 17:29:22 -05'00'

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **I. The Account(s)**

The Order applies to certain records and other information for any Microsoft account(s) associated with the following identifier(s):



### **II. Records and other information to be disclosed**

Microsoft Corporation is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment ("Account"), and for any account linked to such account or identifier by alternate email address, telephone number, payment information, cookies, GUID, or registration IP address ("Linked Accounts"), for the time period from January 1, 2013 to the Present:

#### **A. Information about the customer or subscriber of the Account(s):**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

4. Length of service (including start date) and types of service utilized;

5. Telephone or instrument number or other subscriber number or identity (including device identification and the Internet Protocol (IP) address associated with registration, and MAC addresses); and

6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. All records and other information relating to each Account(s) (except the contents of communications), including:**

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
## PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, do hereby attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Microsoft Corporation ("Provider"), and my official title is _____. I am a custodian of records for Provider. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Provider, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. Such records were kept in the ordinary course of a regularly conducted business activity of Provider; and

c. Such records were made by Provider as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____     _____
Date                                 Signature