# ATTACHMENT

# A

*Redacted Docket Materials*

# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

INFORMATION ASSOCIATED WITHIN TWO HANDHELD
DEVICES AND EMAIL ACCOUNT
████████████████ THAT IS STORED AT
PREMISES CONTROLLED BY GOOGLE, INC.

)
)
)
)
)
)

Case No.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
computer servers and records of Google Inc., located at 1600 Amphitheatre Parkway, Mountain View, California
for information associated within two handheld devices and email account ████████████

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*
certain property, the disclosure of which is governed by Title 18, U.S.C. Sections 2701 through 2711, namely contents of electronic e-mails and other electronic data more fully described in Attachment B to this application.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Firearms offenses |

The application is based on these facts:

See attached affidavit incorporated by reference as if fully restated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

██████████████████████████████████

Sworn to before me and signed in my presence.

Date: _____ 04/06/2017 _____

*Judge's signature*

City and state: Washington, D.C. _____

U.S. MAGISTRATE JUDGE DEBORAH A. ROBINSON

*Printed name and title*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION CONTAINED WITHIN
TWO HANDHELD DEVICES AND
ASSOCIATED WITH ONE EMAIL
ACCOUNT, THAT IS STORED AT
PREMISES CONTROLLED BY GOOGLE,
INC.

Misc. No. _____

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, ██████████, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application by the United States of America for a search warrant on Google, Inc., an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records, and data located at 1600 Amphitheatre Parkway in Mountain View, California, in reference to data from one email account and two cellular telephones associated with ██████████ The email account is ██████████ (hereafter referred to as "Email 1"). The two cellular telephones are identified as follows:



2.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government records and other information in its possession, further described in Section I of Attachment B, pertaining to the subscriber or customer associated with the cellular telephones' Google accounts.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the information described in Section II of Attachment B, using the procedures described in Section III of Attachment B.



4.      Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of, *inter alia*, 18 U.S.C. § 922(g)(1) have been committed by ██████████████████████ There is also probable cause to search the information described in Attachment A for evidence of these crimes, and contraband or fruits

2

of these crimes, as described in Attachment B. This affidavit is intended to show merely that

there is sufficient probable cause for the requested warrant and does not set forth all of my

knowledge about this matter.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A).  Specifically, the Court is a "district court of the United States . . . that – has

jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more

fully below, acts or omissions in furtherance of the offenses under investigation likely occurred

within Washington, DC.  *See* 18 U.S.C. § 3237.  Moreover, the offenses under investigation are

the subject of a grand jury investigation in the District of Columbia.

## BACKGROUND CONCERNING GOOGLE

6.      Google is a U.S. company that provides a variety of online services to the public.

As described in further detail below, these services include, among many others, email, instant

messaging, web searching, and file storage.

7.      Google allows subscribers to obtain access to its services by registering for a

"Google Account."  A Google Account consists of a single username and password, and is

uniquely associated with a Google email address, typically at the domain name "gmail.com," like

the Google Account(s) listed in Attachment A. Once a subscriber obtains a Google Account, the

subscriber can use that same username and password to sign into any Google product.  In other

words, a Google Account username functions as a subscriber's username across all of the dozens

of Google services offered to the public.  Google treats each account holder as a single user

across all Google products.  Google combines information that a user has provided from one service when signed in with information from other services.

8.      Google asks subscribers to provide certain personal identifying information when registering for a Google Account.  Such information includes the subscriber's first and last name, date of birth, telephone number, other email address, and country of residence.  In my training experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and experience, I know that even if subscribers insert false information to conceal their identities, this information often provides clues to their identity, location, or illicit activities.

9.      One of Google's most popular services is Gmail, Google's email service.  Google allows subscribers to obtain email accounts at the domain name gmail.com.  In general, an email (which can include attachments such as documents, images, and videos) that is sent to or from a Google subscriber, or stored in draft form in the account, is automatically stored in the subscriber's Gmail account on Google servers until the subscriber deletes the email.  If the subscriber does not delete a message from Gmail, the message can remain on Google servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.   A Gmail user can also store files in addition to emails, such as address books, contact lists**,** user groups, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google.  In my training and experience, evidence of who was using an email account may be found in address books, contact lists, email in the account, and attachments to emails, pictures, and other files.

4

10. Google Calendar allows users to create and store events. The Calendar entries may include the date, time, and location of particular events. Users can share individual events or entire calendars with other users. In my experience, Calendar information can reveal evidence regarding the user's identity and/or whereabouts, as well as an indication of other co-conspirators. For example, a user may add an event titled, "Celebratory Dinner" immediately following the crime in question, at a restaurant one block from the scene of the crime, and may include his co-conspirators on the Calendar invitation.

11. Google Maps provides users with a variety of records and tools related to maps and location. The information stored by Google associated with an account holder's use of Google Maps may include all maps for which the user previously searched, records associated with custom maps created by or shared with the user, changes and edits to public places made by the user, starred places, private labels, and saved locations. Based on my training and experience, Google Maps can contain evidence of the user's location and identity. For example, a user will frequently save his home and/or work locations, and will "star" or favorite common destinations. A user who plans a robbery may search for the victim's location via Google Maps and may use Google Maps to get directions from the user's residence to the victim location, revealing both the user's address and specific planning steps taken in furtherance of the crime.

12. Google Drive allows users to create, store, edit, and share documents and other files. Google Drive encompasses various Office Suite applications, such as Docs (documents), Sheets (spreadsheets), and Slides (slide-based presentations). Files and documents stored in Google Drive are accessible from any smartphone, tablet, or computer, and can be shared with other users to view, edit or download. Google Drive files on a user's device will automatically "sync" with a user's Google Drive files on the web, so that a user can access and launch the same

5

files from all of the user's devices.  In general, a file on Google Drive is stored on Google

servers until the subscriber deletes the file.  Even if the subscriber deletes the file, it may

continue to be available on Google's servers for a certain period of time.  In my training and

experience, evidence of who was using a Google account, and evidence related to criminal

activity of the kind described above, may be found in these files and records.  For example, a

user can use Google Drive to maintain a spreadsheet of incoming wire transfers and the related

payments owed to co-conspirators.

13.     A user's Google Drive may also contain back-up information from third-party

apps.  In some cases, such as with the messaging application WhatsApp, the back-up data is

contained in a "hidden folder" which is inaccessible to the user.  While Google may be able to

produce the data, investigators may need to seek assistance from the third party behind the

application in order to read or otherwise use the information.

14.     Google offers a service through which a computer user can search webpages for

text that the user enters.  Under some circumstances, Google saves the user's text searches for

later retrieval.  Google also maintains Web History records for its users, recording information

about the user's online activity.  Web History records may include, among other things, the

Google searches the user conducts, the web sites the user visits, and the videos the user watches.

Google's Web and App Activity records for a user may similarly save the user's search activity

on applications and browsers, including information about the websites the user visits; the

applications that he uses; advertisements that the user clicks; and the user's location, language,

and Internet Protocol address ("IP address").  This activity information can be saved even when

the user is offline.  Based on my training and experience, I am aware that a user's web and

search history may include evidence of the crime itself as well as the user's identity and state of mind.

15.     Google allows users to connect their Google Accounts to Chrome, Google's web browser.  When a Google Account is signed into Chrome, all of the user's Chrome data, such as bookmarks, history, passwords, and other settings, are synched to the user's Google Account. The data is stored on Google's servers and made available to the user wherever he signs into Chrome, regardless of the device or location.  Google may also keep records of the webpages or IP addresses that a user clicks on or types directly into his web browser's address bar if the user has logged into Google Chrome.  For users of Google Chrome, Google may also save information that the user provided to third-party websites via forms filled out while logged into Chrome.  This "Autofill" information may include the user's name, address, phone number, email address, and payment information.  Based on my training and experience, information associated with Google Chrome may constitute evidence of the crime, as well as indicate the user's identity and location.

16.     Google allows users to set up Google Alerts, which notify the user via email whenever user-selected search terms appear in the news or in Google Search results.  Based on my training and experience, Google Alerts information can constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. For example, an individual operating under an alias may set a Google Alert for references to his real name, revealing his true identity.

17.     Google offers multiple services enabling users to send messages and communicate with one another in real time.  Google Hangouts, Google's primary web-based instant messaging service, allows users to send text-based messages, make voice or video calls,

7

and share photos, and can be accessed from within a Gmail browser window. Instant messages sent and received using these services are often saved within a user's account. In my training and experience, messages sent through Google's messaging services may reveal evidence related to criminal activity of the kind described above. Information pertaining to other participants in the conversation can also identify co-conspirators or additional individuals otherwise involved in the criminal activity.

18.     Google Messenger is a messaging service available to mobile phone users. Messenger allows users to send text, photo, video, and voice messages from the Messenger application. Google also offers Allo and Duo, messaging applications similarly available to mobile phone users. The Allo and Duo applications are available to users even outside of their Google Accounts. Google Allo allows users to send text, photos, and other graphic items. Google Allo users can use Allo to communicate with non-Allo users by text message. Google Duo allows users to communicate with other users by video through the cameras on their mobile phones or tablets. In my training and experience, messages sent through Google's messaging applications may reveal evidence related to the criminal activity under investigation, as well as assist investigators in identifying additional participants in the criminal scheme.

19.     Google Voice allows users in the United States to make and receive calls and text messages using a single number regardless of the device from which the user is accessing the service. Users can forward calls to different phone numbers, and to multiple phones at once. Users can also receive calls and texts sent to their Google Voice number in their Google Voice inbox or in Hangouts. Google Voice users can receive voicemails in their original form or as a text transcription. In my training and experience, information stored by Google pertaining to

Google Voice may provide clues related to the identity, location, or illicit activities of the user and co-conspirators.

20.     Google services such as Google Photos and Picasa Web Albums allow users to store, edit, and share images.  Users may also label the photos to identify particular individuals. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in these images and videos.  Additionally, location information associated with a photo could provide evidence of the current and past whereabouts of the user.

21.     Google also offers a popular video-sharing service, YouTube.  YouTube users can upload and share videos, and can comment on other users' videos.  Google may store information about each YouTube video that a user watched, in addition to the user's own YouTube content.  In my training and experience, YouTube information may contain evidence of the crime as well as the individual's state of mind.  For example, a user may use YouTube to research how-to videos about safe-cracking before committing a robbery that requires successfully cracking the same make and model of safe as was depicted in the videos.

22.     Google account holders can utilize the Google Play store to download mobile applications that can be used for various purposes, including social media, banking, and travel. Through Google Play, Google may retain a list of all applications installed on a user's mobile device.  In my training and experience, records of applications installed by a user can lead to evidence related to criminal activity of the kind described above, as well as to the identification of co-conspirators.  Google Play records may reveal communications services used to communicate with co-conspirators, or applications used directly in furtherance of the criminal activity.  Google Play records could, for example, reveal that a user installed a mobile banking

9

application, and subsequent records obtained from the associated bank may reveal evidence that

the mobile application was used to transfer illicitly obtained funds to a co-conspirator for

purposes of laundering the money.

23.     In my training and experience, in some cases, email account users may

communicate directly with an email service provider about issues relating to the account, such as

technical problems, billing inquiries, or complaints from other users.  Email providers typically

retain records about such communications, including records of contacts between the user and

the provider's support services, as well as records of any actions taken by the provider or user as

a result of the communications.  In my training and experience, such information may constitute

evidence of the crimes under investigation because the information can be used to identify the

account's user or users.

24.     In my training and experience, Google typically retains certain transactional

information about the creation and use of each account on its systems.  This information can

include the date on which the account was created, the length of service, records of log-in (*i.e.*,

session) times and durations, the types of services utilized, the status of the account (including

whether the account is inactive or closed), the methods used to connect to the account (such as

logging into the account via the provider's website), and other log files that reflect usage of the

account.

25.      Further, Google maintains location history for its users.  Google collects and

processes an account holder's geographic location information when signed into Google services

and maps those locations.  Google can use a variety of information to determine location,

including IP address and GPS.  Google also may gather information regarding nearby devices,

10

Wi-Fi access points, and cell towers.  Location information may also be gleaned from Google services such as Google Maps.

26.     The user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as geolocation, date and time) may indicate who used or controlled the account at a relevant time.

27.     The logs, user attribution, and location information held by Google also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.  This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additional information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video).

28.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in the account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime or map searches regarding the location that the crime was committed), or consciousness of guilt (*e.g.*, deleting communications or account information in an effort to conceal evidence from law enforcement).

29.     As explained herein, information stored in connection with a Google account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct

11

under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

30.     There is reason to believe Google is still in possession of records related to the accounts.  Google maintains and stores content and non-content data associated with an account for an extended period of time, potentially indefinitely if the account holder does not affirmatively delete the data.  For example, an email that is sent to a Google subscriber is stored in the subscriber's inbox on Google's servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on Google's servers indefinitely.  Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

31.     Based on my training and experience, I believe that data stored by Google in connection with the above services may contain evidence of the substantive crimes under investigation, as well as evidence of the account holders' geographic location and travel plans, and the true identity and/or aliases of the account holders.

## **PROBABLE CAUSE**



32.     On or about September 27, 2016, Witness 1 ("W-1"), a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contacted the FBI regarding an individual W-1 had previously supervised named ▮▮▮▮▮▮▮ date of birth ▮▮▮▮▮▮▮  According to the information provided by W-1, ▮▮▮▮▮▮▮▮▮▮▮▮ at the time of ▮▮▮▮▮ was in ▮▮▮▮▮▮▮  W-1 indicated that as of October 2016, ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮

33.     W-1 informed the FBI that it had previously ▮▮▮▮▮▮▮▮▮ in connection with ▮▮▮▮▮▮▮▮▮ following his conviction in D.C. Superior Court

12

for █████████████████████████ Your affiant has confirmed that an

individual with Metropolitan Police Department ("MPD") true name █████████

█████, was convicted of █████████████████████████

█████████, in D.C. Superior Court ████████████ Your affiant is aware that

████████████████████████████████████████

are punishable by a term of incarceration in excess of one year.

34.    W-1 explained that it was aware of a Facebook page that appeared to belong to

█████, operating under the ████████████ W-1 stated that the ███████

█████ page includes multiple photos of its ████████████ W-1 stated that in

addition to the photographs of ████████████ page included photographs of

████████████████████

35.    Your Affiant has reviewed the public portions of the ████████████

Facebook page as recently as February 7, 2017. The page includes numerous photographs of an

individual who appears to match known law-enforcement photographs of an individual named

████████████████ The page also includes a video of an individual who

appears to be ████████████████████ which was posted on April

3, 2016, as well as another video ("Vid 1") of what appears to be ████████████

████████████ which was posted on August 9, 2016.[2] █████ posted that ███████

_____

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

13



in Vid 1 was a ██████████ Your affiant also observed references to ████████████████ ████████████████████████████

36.     Your affiant has also attempted to determine where ███████████ as he does not appear to ████████████████ provided by W-1.  To that end, your affiant has viewed ████████ addressed to the defendant dated September 16, 2016, that lists a specific address in Washington, D.C., which is believed to be ████████████████  A photograph posted to the ████████████ Facebook page appears to depict the defendant standing in front of the ████████████████████████, in or about May 2016.  Moreover, according to open-source reporting, ████████████████████ at the ████████████████ on December 24, 2016.

37.     Your affiant is aware, from his training and experience, as well as discussions with agents and FBI task force officers with experience with firearms investigations, that persons who attain and possess firearms typically keep on their person, or in their residence, or vehicle, additional magazines, ammunition, and/or firearms.  Your affiant is also aware that individuals who display photographs, or videos, of firearms on the public portions of their social-media accounts often utilize a cellular telephone to take those photographs or videos, and that those individuals may have more photos which may not be uploaded to a social media account. Additionally, your affiant is aware that cellular telephones are one means by which individuals communicate to conduct illegal firearms transactions.

---

██████████████████████████████████████████████████████████████

38.     Your affiant is aware that it is unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to, *inter alia*, ship, transport, or possess "any firearm . . . which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).  Your affiant is moreover aware that there are no commercial firearms manufacturing facilities located within the District of Columbia and that ████ has no manufacturing facilities in ██████████████████████ ███████

39.     On February 15, 2017, your affiant served a search warrant on Facebook Incorporated, related to Facebook ID ██████████████████████ which corresponds with Facebook username ██████████████ The search warrant revealed that ██████████████████ is registered to Email 1. According to ██████████████, as recently as September 27, 2016, Email 1 was listed as an email address for ██████████ Additionally, on January 11, 2017, in response to a request from another Facebook user for ██████████████████ the user of ████████████████ sent, ████████████████████ ██████████████

40.     The search-warrant return relating to ██████████████ revealed multiple pictures of ████████ possessing what appears to be various types of ████████████████ ██████████████████████████████████████████ Additionally, ████████ ██████████████ contained █ videos of what appears to be ██████████ possessing multiple types of ██████████████████████████████ Moreover, ██████████████████ also contained no less than ████ discussions between ██████████ and various Facebook users,

_____

████████████████████

15

which appear to indicate that ███████ is ████████████████████████████████

████████████████████████████████████████████████████

41.     On May 16, 2016, the user of ███████████████ discussed in messages with

multiple Facebook users what appears to be ████████████████████████████████

███   Specifically, the user of ████████████████ sent a message to Facebook Account

████████████████████████ stating, █████████████████████████████████

███████████████████████ On the same date, █████████████ sent a

photograph of what appears to be a ████████████████████████████████

████████████████████████████████████, to another Facebook user

███████████████████████, stating, █████████████████ Based on

my training and experience, I know that ██████████████████████████ in

the District of Columbia area.

42.     On May 25, 2016, ██████████████████████████████ appeared

to discuss in a message another possible sale and trade of what appears to be various types of

█████   The user of ████████████████ stated, █████████████████████ to

which the user of ████████████████ replied, ████████████████████████

responded with, ███████ to which the user of ████████████ responded with,

████████████████████████████████████████████████████████

and then followed up by stating, ████████████████████████████████████

████████████ Moreover, in a previous conversation with Facebook user

████████████████████████████ attempted to obtain ammunition for what

appears to be a ████████████████████████████████

43. ▮▮▮▮▮ discussed what appears to be additional ▮▮▮▮▮ in other messages. On October 27, 2016, the user of ▮▮▮▮▮ messaged the user of ▮▮▮▮▮ and stated, ▮▮▮▮▮ to which the user of ▮▮▮▮▮ states, ▮▮▮▮▮ The user of ▮▮▮▮▮ then responded, ▮▮▮▮▮ On December 26, 2016, the user of ▮▮▮▮▮ messaged the user of ▮▮▮▮▮ stating, ▮▮▮▮▮ referring to what appears to be ▮▮▮▮▮ Additionally, on January 20, 2017, the user of Facebook ▮▮▮▮▮ appeared to discuss obtaining ▮▮▮▮▮ when the user of Facebook ▮▮▮▮▮ stated, ▮▮▮▮▮ to which the user of ▮▮▮▮▮ ▮▮▮▮▮

44. On July 29, 2016, the user of ▮▮▮▮▮ posted a photo of an individual who appears to be ▮▮▮▮▮ The photograph depicts this individual ▮▮▮▮▮

45. On August 13, 2016, at approximately 10:00 p.m., the user of ▮▮▮▮▮ sent a photograph of ▮▮▮▮▮ holding what appears to be ▮▮▮▮▮ equipped with what appears to be ▮▮▮▮▮ to the Facebook ▮▮▮▮▮ The user of ▮▮▮▮▮ then sent a second photograph ("Photo 2") of just ▮▮▮▮▮ to Facebook ▮▮▮▮▮ and the ▮▮▮ users engaged in the following conversation on Facebook's messaging platform:

17



46.     The user of Facebook ▓▓▓▓ also sent Photo 2 to Facebook ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on August 13, 2016, and the user of Facebook ▓▓▓▓ and the user of Facebook ▓▓▓▓ engaged in the following conversation on Facebook's messaging platform:

47.     On August 10, 2016, three days prior to this discussion, the user of Facebook ▓▓▓▓ discussed what appears to be the sale of ▓▓ in order to obtain ▓▓▓▓ Specifically, after observing a picture of a ▓▓ in a message with Facebook ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the user of Facebook ▓▓▓▓ stated,

48.     On January 3, 2017, in a message, the user of Facebook ▓▓▓▓ appeared to offer to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to which the user

18

of Facebook █████████ responded, ████████████████████████████████
████████████████████

     49.     On February 27, 2016, the user of Facebook █████████ posted a video that

displays ██████████████████████████████████████████ at the

camera. On February 28, 2016, the user of Facebook █████████ posted a separate video,

which displays ████████ sitting with what appears to be █████████████████

     50.     On April 03, 2016 the user of Facebook █████████ posted ███ videos of ████

████ displaying what appears to be a █████████████████████ On the

same day, after these videos were posted, Facebook ██████████████████████

█████████ messaged Facebook ██████████ the following comment, ███████████

███████████████████████████████████████

███████ The user of Facebook █████████ has a username of █████████ and

discussions between Facebook █████████ and Facebook █████████ show that the latter

refers to the former as ██████ leading your affiant to conclude that the user of Facebook Account

████████████████████

     51.     On August 9, 2016, the user of Facebook █████████ posted Vid 1 on

Facebook █████████ Vid 1 displays ████████████████████████████████

███████ referenced above. Under the comments of Vid 1, the following conversation appears

between the user of Facebook █████████ and Facebook █████████████████████

████████████



19

52.     On March 17, 2017, your affiant served a search warrant to Snapchat
Incorporated, for information associated with Snapchat Account ██████████ (the
"Snapchat warrant")[4]  According to information provided by Snapchat, the registered email
address associated with ██████████ is Email 1, and the phone number associated with that
account is ██████████  On July 23, 2016, the user of ██████████ posted what
appears to be a Snapchat video to Facebook and described the video as "Snaps ██████████

53.     The Snapchat warrant revealed ██ videos, timestamped on December 8, 2016
and January 12, 2017 respectively, that contained footage of an individual who appears to be ██
██ possessing multiple ██████ all of which had ██████████
Additionally, the warrant revealed the user of ██████████ posted a ██ video,
timestamped March 10, 2017, which displays footage of what appears to be the user of
██████████ driving a vehicle, with a ██████████ According to
geolocation data contained within this video, the incident took place in ██████████

54.     On March 9, 2017, T-Mobile provided the United States with information
associated with ██████████  According to that information, the subscriber was listed as
██████████ and the subscriber address nearly matched ██████████ address associated
with ██████████  The information provided by T-Mobile moreover

---

██████████

██████████

established that Device 1 and Device 2 were both activated and associated with █████████████

between November 10, 2015 and November 28, 2016.

      55.    As noted above, your affiant is aware, based on my training and experience, as

well as conversations with other agents, that individuals engaged in the illegal sale of ███████

often use their cellular telephone, to conduct ████████████████ Device 1 and Device 2

have the Android operating system, which requires users to have a Gmail account, in order to

download applications such as Snapchat. ████████ appears to have utilized Device 1, Device 2,

and Email 1 to conduct ████████████████ Thus, there is probable cause to believe that ████

█████ has used and uses Device 1, Device 2, and Email 1 to facilitate the illegal sale of weapons.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

      56.    I anticipate executing this warrant under the Electronic Communications Privacy

Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

to require Google, Inc. to disclose to the government copies of the records and other information

(including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized

persons will review that information to locate the items described in Section II of Attachment B,

using the procedures described in Section III of Attachment B.

## CONCLUSION

      57.    Based on the forgoing, I request that the Court issue the proposed search warrant.

      58.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law-enforcement officer is not

required for the service or execution of this warrant.

59.     Because the warrant will be served on Google, who will then compile the requested records and information at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Subscribed and sworn to before me on _____, 2017

_____
THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

22

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the following mobile devices and Gmail address (collectively, "the Accounts"), which is stored at premises owned, maintained, controlled, or operated by Google, Inc., 1600 Amphitheatre Parkway in Mountain View, California:



## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google, Inc. ("Google")**

To the extent that the information described in Attachment A is within the possession,

custody, or control of Google, regardless of whether such information is stored, held or

maintained inside or outside of the United States, and including any messages, records, files,

logs, or information that has been deleted but is still available to Google, or has been preserved

pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the

following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account from February 1, 2016, to

present, including stored or preserved copies of emails sent to and from the account, any

attachments associated with the emails, draft emails, the source and destination addresses

associated with each email, the date and time at which each email was sent, and the size and

length of each email;

b.      Any records pertaining to the user's contacts, including address books, contact lists,

or groups;

c.      All records or other information regarding the identification of the account, to

include full name, physical address, telephone numbers and other identifiers, records of session

times and durations, the date on which the account was created, the length of service, the IP

address used to register the account, log-in IP addresses associated with session times and dates,

account status, alternative email addresses provided during registration, methods of connecting,

log files, and means and source of payment (including any credit or bank account number);

      d.      A list of the types of Google service utilized and any dates associated with the commencement or termination of that use;

      e.      All records pertaining to devices from which the account accessed any Google service or to which any Google service is synced, to include device serial numbers, model type/number, IMEI, phone numbers, and MAC Addresses;

      f.      Information regarding network identifiers from which any Google service was accessed, to include IP addresses and associated date and time of access;

      g.      Identify and provide subscriber records and IP logs, excluding content, for any other Google accounts linked to the account listed in Attachment A because of cookie overlap; all other Google accounts that list the same SMS phone number as the account listed in Attachment A; all other Google accounts that list the same recovery email address as the account listed in Attachment A; and all other Google accounts that share the same creation IP address as the account listed in Attachment A;

      h.      All information held by Google related to an account holder's location and location history on the following dates and times:

            i.  From 12 am to 12 pm on February 27, 2016

            ii.  From 12 am to 12 pm on February 28, 2016

           iii.  From 12 am to 12 pm on April 3, 2016

           iv.  From 12 am to 12 pm on May 16, 2016

            v.  From 12 am to 12 pm on July 29, 2016

           vi.  From 12 am to 12 pm on August 9, 2016

          vii.  From 12 am to 12 pm from August 13, 2016

         viii.  From 12 am to 12 pm on August 14, 2016

      ix.   From 12 am to 12 pm on December 8, 2016

      x.   From 12 am to 12 pm on December 8, 2016

      xi.   From 12 am to 12 pm on January 12, 2017

      xii.   From 12 am to 12 pm on January 22, 2017

      xiii.   From 12 am to 12 pm on March 10, 2017

including geographic locations associated with the user's account; IP addresses; and GPS information; and information pertaining to nearby devices, Wi-Fi access points, and cell towers;

      i.    The contents of all Google Drive files associated with the account from February 1, 2016 to present, and logs pertaining to use and access of those files, including Sheets, Docs, Slides, Forms, and Drawings; files stored by the account; files shared with or by the account and the account with or by whom the files were shared; the accounts or email addresses associated with each file use or access; the date and time at which each file was stored, shared, accessed, or edited; and the size and type of each file;

      j.    The contents of all Google Photos files associated with the account from February 1, 2016 to present, and logs pertaining to use and access of those files, including files stored by the account; files shared with the account; the accounts or email addresses associated with each file use or access; the date and time at which each file was stored, shared, accessed, or edited; and the size and type of each file;

      k.    The contents of all YouTube files associated with the account from February 1, 2016 to present, and logs pertaining to YouTube use and access, including files stored by the account; files shared with the account; the accounts or email addresses associated with each file use or access, the date and time at which each file was stored, shared, accessed, or edited; the size

3

and type of each file; YouTube searches conducted by the account; and YouTube videos watched by the account;

l.      The contents of all Google Hangouts files associated with the account from February 1, 2016 to present, including files stored by the account; files shared with the account; the accounts or email addresses associated with each file use or access; the date and time at which each file was stored, shared, accessed, or edited;  the size and type of each file; and logs pertaining to use and access of Hangout and Hangout-associated files;

m.      The contents of all messaging-related applications from February 1, 2016 to present, to include the content of Google Messenger, Allo, and Duo files associated with the account, including the contents of any messages sent or received by the user; the date and time at which those messages were sent; the counterparties to the messaging conversations; and logs pertaining to use and access of the messaging services;

n.      The files and contents associated with the account related to Google Voice from February 1, 2016 to present, including voicemails; text messages; forwarding phone numbers; parameters or rules set for forwarding calls; records of incoming and outgoing call times and durations; recorded calls; means and source of payment (including any credit card or bank account number) and billing records; and any additional notes or information added by the user to a Google Voice record;

o.      All Google Maps data from February 1, 2016 to present, including all Maps information associated with a user's search history; records associated with custom maps created by or shared with the user; the identity of other accounts with which the user shared said maps; changes and edits to public places; starred places, private labels, and saved locations; and the logs and metadata associated with all of the above;

4

p.      All information associated with a user's Calendar from February 1, 2016 to present, to include a list of all Calendars; all Calendar events and their full details, including date, time, location, other invited parties, and notes; information regarding any Calendar event to which the user has been invited, including the account information of the user who sent the invitation; any deleted or edited Calendar events and the date the changes were made; and account information for any other individual who the user invited to an event;

q.      The text of all Internet search requests from February 1, 2016 to present input by the subscriber; the contents of any Chrome data associated with a user's account, to include bookmarks, passwords, and history; any saved autofill information; and all URLs or IP addresses typed into the Google Chrome address bar or URLs or IP addresses clicked on;

r.      The files and contents associated with the account related to Google Play, including purchased and installed applications;

s.      All records pertaining to communications between Google or its representatives and any person regarding the account, including contacts with support services and records of actions taken; and

t.      For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

5

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, instrumentalities of, or contraband from, violations of 18 U.S.C. § 922 involving ▮▮▮▮▮▮ also known as ▮▮▮▮▮, an individual with a date of birth of ▮▮▮▮▮▮ including, for each entity identified on Attachment A, information referring or related to the following:

(a) Possession, sale, use, and transfer of weapons;

(b) Evidence indicating how, when, and where the Accounts were accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation, and to the Accounts' owner;

(c) Evidence indicating the Accounts' owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the Accounts, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the Accounts about matters relating to the possession, sale, use, and transfer of weapons, including records that help reveal their whereabouts.


## III.      Government procedures for warrant execution

The United States will conduct a search of the information produced by Google and determine what information is within the scope of the information to be seized specified in Section II.  The information that is within the scope of Section II may be copied and retained by the United States.

6

Law-enforcement personnel will seal any information from Google that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
## RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by Google, and my official title is _____.  I am a custodian of records for Google.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of Google; and

c. such records were made by Google as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____        _____
Date                                               Signature

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITHIN TWO HANDHELD<br>DEVICES AND EMAIL ACCOUNT<br><span style="background:black">    </span> THAT IS STORED AT<br>PREMISES CONTROLLED BY GOOGLE, INC. | )<br>)<br>)<br>)<br>)<br>) | Case: 1:17-mj-000204<br>Assigned To : Magistrate Judge Deborah A. Robinson<br>Assign. Date : 04/06/2017<br>Description: Search & Seizure Warrant |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

    An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     **Northern**     District of     **California**     *(identify the person or describe the property to be searched and give its location)*:

computer servers and records of Google Inc., located at 1600 Amphitheatre Parkway, Mountain View, California for information associated within two handheld devices and email account <span style="background:black">        </span>

    I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

certain property, the disclosure of which is governed by Title 18, U.S.C. Sections 2701 through 2711, namely contents of electronic e-mails and other electronic data more fully described in Attachment B to this application.

    **YOU ARE COMMANDED** to execute this warrant on or before     *April 20, 2017*     *(not to exceed 14 days)*
  ❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     **Deborah A. Robinson**     .
                                                            *(United States Magistrate Judge)*

  ❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

  ❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     04/06/2017      *5:20 PM*

                                                             *Judge's signature*

City and state:     Washington, D.C.                 U.S. Magistrate Judge Deborah A. Robinson
                                                            *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>1:17-MJ-000204 | Date and time warrant executed:<br>4/7/2017 · 9:00AM | Copy of warrant and inventory left with:<br>GOOGLE, INC. |
| Inventory made in the presence of : | | |

Inventory of the property taken and name of any person(s) seized:

.ZIP FILES FOR ACCOUNT

**FILED**

MAY 1 2 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  5/12/17