AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>MONITORING OF GPS INFO & CELL SITE LOCATION DATA FOR<br>ONE CELL PHONE ACCOUNT STORED AT PREMISES CONTROLLED<br>BY ONE PROVIDER & SEARCH OF INFORMATION ASSOCIATED<br>WITH THESE NUMBERS PURSUANT TO 18 U.S.C. 2703 & 3123 FOR<br>INVESTIGATION OF VIOLATION 18 U.S.C. 922(o)(1) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 23-SC-1299<br>23-SC-1300 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1, A-2, A-3 (incorporated by reference). The Court has authority to issue this warrant under 18 U.S.C. §§ 2703 (c)(1)(A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

Located within the jurisdiction of the District of Columbia, there is now concealed  *(identify the person or describe the property to be seized)*:

See Attachments B-1, B-2, B-3 (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o)(1) (possession of a machinegun) ; 18 U.S.C. § 371 (conspiracy to possess or transfer a machinegun). | |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

Telephone _____ *(specify reliable electronic means).*

Date: _____6/01/2023_____

2023.06.01 12:53:05
-04'00'
_____
*Judge's signature*

City and state: _____Washington, D.C._____

Robin M. Meriweather
_____
(United States Magistrate Judge)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| MONITORING OF GPS INFO & CELL SITE LOCATION DATA FOR | )    Case No.  23-SC-1299 |
| ONE CELL PHONE ACCOUNT STORED AT PREMISES CONTROLLED | )                  23-SC-1300 |
| BY ONE PROVIDER & SEARCH OF INFORMATION ASSOCIATED | ) |
| WITH THESE NUMBERS PURSUANT TO 18 U.S.C. 2703 & 3123 FOR | ) |
| INVESTIGATION OF VIOLATION 18 U.S.C. 922(o)(1) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located within the jurisdiction of the District of Columbia.
*(identify the person or describe the property to be searched and give its location)*:

See Attachments  A-1, A-2, A-3 (incorporated by reference). The Court has authority to issue this warrant under 18 U.S.C. §§ 2703 (c)(1)(A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachments  B-1, B-2, B-3 (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before _____ June 13, 2023 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Robin M. Meriweather _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:          6/01/2023          2023.06.01
12:53:38 -04'00'
*Judge's signature*

City and state:          Washington, D.C.          Robin M. Meriweather
United States Magistrate Judge

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br><br>23-SC-1299 and 23-SC-1300 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
|      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Robin M. Meriweather

## ATTACHMENT A-1

### Property to Be Searched

1.      This warrant applies to records and information associated with the cellular device assigned to call number ████████ ("TARGET PHONE NUMBER 1"), owner is unknown, whose service provider is ██████████ ("**PROVIDER 1**"), a wireless communications service provider that is located at ████████████ .

2.      Information about the location of TARGET PHONE NUMBER 1 that is within the possession, custody, or control of PROVIDER 1, including information about the location of the cellular telephone if it is subsequently assigned a different number.

## ATTACHMENT A-2

1.      The subject of this investigation is an unknown individual.

## ATTACHMENT A-3

**Property to Be Searched**

1.      This warrant applies to information associated with

- **TikTok username** ███████████

(hereinafter, "TARGET███████████") that is stored at premises owned, maintained,

controlled, or operated by ████████ ████████ (the **"PROVIDER 2")**, a business with

offices located at ██████████████████████████████.

3

**ATTACHMENT B-1**

**Particular Things to be Seized**

I.     **Information to Be Disclosed by PROVIDER 1**

All information about the location of TARGET PHONE NUMBER 1 described in Attachment A-1 for a period of 30 days, during all times day or night. "Information about the location of the target telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A-1. It further includes:

- Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

- Source and destination telephone numbers;

- Date, time, and duration of communication; and

- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the TARGET PHONE NUMBER 1 will connect at the beginning and end of each communication, as well as per-call measurements data (PCMD) (also known as Network Event Location Services (NELOS), Timing Delay/Timing Advance (TA), TrueCall, Time on Tower Report, and/or Real Time Tool (RTT) data, or similar).

It also includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C § 3123 by the service provider and the Federal Bureau pf Investigation. The pen register / trap and trace device shall be transferable to any change dialed

number subsequently assigned to a device bearing the same ESN, IMSI or SIM as the target cell phone; any changed ESN, IMSI or SIM subsequently assigned the same dialed number as the target cell phone; or any additional changed dialed number, ESN, IMSI or SIM listed to the same subscriber account as the target cell phone.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **PROVIDER 1**, **PROVIDER 1** is required to disclose the Location Information to the government. In addition, **PROVIDER 1** must furnish the government all information, facility, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **PROVIDER 1**'s services, including by initiating a signal to determine the location of the target telephone on **PROVIDER 1**'s network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The government shall compensate **PROVIDER 1** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 922(o)(1) (possession of a machinegun) and 18 U.S.C. § 371 (conspiracy to possess or transfer a machinegun) involving unidentified subject(s).

.

### III.      Government procedures for warrant execution

The United States government will conduct a search of the information produced by the **PROVIDER 1** and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the **PROVIDER 1** that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

**Attachment B-2**

**Particular Things to be Seized**

I. **Information to Be Disclosed by PROVIDER 1**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the **PROVIDER 1**, including any information that has been deleted but is still available to the **PROVIDER 1** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the **PROVIDER 1** is required to disclose to the government the following information pertaining to the Account/TARGET PHONE NUMBER 1 listed in Attachment A-1:

    a.  The following information about the customers or subscribers associated with TARGET PHONE NUMBER 1/Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

7

viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records, and

ix.   Identification of any **PROVIDER 1** account(s) that are linked to the TARGET PHONE NUMBER 1 by cookies, including all **PROVIDER 1** user IDs that logged into **PROVIDER 1**'s services by the same machine as the TARGET PHONE NUMBER 1.

b.   For the time period March 15, 2023 to present, all records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by TARGET PHONE NUMBER 1/Account, including:

A.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

B.   information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

C.   all available per-call measurement data and all available NELOS reports.

**PROVIDER 1** is hereby ordered to disclose the above information to the government within **7 DAYS** of issuance of this warrant.

II.   **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 922(o)(1) (possession or transfer of a machinegun) and 18 U.S.C. § 371 (conspiracy to possess or transfer a machinegun) involving unidentified subject(s).

### III.      Government procedures for warrant execution

The United States government will conduct a search of the information produced by **PROVIDER 1** and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.  Law enforcement personnel will then seal any information from the **PROVIDER 1** that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

**Attachment B-3**

**Particular Things to be Seized**

I.     **Information to Be Disclosed by PROVIDER 2**

To the extent that the information described in Attachment A-3 is within the possession, custody, or control of the **PROVIDER 2**, including any information that has been deleted but is still available to the **PROVIDER 2** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the **PROVIDER 2** is required to disclose to the government the following information pertaining to each account or identifier listed in Attachment A-3:

    a.  All records or other information regarding the identification of the account, to include the following information about the customers or subscribers associated with the TARGET ████ ACCOUNT:

        i.   Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.   Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity

Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

**vii.** Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

b. The types of service utilized by the user;

c. For the time period March 15, 2023 to present:

i. All activity logs for the account and all other documents for previous video content, and chats, to include any metadata and/or content;

ii. Content of posted videos, public and private video content, chat content;

iii. Content of user interactions, via comments on videos, direct messages, and live chats;

iv. All Logs, including sender, recipient, date, and time, concerning the previous videos sent to or from or posted on the ███ account of the above users; to include IP addresses associated to accounts listed above, metadata regarding account logins and logouts, user-generated content (e.g., file creation and modification dates), and in-app communications (e.g., to/from and timestamp information);

v. All privacy settings and other account settings, including privacy settings for individual videos, and all records showing which ███ users have blocked or been blocked by the account;

vi. All records pertaining to communications between ███ and any person regarding the user or the user's ███ account, including contacts with support services and records of actions taken;

vii.   All usage information for the account, including search queries submitted and information about how the user of the account communicates with other users;

viii.   Device information such as the device memory, advertising identifiers, unique application identifiers, apps installed, version numbers of the ███ app installed and date of each installation, unique device identifiers, browser type, language, battery level, and time zone; information from device sensors, such as accelerometers, gyroscopes, compasses, microphones, and whether the user has headphones connected, and information about the user's wireless and mobile network connections, such as mobile phone number, service provider, and signal strength of devices used by the TARGET ███ ACCOUNT in conjunction with the service.

ix.   All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

x.   Identification of any **PROVIDER 2** account(s) that are linked to the TARGET ███ ACCOUNT by cookies, including all **PROVIDER 2** user IDs that logged into **PROVIDER 2**'s services by the same machine as the TARGET ███ ACCOUNT.

**PROVIDER 2** is hereby ordered to disclose the above information to the government within **7 DAYS** of issuance of this warrant.

II.     **Information to be Seized by the Government**

All information described above in Section I that constitutes fruits, contraband, evidence, instrumentalities, and information relating to violations of 18 U.S.C. § 922(o)(1) (possession or transfer of a machinegun) and 18 U.S.C. § 371 (conspiracy to possess or transfer a machinegun) (collectively, the "TARGET OFFENSES"), as described in the affidavit submitted in support of this warrant, including, for the account described in Attachment A, information including any stored electronic data, that contains, constitutes evidence of, documents, establishes, identifies, or reflects:

A.     the identity of the person(s) who created or used, and continue to use, the account, including records that help reveal the whereabouts of such person(s);

B.     how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the TARGET OFFENSES and to the account user;

C.     the identity of persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the TARGET OFFENSES; or (ii) communicated with the account about matters relating to the TARGET OFFENSES, including the contents of their communications and records that help reveal their whereabouts;

D.     the account user's state of mind (*e.g.*, intent, absence of mistake) or preparation, planning, knowledge, and experience, related to the TARGET OFFENSES;

E.     the commission of the TARGET OFFENSES;

F.     information related to the email addresses, phone numbers, social media, account identifiers used by perpetrators, aiders and abettors, co-conspirators, and accessories after the fact concerning the TARGET OFFENSES**;**

G.     the ownership and use of the account by the individual committing the TARGET OFFENSES;

H.     locations where the suspect committed the TARGET OFFENSES, and traveled to before and after the commission of the TARGET OFFENSES, including in preparation for the TARGET OFFENSES;

13

I.      meetings and communications between the suspect and other individuals discussing the commission of the TARGET OFFENSES;

J.      the suspects' access to, purchase of, sale of, possession of, or relationship with, machinegun conversion devices, firearms, or related accessories; and

K.      the obtaining, secreting, transfer, expenditure, and/or the concealment of machinegun conversion devices, firearms, or related accessories.

III.   **Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the **PROVIDER 2** and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.  Law enforcement personnel will then seal any information from the **PROVIDER 2** that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF MONITORING OF GPS INFO & CELL SITE LOCATION DATA FOR ONE CELL PHONE ACCOUNT STORED AT PREMISES CONTROLLED BY ONE PROVIDER AND SEARCH OF INFORMATION ASSOCIATED WITH THESE NUMBERS PURSUANT TO 18 U.S.C. 2703 AND 3123 FOR INVESTIGATION OF VIOLATION 18 U.S.C. 922(o)(1)** | **Case No.  23- SC- 1299**<br><br>**Filed Under Seal** |
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNTS STORED AT PREMISES CONTROLLED BY ONE PROVIDER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 922(o)(1)** | **Case No.  23- SC- 1300**<br><br>**Filed Under Seal** |

*Reference:      USAO Ref. #*████████*; Subject Account(s):* ATT ██████████
Account: ███████

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Investigator ███████, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41, 18 U.S.C. §§ 2703(a), and 2703(c)(1)(A), and former Chief Judge Hogan's Memorandum Opinion in In the Matter of the Application of the United States for an Order Authorizing the Monitoring of Geolocation and Cell Site Data for a ███████████ Phone Number ESN, ████████████ at ████████ (████████████"), for information about 1) the prospective location of the cellular telephone assigned call number

███████████, (hereinafter referred to as the "TARGET PHONE NUMBER 1"), as detailed in Attachment B-1; and 2) historic location data for TARGET PHONE NUMBER 1, as detailed in Attachment B-2[1], whose service provider is ████ Corporation ("PROVIDER 1"), a wireless telephone service provider headquartered at ████████████████████████, ██████. As a provider of wireless communications service, PROVIDER 1 is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1). A certification by ████████████, an attorney for the government, that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by ████████████████████ is included on the signature page of this affidavit.

3.      I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

---

[1] Upon receipt of the information described in Section I of Attachment B-2, government-authorized persons will review the information to locate items described in Section II of Attachment B-2.

4.      I have been a sworn ████████████████████████████ since 2014. Currently, your affiant is assigned to the ████████████████████████ ████████████████████. Since becoming a sworn police officer, your affiant has assisted with, and personally investigated, numerous firearm and narcotic related investigations; many of which, have resulted in arrest and conviction. Your affiant has also authored numerous search and arrest warrants pertaining to illegal firearms and narcotics. I have worked closely with numerous confidential informants from which I have learned intimate knowledge regarding illicit drug use and firearm possession, sale and concealment. I have also received classroom training in both armed gunman characteristics, and narcotics identification. I am responsible for investigations involving unlawful activities that include firearm offenses, drug offenses, and violent crimes. I have been involved in the investigation of numerous ████████████████████ ████████████████ investigations involving drug trafficking organizations. I have also conducted with and assisted in numerous social media investigations pertaining to firearms and illegal contraband. I have dealt with the social media platforms known as ████████████████ ████████, among others.

5.      I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, review of documents to include business and bank records and official government records, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein. Because this affidavit is being submitted for the limited purpose of enabling this Court to make a judicial determination of probable cause to issue a search warrant, I have not included each and every fact known to me

concerning this investigation. I have set forth only the facts that I believe are necessary to establish the legal basis for the issuance of a search warrant.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of unlawful possession and transfer of a machinegun, in violation of 18 U.S.C. § 922(o)(1) and conspiracy to unlawfully possess and transfer a machinegun, in violation of 18 U.S.C. § 371, (hereinafter "the TARGET OFFENSES") have been committed, are being committed, and will be committed by unknown persons. There is also probable cause to believe that the historical location information, as described in **Attachment B-2**, and that the prospective location information, as described in **Attachment B-1**, will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses or evidence of the commission of these offenses. Moreover, the prospective location information described in **Attachment B-1** will provide evidence of where the phone is currently located, and there is probable cause to believe the phone is an instrumentality of the offenses described herein.  There is also probable cause to search the information described in **Attachment A-3** (related to a ▮▮▮▮▮ Account) for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in **Attachment B-3**.

7.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. §

2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

## **PROBABLE CAUSE**

### *Overview of Evidence Sought*

8.      As detailed below, there is probable cause to believe that ███████████

███████████████████████████████████████████████████████

███████████ ████████████████████████ █████ ████████

███████████████████

9.      This affidavit is written in support of two separate search warrants. The search warrant referenced in Attachment A-1and A-2 and B-1 and B-2 seek historical and prospective cell site information from PROVIDER 1, related to TARGET PHONE NUMBER 1 that was used by an unidentified suspect to arrange the sale of illegal machinegun conversion devices to an undercover officer.   The search warrant referenced in Attachment A-3 seeks information from PROVIDER 2, as set forth in Attachment B-3 and relates to the ██████ account used to advertise the sale of the illegal machinegun conversion devices.

### *Summary of Investigation*

10.      ███████████████████████ █████ ███████████

███████████████████████████ ██████ ██████ █ █████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[2] A preservation letter was served under 18 U.S.C. § 2703(f) on ████████████████



11.     These machinegun conversion devices, such as the machinegun conversion device depicted in the diagram below ("Figure 2"), are made of metal or plastic and can convert a semi-automatic firearm into a fully automatic firearm, i.e., a weapon which shoots automatically more than one shot, without manual reloading, by a single function of the trigger. By law, the machinegun conversion devices by themselves are classified as machineguns because they are parts designed and intended solely and exclusively for use in converting a weapon to a machinegun

under the definition of 26 U.S.C. § 5845(b),  possession of which violates 18 U.S.C. § 922(o).



*Figure 2 – Diagram of Firearm with a Machinegun Conversion Device Installed*



████████████████████████████████████████████████████████████████████.

15.     Your affiant is aware that individuals who are engaged in illicit sales of contraband on social media platforms to include, but not limited to, ██████, are forced to resort to covert manners to conduct a transaction. In addition, social media platforms such as ██████ have community guidelines to keep users' online experience enjoyable and safe. The post on the TARGET ██████ ACCOUNT is in violation of ██████ community guidelines and in particular the portion about "Violent Behaviors and Criminal Activities."

16.     ████████████████████████████████ ██████ ██████
████ ████ ████████████████████████████
████████████████████

17.     ████████████████████████████ ██████ ██████
████████ ████████ ████████ ████████████
████████ ████ ████████████████ ████ ████
████████████████ ████████ ████████████
████ ████ ████████████████████████
████████████████████

18.     ████████████████████ ████████ ████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████
██ ████████████ ████████████████████
████████████████████████████████████

8



*Figure 3- Screenshot of Texts with TARGET PHONE NUMBER 1*

22.

23.

24.



25.

28.

███████████████████████████

██  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████.



*Figure 4- Stills of Installed Switches*

31. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████

██  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████1





37.     Your affiant recently received subscriber information from ████ for TARGET PHONE NUMBER 1.  The subscriber information lists a subscriber address of ████████ ████████████████████ and lists the subscriber as "████████████████".  Your affiant has been unable to confirm whether this individual is connected to SUBJECT 1 or the other accounts that are suspected to have been used thus far by SUBJECT 1.  ████████████ ████████████████████████████████████ ██████

38.     ████████████ members of the ████████████████████ ████████████ installed one of the switches purchased from the SUBJECT 1 and test-fired a pistol.  Based on that test-fire, ████ provided a verbal preliminary determination that the switch was a machinegun, in that the switch was a part designed and intended solely and exclusively for use in converting a semi-automatic weapon into a weapon that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. A formal firearm examination and classification is still to be conducted by ████ experts.

39.     There is probable cause to believe that SUBJECT 1, and other unidentified subjects, have engaged in, and continue to engage in the TARGET OFFENSES. TARGET PHONE NUMBER 1, as utilized by SUBJECT 1, is an instrumentality in these offenses.

40.     The requested prospective locational information will assist law enforcement in identifying SUBJECT 1, SUBJECT 1's residence, and locations SUBJECT 1 frequents.  This will allow law enforcement to locate and surveil SUBJECT 1, and therefore allow law enforcement to

14

discover where the machine gun conversion devices are being manufactured, sourced, transported, stored, or sold. Therefore, there is probable cause to believe that this will provide evidence of the TARGET OFFENSES.

41.    The requested prospective locational information will also aid in the identification of associates and possible coconspirators who have participated or collaborated in the TARGET OFFENSES.

42.    Based on my training, experience, and participation in firearms and narcotics investigations, and the training and experience of other law enforcement agents with whom I am working on this investigation, I know that it is common for individuals engaged in the unlawful trafficking/possession of firearms and narcotics to use telephonic communications, both cellular (to include voice and text messages) and hard line, to further their criminal activities by coordinating the distribution of firearms and narcotics, illegal proceeds of such trafficking, and other efforts of co-conspirators. It is also common for those individuals to utilize social media, to include Instagram or ███████, to further their criminal activities. Indeed, as described above, there is already abundant evidence of use of a variety of electronic accounts to facilitate such crimes in this case, including texting via cell phone, messaging on ███████, and messaging on ███████.;

43.    Based on my training and experience, I know that crimes carried out by more than one person often involve some amount of communication among those involved. This may involve working out details of and preparing to carry out a premeditated crime, working together to cover up the crime afterwards, or simply arranging to meet up someplace where an unplanned crime would later occur. Either way, I know from training and experience that online accounts are often used for this purpose and that phones used by a participant in such criminal activity often contains evidence of communication among accomplices. For instance, communication

logs indicate who the account user was communicating with both immediately before and after the crime.  Similarly, Your Affiant has seen multiple examples of suspects communicating after a crime via text (or other online chat functions such as Instagram's messaging feature) to discuss where incriminating items have been hidden, where and what the police are doing to investigate the crime, and whether any witnesses have implicated them.  This case involves discussion and communication of illegal machinegun conversion devices with many different prospective buyers and some indication of communication  with a supplier.  By its very nature, concerted actions amongst multiple people involves discussion and planning which is regularly done by online chats or texts.   Indeed, as set forth above, there is already abundant evidence of such communications in this case.

44.     Based on my training and experience, I know that people who commit crimes in Washington, D.C., often use their cell phones and online accounts in ways that reveal their location and/or activities before, after, or while engaging in criminal activity.  For example, this may include location information (e.g., GPS data), app usage information (e.g., Internet search inquiries), and images or video recordings relevant to the criminal activity.  Furthermore, I know from my training and experience that call logs, text messages, emails, and any app enabling communication with others (such as Instagram or ▆▆▆▆▆) often include communications that shed light on the cell phone user's location and activity during a particular time period.  ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆

45.     Your Affiant knows that people who possess firearms and firearms accessories like to take pictures of themselves with those items to prove ownership or possession of a particular item to their friends. They will use a camera, cell phone with a camera, tablets with a

camera and or personal computers to photograph and store photograph of firearms/firearm accessories or themselves holding the firearms/firearm accessories and other criminal activity that they may be involved in. These pictures or videos are excellent evidence of illegal firearms/firearm accessories possession. Moreover, cell phone apps such as Instagram and ▆▆▆▆ can be used for communications relating to the acquisition of firearms by those who cannot possess firearms/firearm accessories legally, including the transmission of photographs of firearms/firearm accessories available for purchase, with accompanying price information. ▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

46.     Overall, cellular telephones and social media accounts used by firearms and narcotics traffickers/possessors contain valuable information and evidence relating to their activities. Such information consists of, but is not limited to: call logs, phone books, photographs, voice mail messages, text messages, direct messages, images and video, Global Positioning System data, and any other stored electronic data. This information can: (i) reflect the preparation for, arrangement of, and commission of the trafficking; (ii) identify locations where traffickers traveled to before and after transporting or selling contraband; (iii) reflect the ownership and use of the cellular telephones and firearms by the traffickers; (iv) document meetings and communications between traffickers, their customers, associates, and co-conspirators; (v) reflect communications between traffickers and other individuals, discussing the trafficking and possession of firearms; (vi) reflect communications between traffickers and other individuals who may have assisted or provided support in the trafficking or possession of the firearm(s); (vii) document or contain evidence of the obtaining, secreting, transfer, expenditure and/or the

concealment of contraband relating to the trafficking; and (viii) document or contain evidence of the purchase of items from the assets derived from the trafficking of contraband.

## BACKGROUND ON CELL-SITE DATA AND LOCATION INFORMATION

47.     In my training and experience, I have learned that PROVIDER is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or "cell tower/sector records." E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

48.     Based on my training and experience, I know that PROVIDER can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell

tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

49.     Based on my training and experience, I know that ███ also collects additional estimated location information commonly referred to as NELOS. NELOS information can provide an approximate location of the cellular device utilizing a combination of timing advance, Wi-Fi and global positioning information (GPS). At times, this information can supplement cell site data when no call or text information is available.

50.     Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content. Based on currently available subscriber information, the TARGET PHONE NUMBER has ███████████.

51.     Based on my training and experience, I know that wireless providers such as PROVIDER typically collect and retain information about their subscribers in their normal course

of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET PHONE NUMBER's user or users.

52. ███████████████████ informed me that it is often beneficial to review at least 60 days of call detail records because they will establish a pattern of life and behavior. A smaller collection of records would make it difficult to determine if it is unusual for the phone(s) to appear in the areas where these crime(s) occurred. Not only will this assist in determining if the phone(s) frequents the areas of the crime scene(s), but also whether the phone normally belongs in these areas because that is where the phone subscriber lives and/or works.

**BACKGROUND ON ████**

53. ████████ is a video-sharing social networking service owned by ████████. It is used to create short music, lip-sync, dance, comedy, and talent videos of 3 to 15 seconds, and short looping videos of 3 to 60 seconds. Videos can be shared or stored publicly or privately. The ████ app allows users to interact with each other through comments to videos, direct messages, and live chats.

54. Based on my training and experience, my own familiarity with some of the products discussed, and reviewing information published on government web sites, law enforcement

response guidelines published by ████, and the ████ Privacy Policy, I know the following information about ████ accounts in general and the specific categories of information sought in this affidavit.

55. ████, owned by ████, is a company incorporated in ████ and headquartered in ████████. Formerly branded as musical.ly, it is a freeware, cross-platform, short-form mobile video media application. ████ uses a device's data plan or Wi-Fi to broadcast trending video media created by users. The application is free to users and is supported by advertisements. ████ users draw from a cadre of free tools to create content for sharing, as well as live-stream content that may use real-time filters. The application is used predominantly for mobile devices, but it is also possible to use the product on desktop computers. ████ allows for direct messages between individuals, but the application is used predominantly to broadcast videos to all of a user's followers.

56. When first setting up a ████ account, each user selects a list of topics and interests, which is used to populate the user's "For You" home page. When viewing the ████ home page, a user has access to accounts that reflect similar interests but are not necessarily people that the ████ account user knows. The videos and users on a ████ user's home page are comprised of selected interests, relevant or trending hashtags, and predicted interests based on a user's past account interactions. Users under the age of 16 will not appear on publicly shared pages if the user honestly answered the age question posed in the account profile setup.

57. Users can view videos in a personalized feed based on previous likes; comment and respond to content; and share videos with other ████ and social media users. Video feeds may be comprised of topics and not necessarily known contacts. ████ provides simple tools for editing videos accompanied by the use of free music clips and sounds. Content may be

manipulated with editing tools or live-streamed with filters that alter content while being captured for sharing. Videos recorded within ████ can range from 15 to 60 seconds long. Longer videos that do not originate within the application can be posted within ████. Users can send direct messages to other ████ users. Direct messaging must be enabled for each ████ account. ████ users have two options for receiving direct messages: the feature is either off, or direct messages can be received from their established Friend list. Accounts cannot send messages to non-friends. ████ direct messages are protected with end-to-end encryption. ████ direct messages can send text messages; GIFs from the GIPHY app; stickers; ████ videos; live streams; audio; hashtags; and links.

58.     Subscriber information is collected when a user registers a new account or otherwise revises applicable fields within the application. When a user creates a ████ account, the following information is collected but not verified, unless noted: phone number or email address (one of these two options must be verified), birthdate, password, username (may be changed every 30 days), IP address, location-related data, unique device identifiers, browsing history, cookies, mobile carrier, time zone setting, and account creation date.

59.     The ████ app allows users to create and upload videos. These videos may either be saved privately ("Private Videos") or posted to the ████ and made available to registered users ("Public Videos"). Unless an account has been set to private or the Public Video has been deleted by the user, Public Videos are available to law enforcement through the ████ app and are therefore not typically provided via a data request.

60.     ████ also retains records pertaining to "User Interactions" including comments to videos, direct messages, and live chats. The records consist of logs which may include meta-data regarding account logins and logouts, user generated content, and in-app communications,

but not the content of communications.

61.    ████ collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows ████ to collect information about how a user uses the product, to improve customization and enhance user experience.  Cookies also permit ████ to uniquely identify a user's browser or device.  In this and other ways, ████ collects information on the particular devices used to access ████.  Once a particular device is used to create or access one or more ████ accounts and is uniquely identified through one or more of these methods, accounts accessed using the same cookie(s) may be associated with each other in ████ records.

62.    Usernames are valid target identifiers that enable ████ to identify the target account. As such, ████ retains the information described above in the regular course of business and will furnish such information to law enforcement upon the receipt of a valid search warrant.

63.    In my training and experience, providers of electronic communications platforms such as ████ typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, providers of electronic communications platforms often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which

computers or other devices were used to access the account.

64.     In my training and experience, in some cases, communications account users will communicate directly with a platform about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.   Providers of electronic communications platforms typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## AUTHORIZATION REQUEST

65.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

66.     The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A-1 for each communication to or from the TARGET PHONE NUMBER, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

67.     I further request that the Court direct PROVIDER 1 to disclose to the government any information described in Section I of Attachment B-1 that is within its possession, custody, or control. I also request that the Court direct PROVIDER 1 to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information unobtrusively and with a minimum of interference with PROVIDER 1's services, including by initiating a signal to determine the location of the TARGET PHONE NUMBER on

PROVIDER 1's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate PROVIDER 1 for reasonable expenses incurred in furnishing such facilities or assistance.

68.     Because the warrant will be served on PROVIDER 1 and PROVIDER 2, who will then compile the requested records at a time convenient to it, good cause exists under Rule 41 to permit the execution of the requested warrant at any time in the day or night. Further, pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

69.     Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.



Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) by telephone on June 1, 2023.

2023.06.01
12:54:08 -04'00'

HONORABLE ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

**Attorney Certification Under 18 U.S.C. §§ 3121-3127**

To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant applied for herein will also function as a pen register order. I, an attorney for the Government, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by ███████████████████████████████████████████. *See* 18 U.S.C. §§ 3122(b), 3123(b).

Assistant United States Attorney
District of Columbia