# ATTACHMENT

# A

*Redacted Docket Materials*

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 23-sc-1159 |
| IINFORMATION ASSOCIATED WITH TWO ACCOUNTS STORED AT PREMISES CONTROLLED BY TWO PROVIDERS PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. § 841 | ) ) ) | Filed Under Seal |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1 and A-2, hereby incorporated by reference.

located in the ___Jurisdiction of the___ District of ___Columbia___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B-1 and B-2, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), 21 U.S.C. § 846, 18 U.S.C. § 924(c) | Distribution / possession with the intent to distribute a controlled substance, Distribution of fentanyl resulting in death, Attempt and conspiracy, Possession of a Firearm During a Drug Trafficking Crime |

The application is based on these facts:

See attached Affidavit in support of Search Warrant, which is incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

▮▮▮▮▮▮▮▮▮▮
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

___telephone___ *(specify reliable electronic means).*

Date: ___05/19/2023___

2023.05.19
12:40:01
-04'00'

_____
*Judge's signature*

City and state: ___Washington, D.C.___

Zia M. Faruqui, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH TWO ACCOUNTS<br>STORED AT PREMISES CONTROLLED BY TWO<br>PROVIDERS PURSUANT TO 18 U.S.C. 2703 FOR<br>INVESTIGATION OF VIOLATION OF 21 U.S.C. § 841 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  23-sc-1159 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ___Jurisdiction of the___ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location):*
   See Attachments A-1 and A-2, hereby incorporated by reference.


I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*
   See Attachments B-1 and B-2, hereby incorporated by reference.


**YOU ARE COMMANDED** to execute this warrant on or before _____June 2, 2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Zia M. Faruqui_____ .
                                                                                *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   ___05/19/2023___                     2023.05.19
                                                             12:40:18
                                                             -04'00'
                                                            *Judge's signature*

City and state:     ___Washington, D.C.___          Zia M. Faruqui, United States Magistrate Judge
                                                            *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  23-sc-1159 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

 

          _____
*Executing officer's signature*

          _____
*Printed name and title*

## <u>ATTACHMENT A-1</u>

### Property to Be Searched

This warrant applies to information, which is associated with the Meta Platforms, Inc. account identified by ███████ with user ID number ███████ (hereinafter, "TARGET ACCOUNT 1") which is stored at premises owned, maintained, controlled or operated by Meta Platforms, Inc., a company that accepts service of legal process at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT A-2

### Property to Be Searched

This warrant applies to information associated with ███████████████████████ (hereinafter, TARGET ACCOUNT 2) and which is stored at premises controlled by Apple, a company headquartered at One Apple Park Way, Cupertino, CA 95014-2084.

**ATTACHMENT B-1**

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.     **Information to be Disclosed by Meta Platforms, Inc. ("PROVIDER 1") to
       Facilitate Execution of the Warrant**

To the extent that the information described in Attachment A is within the possession,

custody, or control of PROVIDER 1, including any messages, records, files, logs, or information

that have been deleted but are still available to PROVIDER 1, or have been preserved pursuant to

a request made under 18 U.S.C. § 2703(f), PROVIDER 1 is required to disclose the following

information to the Government for the TARGET ACCOUNT listed in Attachment A-1:

a.  For the time period o▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The contents of any available
    messages or other communication associated with the Account (including, but not limited
    to, messages, attachments, draft messages, posts, chats, video calling history, "friend"
    requests, discussions, recordings, images, or communications of any kind sent to and from
    the Account, including stored or preserved copies thereof) and related transactional records
    for all PROVIDER services used by an Account subscriber/user, including the source and
    destination addresses and all Internet Protocol ("IP") addresses associated with each
    message or other communication, the date and time at which each message or other
    communication was sent, and the size and length of each message or other communication;

b.  For the time period o▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮All photos and videos uploaded by
    the Account and all photos or videos uploaded in which the Account has been "tagged",
    including Exchangeable Image File ("EXIF") data and any other metadata associated with
    those photos and videos;

c.  Basic subscriber records and login history, including all records or other information
    regarding the identification of the Account, to include full name, physical address,
    telephone numbers, birthdate, security questions and passwords, and other personal
    identifying information, records of session times and durations, the date on which the
    Account was created, the length of service, types of services utilized by the Account, the
    IP address used to register the Account, log-in IP addresses associated with session times
    and dates, account status, alternative e-mail addresses provided during registration,
    methods of connecting, log files, means and source of payment (including any credit or
    bank account number), and any account(s) linked by machine cookies (meaning all
    Facebook user identification numbers ("user IDs") that logged into Facebook by the same
    machine as the Account;

d.  For the time period of ▒▒▒▒▒▒▒▒▒▒▒▒ All records or other information related to the Account, including address books, contact and "friend" lists, calendar data, and files; profile information; "News Feed" information; "Wall" postings; Notes; groups and networks of which the Account is a member; future and past event postings; rejected "friend" requests and blocked users; status updates (including relationship status updates); comments; gifts; "pokes"; "tags"; the account's usage of the "like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked"; searches performed by the Account; privacy settings, including privacy settings for individual Facebook posts and activities; information about the Account's access and use of Facebook applications; and the Account's access and use of Facebook Marketplace;

e.  For the time period o ▒▒▒▒▒▒▒▒▒▒▒ All "check ins" and other location information;

f.  For the time period o ▒▒▒▒▒▒▒▒▒▒▒▒ All records pertaining to communications between PROVIDER-1 and any person regarding the Account, including contacts with support services and records of actions taken;

g.  All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN"), Google Cloud Messaging ("GCM"), Microsoft Push Notification Service ("MPNS"), Windows Push Notification Service ("WNS"), Amazon Device Messaging ("ADM"), Firebase Cloud Messaging ("FCM"), and Baidu Cloud Push);

h.  All information held by PROVIDER-1 related to the location and location history of the user(s) of the Account, including geographic locations associated with the Account (including those collected for non-PROVIDER-1 based applications), IP addresses, Global Positioning System ("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell towers; and

i.  Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence and/or instrumentalities of violations 21 U.S.C. § 841(a)(1) (distribution / possession with the intent to distribute a controlled substance) and (b)(1)(C) (distribution of fentanyl resulting in death) and 21 U.S.C. § 846 (attempt and conspiracy) and 18 U.S.C. § 924(c) (Possession of a Firearm During a Drug Trafficking Crime) (collectively, the "Target Offenses") involving ███ ██████ including, for the account listed in Attachment A-1, information pertaining to the following matters:

a.  The distribution, possession, manufacture, and/or obtaining of controlled substances;

b.  The identity of the person(s) who created or used the account(s), including records that help reveal the current and/or former whereabouts of such person(s);

c.  The obtaining of fentanyl b████ prior to his death on or about ██████ and prior instances of obtaining drugs;

d.  Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

e.  Evidence indicating the account owners' state of mind as it relates to the crime under investigation;

f.  The identity of the person(s) who created or used the account(s), including records that help reveal the whereabouts of such person(s);

g.  Photographs, images, and/or videos relating to the crimes under investigation;

h.  Any records pertaining to the deletion of content, including but not limited to the deletion of photographs and/or videos;

i.  Evidence that may identify or be used to locate any witnesses to or other victims of the crimes under investigation;

j.  Communications, written messages, voicemails, and/or other electronic communications, where such communications pertain to the crimes under investigation;

k.  Location data relating to the crimes under investigation and the receipt and/or distribution of controlled substances;

l.  Devices or other instrumentalities used in the commission of the offenses under investigation;

m.  Preparatory steps taken in furtherance of the offenses under investigation;

n.  The existence and identities of any of ███████ accomplices, co-conspirators, and/or sources of supply relating to ███████ possession, possession with intent to distribute, distribution, and/or manufacture of controlled substances; and

o.  The identity of the person(s) who communicated with the account about matters relating to drug possession, possession with intent to distribute, distribution, and manufacture, including records that help reveal their whereabouts.

## III.        Government Procedures for Warrant Execution

The United States government will conduct a search of the information produced by the PROVIDER 1 and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from PROVIDER 1 that does not fall within the scope of Section II and will not further review the information absent an order of the Court.  Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

**ATTACHMENT B-2**

**Particular Things to be Seized**

I.    **Information to be disclosed by APPLE INC. ("PROVIDER 2")**

To the extent that the information described in Attachment A-2 is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government for the account listed in Attachment A-2 for the period ▮▮▮▮▮

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.    The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.    The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.    All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store

and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and/or instrumentalities of violations 21 U.S.C. § 841(a)(1) (distribution / possession with the intent to distribute a controlled substance) and (b)(1)(C) (distribution of fentanyl resulting in death) and 21 U.S.C. § 846 (attempt and conspiracy) and 18 U.S.C. § 924(c) (Possession of a Firearm During a Drug Trafficking Crime) (collectively, the "Target Offenses") involving ███████ █████████

including, for the account listed in Attachment A-2, information pertaining to the following matters:

a.  The distribution, possession, manufacture, and/or obtaining of controlled substances;

b.  The identity of the person(s) who created or used the account(s), including records that help reveal the current and/or former whereabouts of such person(s);

c.  The obtaining of fentanyl by ▇▇▇▇▇▇▇ prior to his death on or about ▇▇▇▇▇▇▇ ▇▇▇▇ and prior instances of obtaining drugs;

d.  Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

e.  Evidence indicating the Account owners' state of mind as it relates to the crime under investigation;

f.  Photographs, images, and/or videos relating to the crimes under investigation;

g.  Any records pertaining to the deletion of content, including but not limited to the deletion of photographs and/or videos;

h.  Evidence that may identify or be used to locate any witnesses to or other victims of the crimes under investigation;

i.  Communications, written messages, voicemails, and/or other electronic communications, where such communications pertain to the crimes under investigation;

j.  Location data relating to the crimes under investigation;

k.  Devices or other instrumentalities used in the commission of the offenses under investigation;

l.  Preparatory steps taken in furtherance of the offenses under investigation;

m.  The existence and identities of any of ▇▇▇▇▇▇▇ accomplices, co-conspirators, and/or sources of supply relating to ▇▇▇▇▇▇▇ possession, possession with intent to distribute, distribution, and/or manufacture of controlled substances; and

n.  The identity of the person(s) who communicated with the Account(s) about matters relating to drug possession, possession with intent to distribute, distribution, and manufacture, including records that help reveal their whereabouts.

**III.     Government Procedures for Warrant Execution**

The United States Government will conduct a search of the information produced by Apple and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Apple that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF
## EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____.
I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.    such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____     _____
Date                              Signature


29

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
TWO ACCOUNTS STORED AT
PREMISES CONTROLLED BY TWO
PROVIDERS PURSUANT TO 18 U.S.C.
2703 FOR INVESTIGATION OF
VIOLATION OF 21 U.S.C. § 841

SC No. 23-sc-1159

<u>Filed Under Seal</u>

*Reference:    USAO Ref. #* ██████████████

**AFFIDAVIT IN SUPPORT OF**
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I ██████ being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I make this affidavit in support of an application for a search warrant for information associated with the following with Instagram username "jakermg" (TARGET ACCOUNT 1) which is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta" or "PROVIDER 1"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California and linked by law enforcement to ██████  ██████  TARGET ACCOUNT 1 is stored at premises controlled by Instagram, LLC, a social-networking company owned by Meta, and headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A-1.  This affidavit is made in support of an application for a search warrant under 21 U.S.C. § 841, 21 U.S.C. § 846, and 18 U.S.C. § 924(c) and to require PROVIDER 1 to disclose to the Government copies of the information (including the content of communications)

1

pertaining to the subscriber or customer associated with TARGET ACCOUNT 1, as further described in Section I of Attachment B-1. Upon receipt of the information described in Section I of Attachment B-1, Government-authorized persons will review that information to locate the items described in Section II of Attachment B-1, using the procedures described in Section III of Attachment B-1. I also make this affidavit in support of an application for a search warrant for information associated with one iCloud account ("TARGET ACCOUNT 2) AS described in Attachment A-2 that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple" or "PROVIDER 2"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A-2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B-2. Upon receipt of the information described in Section I of Attachment B-2, government-authorized persons will review that information to locate the items described in Section II of Attachment B-2.

2. ██████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

3.      As a law enforcement officer, I have actively participated in investigations of criminal activity, including drug trafficking.  These investigations have resulted in the arrest and conviction of numerous individuals responsible for trafficking narcotics and other criminal activity.  As part of these investigations, I have been personally involved in the execution of numerous search warrants, including those seeking narcotics and document.

4.      Through my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies.  In the course of conducting narcotic and criminal enterprise investigations, I have used the following investigative techniques: interviewing informants, cooperating witnesses, victims, and subjects; handling informants; physical surveillance; consensual monitoring and recording of telephone communications; and preparing and executing search warrants that have led to substantial seizures of narcotics and other contraband.  I have experience in debriefing defendants, informants, participants, and various persons with direct experience with the methods used to distribute controlled substances.  I also have experience in using confidential informants in furtherance of drug investigations.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

6.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 21 U.S.C. § 841, 21

U.S.C. § 846 and 18 U.S.C. § 924 (c) (hereinafter, "the TARGET OFFENSES") have been committed by ▌▌ ▌▌▌▌

7.    There is also probable cause to search the information described in Attachment A-1 and A-2 for evidence, fruits, and instrumentalities of the TARGET OFFENSES, as described in Attachment B-1 and B-2.

## JURISDICTION

8.    This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

## PROBABLE CAUSE



9.    This investigation concerns the death of ▌▌▌▌▌▌▌▌ ▌▌▌▌ who overdosed on fentanyl and died o▌▌▌▌▌▌ is believed he purchased the fentanyl from ▌▌ ▌▌▌▌

10.    O▌▌▌▌▌▌ U.S. Magistrate Judge G. Michael Harvey signed search warrant▌▌▌▌ hich, among other things, sought information from an Apple iCloud account belonging to ▌▌ ▌▌▌ with Apple ID Apple ID of "▌▌▌ ▌▌▌▌▌▌▌ Your Affiant incorporates that prior affidavit by reference, with the following additions.

---

[1] A white powdery substance was found on ▌▌▌▌ desk in his barracks room. A swab of the powder was collected, and the powder itself was collected as well. The swab tested positive for fentanyl. The powder did not.



[2] ████ went to the car meet with ████ and ████ on ████ He also stated that, after work, he took ████ and ████ back to ████ barracks room and waited for them outside, while ████ stated that she and ████ traveled there alone.

[3] █ █ ███████████████████████████████████ ████████

*Review of* ██████████ *iCloud*

13.    In ███████████████████████████████████ completed a review of the Apple Warrant production for iCloud accounts owned ██████████ A review of the data revealed numerous    images    and    videos    saved    within    his    iCloud    account, ████████████████████████ The data indicates that ████████ has been involved in the possession and distribution of illicit narcotics including pills and marijuana.  Photos and videos also showed ████████ and suspected coconspirators in possessions of numerous firearms and displaying significant amounts of cash.

14.    The following picture with a creation date of █████████████████s from ███████████ Apple iCloud account which is associated with Instagram.  It depicts ████████ (on the left side) holding what appears to be a firearm with an extended magazine.  In the District of Columbia, it is currently illegal to possess a firearm magazine with a capacity of more than 10 rounds.



15.     The below image with a creation date of ▮▮▮▮▮▮▮ depicts a screen shot taken from an Instagram account (presumably ▮▮▮▮▮▮ of user ▮▮▮▮▮ The image depicts ▮▮▮▮▮ and some associates of ▮▮▮▮▮ who are involved in the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ and his associates are flashing large amounts of cash, and indicate that they purchase switches for Glocks. Switches are illegal devices that can be placed on a Glock handgun to convert it from semi-automatic to fully automatic.



The below image from ███████ iCloud with a modified date o███████ ███████ shows what appears to be a firearm in the picture taker's lap.  The serial number on the gun indicates that the gun was sold i███████ o a person who is not ███████



16.    The next image with a created date o░░░░░░░░░░░milarly shows what appears to be firearms in the picture-taker's lap.  The image created was most likely taken using an iPhone 11 Pro Max through the Instagram application:



17.    The image with a created date of ▮▮▮▮▮▮▮▮ from most likely an iPhone XR and associated with Instagram, depicts a large amount of cash being shown with the caption ▮▮▮▮▮▮ Based on the affiant's knowledge of narcotics activities, this captions indicates that ▮▮▮▮▮▮ s either being used to purchase "blues" or gained from the sale of "blues." "Blues" are a term commonly used by ▮▮▮▮▮ and his associates in reference to pills.



18.    The next image depicts a screen shot taken from an Instagram account (presumably ███████████ of user "███████████."  It depicts what appears to be pills in a bottle. Analysis of ███████████ Apple return has revealed ███████████ had consistent communications with this Instagram, including the user providing him with an address i████████████our Affiant is aware that individuals selling drugs on Instagram will sometimes display pictures of those drugs.

11



19.     The next image with a modified date of ▆▆▆▆▆▆ depicts a screen shot taken from an Instagram account (presumably ▆▆▆▆▆ showing a direct message conversation between the account and user "▆▆▆▆▆▆▆n." In the conversation, the Instagram user arranges to purchase of "K56" pills. Your Affiant is aware that some pills with the imprint K56 contain oxycodone. (Other pills with that imprint contain acetaminophen, aspirin, and caffeine,

but your Affiant believes it unlikely that an individual would purchase over-the-counter medicine

via Instagram.)  The purchaser instructs the individual to bring the pills to ████████████

which within close proximity to ████████████, a location discussed ████████████



20.    The next image with a modified date ██████████ depicts a screen shot from an Instagram account (presumably ████████ and collected from his saved photographs

14

application his phone, of a direct message conversation on Instagram between that account and use ███████ iscussing the sale of "30s." From your Affiant's knowledge of narcotics distribution, the term "30s" would be referring to 30mg oxycodone pills or counterfeit pills.



*Attribution of Instagram Account* ▮

21.     Instagram accou▮▮▮▮▮▮s believed to be used by ▮▮▮▮▮   A screenshot of the account from ▮▮▮▮▮▮ shows numerous pictures of ▮▮▮▮▮ on the page:



22.     Further, a subpoena return from Meta for that account indicates that the registered email address for the account is "▮▮▮▮▮▮▮▮▮▮▮" and the verified phone number for the account ▮▮▮▮▮▮

## BACKGROUND CONCERNING INSTAGRAM

24.     Meta Platforms, Inc. is the provider of the TARGET ACCOUNT 1.

25.     PROVIDER 1 owns and operates Instagram, a free-access social-networking website and service of the same name that can be accessed at http://www.instagram.com.  It can also be accessed by smartphone applications, such as the Instagram application of the same name.

16

Instagram allows its users to share media (pictures and video) and communicate through their content-sharing platform.  It also allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information.  The pictures, videos and other information that users can publish (or "post") through Instagram can be viewed on Instagram, but also can be easily uploaded to other social media platforms including Twitter or Meta Platforms.

26.    When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information.  A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos.  In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram.  Users can also "like" photos.  Instagram collects and maintains user content that users post to Instagram or share through Instagram.

27.    Instagram users may also send photos and videos to select individuals or groups via Instagram Direct.  Information sent via Instagram Direct does not appear in a user's feed, search history, or profile, but instead is viewable only by the users who were included.

28.    According to Instagram's privacy policy, which is publicly-available online at http://instagram.com/legal/privacy/#section3, Instagram collects and stores information about its users.  Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password.  This information is collected and maintained by Instagram.

29.    Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile.

This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

30.     Instagram users can select different levels of privacy for the communications and information associated with their Instagram accounts, by ████ these privacy settings, an Instagram user can make information available only to himself or herself, to particular Instagram users, to all Instagram users, or to anyone with access to the Internet, including people who are not Instagram users.

31.     Instagram allows users to have friends, or "followers," which are other users with whom the user can share information without making it public. Followers on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information. Instagram also allows users to "follow" another user, which means that they receive updates by the other user. Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user. Users on Instagram may also search Instagram for other users or particular types of photos or content.

32.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

18

33.    Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram.  For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.  Instagram also collects information on the particular devices used to access Instagram.  In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.  Instagram also collects other data associated with user content.  For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

34.    Instagram also may communicate with the user, by email or otherwise.  Instagram collects and maintains copies of communications between Instagram and the user.

35.    Information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  An Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time.  Further, Instagram account activity can

19

show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

36.    I also know that Instagram also has a direct messaging function by which two or more individuals may communicate in a non-public manner. In my experience, these communications may contain discussions of criminal activity, including, but not limited to, setting up firearm and/or narcotics transactions. Accordingly, the TARGET ACCOUNTS may contain non-public direct messages that evidence its illegal possession of firearms and/or narcotics, and/or may help identify additional associates and co-conspirators with whom it regularly communicates.

37.    In summary, based on the information above and my training and experience, I believe that the computers of PROVIDER-1 are likely to contain all the material described above

20

with respect to the Instagram accounts named in this affidavit, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times and in the form of harvested live videos and direct messages between the operator of the account and his followers.

## BACKGROUND CONCERNING APPLE

38.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

39.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.     iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email

accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d.     Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.     Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f.     Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.     App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased

through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

40.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  The account identifier for an Apple ID is an email address, provided by the user.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

41.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

42.    Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

43.    Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

44.    Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email

(iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

45.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

46.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

47.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

48.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

49.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

50.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and

experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

51.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B-1 and B-2.  Upon receipt of the information described in Section I of Attachment B-1 and B-2, Government-authorized persons will review that information to locate the items described in Section II of Attachment B-1 and B-2, using the procedures described in Section III of Attachment B-1 and B-2.

## CONCLUSION

52.    Based upon the information described above, your affiant requests that the Court issue the proposed search warrant for the TARGET ACCOUNTS 1 and 2.  Because the warrant will be served on PROVIDER 1 and PROVIDER 2, who will then compile the requested records at a time convenient to it pursuant to 18 U.S.C. § 2703, there exists reasonable cause to permit execution of the search warrant by service upon PROVIDER 1 and PROVIDER 2 at any time of day or night, and to permit returning the warrant to the Court on the next court day after Facebook/Instagram discloses the requested records.

Respectfully submitted,

Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on May 19, 2023.

2023.05.19
12:40:33
-04'00'

HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE
FOR THE DISTRICT OF COLUMBIA